ORIGINAL

To the Clerk of The Court

LL5 12/21/09

U.S.D.J.

2009

12/22/09

MAYER·BROWN

Mayer Brown LLP
1675 Broadway
New York, New York 10019-5820

Main Tel (212) 506-2500
Main Fax (212) 262-1910
www.mayerbrown.com

**Andrew H. Schapiro**
Direct Tel (212) 506-2672
Direct Fax (212) 849-5973
aschapiro@mayerbrown.com

**HIGHLY CONFIDENTIAL**

December 1, 2009

The Honorable Louis L. Stanton
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2250
New York, NY 10007

Re: *Viacom Int'l Inc. v. YouTube, Inc.*, 07-cv-2103

Dear Judge Stanton:

    On behalf of Defendants ("YouTube"), we write in reply to Viacom's November 25, 2009 letter concerning Viacom's recent effort to withdraw infringement claims in this case.

    Viacom's assertion that there is "no conceivable prejudice" to YouTube from its belated effort to withdraw hundreds of alleged infringements ignores the very real prejudice identified in our original letter. As we explained, YouTube engaged in extensive discovery aimed at many of the very clips that Viacom now seeks to withdraw. Those investigative efforts into which clips Viacom authorized to be on the YouTube service have been hard-fought. For example, when YouTube sought information about Viacom's instructions to BayTSP to refrain from taking down Viacom-authorized videos, it was met with ill-founded claims of privilege, leading to 18 months of motions and threatened motions to obtain the relevant documents. YouTube also devoted limited deposition hours to deposing Viacom employees responsible for Viacom's stealth uploads of Viacom content to YouTube. Now that YouTube's discovery efforts have established that Viacom's claims of infringement were meritless, it would be unfair and unwarranted to allow Viacom to pretend that it never asserted those claims in the first place. That is particularly so given that Viacom has offered no explanation for why it waited until October 15, 2009—the original date for the close of document production—to first raise its desire to materially alter the universe of alleged infringements.

    Nor does Viacom explain how it came to assert infringement claims over these videos in the first instance consistent with its Rule 11 obligations. Viacom itself purposefully uploaded many of these videos to YouTube and expressly authorized them to appear there. That Viacom then chose to sue YouTube over these very videos was not the result of typographical or data-entry errors. Rather, it could only have been the result of Viacom's own inability to recognize whether a given video appearing on YouTube was or was not authorized to be there, notwithstanding Viacom's elaborate multi-step identification process. It was not the purported "massive scope of Defendants' infringement" that caused Viacom to make these bogus claims (Viacom Letter at 2-3); rather, it was Viacom's own use of YouTube for marketing and promotional purposes that made it impossible for Viacom (and YouTube) to distinguish allegedly infringing videos from authorized ones.

Mayer Brown LLP operates in combination with our associated English limited liability partnership
and Hong Kong partnership (and its associated entities in Asia).

Viacom International, Inc. et al. v. Youtube, Inc. et al.     Doc. 163

      Moreover, Viacom is wrong to characterize its attempt to withdraw infringement claims as merely amending discovery responses. In fact, Viacom is seeking to withdraw claims that it *expressly asserted* in its First Amended Complaint in April 2008, which included an Exhibit A listing the works in suit and allegedly infringing videos that Viacom had identified as of that time. Ninety-one of the videos Viacom now wants to abandon are specifically listed in that exhibit. *See* FAC, Ex. A. Likewise, the First Amended Complaint incorporates by reference the additional videos that Viacom identified in its subsequent "rolling" identifications. *See* FAC ¶ 36 (alleging unauthorized appearance on YouTube of the videos "at issue in this action, including but not limited to those listed on Exhibit A hereto"). Having formally put the identified videos at issue in its pleadings, Viacom must abide by the procedures established by Rule 15 or Rule 41 for any attempted withdrawal of those claims.[1]

      What is more, Viacom's position that it is entitled to freely drop alleged infringements up until the pretrial order ignores serious case-management concerns. Between now and the pretrial conference, YouTube will be completing fact discovery and expert discovery, preparing summary judgment motions, and refining its trial strategies based upon the "closed universe" of claims that Viacom was ordered to have provided by August 17, 2009. Viacom's argument that it can alter its claims at any time and without any consequences threatens further prejudice, as YouTube would have no certainty that the case it is preparing is actually directed to the clips that will ultimately be at issue for summary judgment or trial.

      Finally, Viacom argues that it is seeking only to effect a "narrowing" of the case, which should not be objectionable to YouTube. Of course, YouTube has no desire to continue litigating claims that both parties agree are baseless, which is why YouTube offered to stipulate to Viacom's proposed withdrawal of claims on terms that are fair and minimize the prejudice to YouTube. But Viacom refused that offer, leaving unresolved the parties' dispute concerning the procedure, timing, and consequences of Viacom's efforts to withdraw certain of its claims. YouTube respectfully requests a conference to obtain the Court's assistance on those issues. In particular, we seek a ruling that YouTube is entitled to judgment on the claims of infringement that Viacom seeks to withdraw, and any other relief that the Court considers appropriate.

      Respectfully submitted,

*Andrew H. Schapiro/cmH*

Andrew H. Schapiro

---

[1] While Viacom says that it is seeking to withdraw only a *de minimis* percentage of alleged infringements, its assertion of 250 concededly meritless claims of infringement is significant in absolute terms, potentially representing millions of dollars in statutory damages under Viacom's theory of the case. In any event, Viacom's percentage-based arguments are also not particularly helpful to its overall position. The 63,000 videos that Viacom identified as alleged infringements constitute less than 0.02% of the total videos uploaded by users to YouTube—an order of magnitude smaller than the percentage that Viacom itself characterizes as "*de minimis*."