

HIGHLY CONFIDENTIAL

November 20, 2009

The Honorable Louis L. Stanton
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2250
New York, NY 10007

Re: *Viacom Int'l Inc. v. YouTube, Inc.*, 07-cv-2103

Dear Judge Stanton:

MAYER • BROWN

Mayer Brown LLP
1675 Broadway
New York, New York 10019-5820

Main Tel (212) 506-2500
Main Fax (212) 262-1910
www.mayerbrown.com

**Andrew H. Schapiro**
Direct Tel (212) 506-2672
Direct Fax (212) 849-5973
aschapiro@mayerbrown.com

To The Clerk of The Court:
Please docket and place
this document in the public file.

LLS 12/21/09
Louis L. Stanton
U.S.D.J

On behalf of Defendants ("YouTube"), we write to request a Court conference to address Viacom's recent attempt to unilaterally make material changes to its list of works in suit and alleged infringements.

On October 15, 2009, Viacom informed YouTube of its desire to remove from this case approximately 250 of the video clips that it had previously alleged infringed its copyrights. *See* Letter from Susan J. Kohlmann to Andrew H. Schapiro (Oct. 15, 2009) (Ex. A). While Viacom has not expressly admitted as much, its reason for wanting to do so is that discovery has shown that Viacom has no viable claim of infringement as to those clips, most notably because a significant number of them were posted to YouTube by Viacom itself or by its agents.

Viacom's effort to withdraw its claims concerning such videos is significant because it undermines representations that Viacom has made throughout this case. In its original complaint, Viacom alleged that none of the videos clips it alleged as infringing were authorized to appear on YouTube. Viacom Cplt. ¶ 35. Viacom then repeatedly confirmed, over the next two and a half years, that such videos were properly part of this case. For example, in its First Amended Complaint, Viacom asserted that "YouTube and its users have not received a valid license, authorization, permission, or consent to use the copyrighted works . . . at issue in this action, including but not limited to those listed on Exhibit A hereto." Viacom First Am. Cplt. ¶ 36. Viacom similarly told the Court in November 2008 that, "with respect to clips, we have not given them [YouTube] permission to put them up there." 11/14/2008 Hearing Tr. at 42. And as recently this June, Viacom assured the Court that it is "not seeking damages" for the promotional clips that it uploaded to YouTube, and that this "lawsuit is not about" such clips. Letter from Susan Kohlmann to The Hon. Louis L. Stanton at 2 (June 4, 2009) (Ex. B).

But YouTube's discovery efforts have refuted those representations. Our investigation has established that a substantial number of the videos that Viacom claimed as infringing were placed or permitted to remain on the YouTube service *by Viacom itself* as part of its extensive marketing efforts. Those videos therefore are expressly or impliedly licensed by Viacom to appear on YouTube. Exposing Viacom's marketing efforts and their consequences required YouTube to expend significant time and resources in discovery. For example, YouTube deposed

Viacom International, Inc. et al v. Youtube, Inc. et al                                                                                                                      Doc. 164

multiple Viacom employees specifically to confirm that they had uploaded videos to YouTube that Viacom was nevertheless alleging as infringements in this case. Through these efforts, which required a painstaking video-by-video analysis of Viacom's alleged infringements, YouTube used up limited deposition hours that it might otherwise have allocated differently. Now, however, Viacom seeks to quietly drop from this case its claims concerning some of the very videos about which those employees were deposed.

Perhaps better than any other evidence, this series of events belies Viacom's assertion that "[k]nowing that a clip is infringing is easy given the readily identifiable nature of Viacom's movies and television programs." Plaintiffs' Joint Opposition to Defendants' Motion to Compel at 8 (Feb. 28, 2008) (Ex. C). And it certainly undermines any argument that YouTube has the responsibility to determine, on pain of liability, whether a particular clip out of the hundreds of thousands uploaded each day is or is not authorized to be on the YouTube service. That is particularly true given the elaborate process that Viacom was supposedly employing to identify its alleged infringements in this case. Viacom explained to the Court that its process for selecting allegedly infringing clips was a "multi-step procedure designed to accurately identify infringing content." Declaration of Michael Housley ¶ 2 (Feb. 28, 2008) (Ex. D). Before being added to this case, every video clip at issue was "reviewed by one of a team of first-level reviewers to verify that it is infringing." *Id.* ¶ 5. Next, according to Viacom's account, each clip was examined again by "second-level reviewers, who perform[ed] quality control of the first-level reviewers' designations." *Id.* ¶ 6. The resulting data was then "reviewed for consistency and accuracy prior to being produced to defendants." *Id.* ¶ 9. This meticulous procedure was designed to ensure that Viacom was correctly identifying each allegedly infringing video and was cited by Viacom as a justification for why it needed more than two years to identify the universe of clips over which it was suing.

Yet, notwithstanding this rigorous process—and despite Viacom's access to far better information about its works and its marketing practices than YouTube has—Viacom was not able to reliably determine which videos were authorized or which clips its own employees or agents had posted on YouTube. In addition to contradicting various of Viacom's statements to the Court, that fact bears directly on some of the central issues in this case. After all, if Viacom cannot consistently make such determinations, even with regard to a closed universe of *its own content* reviewed by *its own counsel*, and against the backdrop of Rule 11, what basis is there for suggesting that YouTube can and must do better?

In any event, at this stage of the litigation, years after YouTube filed its Answer and on the eve of the discovery cutoff, Viacom is not permitted under Federal Rules of Civil Procedure 15 and 41 to amend its claims without either YouTube's stipulation or Court order. After receiving Viacom's amended list of alleged infringements last month, YouTube offered to stipulate to Viacom's withdrawal of the specified claims, so long as the prejudice to YouTube could be minimized. To that end, YouTube requested: (1) that Viacom agree to a stipulated, binding partial judgment on the withdrawn claims identifying YouTube as the prevailing party; and (2) that Viacom agree not to object to YouTube's use of the withdrawn claims as evidence in the case. *See* Letter from David H. Kramer to Susan J. Kohlmann (Oct. 23, 2009) (Ex. E). But Viacom refused, asserting that it is not required to obtain consent for its amendment. *See* Letter from Susan J. Kohlmann to David H. Kramer (Oct. 30, 2009) (Ex. F).

Particularly given the resources that YouTube has expended investigating these claims, and the relevance of Viacom's misidentifications, Viacom's position is untenable. Viacom has not learned anything about the clips at issue that it should not have known all along. Indeed, Viacom never should have asserted infringement claims over those videos in the first place. But having waited so long to first announce its desire to withdraw them, Viacom cannot simply make these claims disappear without leave and without consequence. YouTube therefore requests a conference so that the Court can address the proper resolution of Viacom's attempt to amend its claims at this late date. We look forward to discussing these issues with the Court.

Respectfully submitted,

Andrew H. Schapiro

cc: All counsel in this action and the *Premier League* action