ORIGINAL

SHEARMAN & STERLING LLP

599 LEXINGTON AVENUE | NEW YORK | NY | 10022-6069
WWW.SHEARMAN.COM | T +1.212.848.4000 | F +1 212.848.7179

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/7/10
```

**HIGHLY CONFIDENTIAL**

sbaskin@shearman.com
(212) 848-4974

December 21, 2009

By Hand

To The Clerk of The Court:
Please docket and place
this document in the public file.

LLS 12/30/09
Louis L. Stanton
U.S.D.J

The Honorable Louis L. Stanton
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Court House
500 Pearl Street, Room 2250
New York, New York 10007

Re:   *Viacom Int'l Inc., et al. v. YouTube, Inc., et al.*, Case No. 07 Civ. 2103 (LLS)

Dear Judge Stanton:

With merits discovery now having drawn to a close, Plaintiffs Viacom International Inc. et al. ("Viacom") respectfully request a premotion conference in advance of filing or alternatively seek permission to file a motion for summary judgment on Defendants' liability for copyright infringement and applicability of the Digital Millennium Copyright Act (DMCA). As set forth below, the Supreme Court has stated that the issues to be raised by Viacom's motion are appropriately resolved by way of summary judgment, and several recent cases have granted summary judgment to copyright owners on these grounds. Further, Defendants themselves have acknowledged that fundamental issues in the case should be addressed and, where appropriate, resolved on summary judgment. This motion will greatly narrow the issues for the jury and at a minimum, substantially shorten the period for trial.

In the event that YouTube and Google intend to cross-move for summary judgment, we would obviously work with them to achieve a coordinated briefing schedule for the Court's convenience and to avoid a multiplicity of summary judgment briefs on different scheduling timelines. We would simply request, pursuant to the Court's normal procedures, that the Defendants set forth their general bases for any summary judgment application and, as sought herein, receive permission from Your Honor to proceed with their cross motion.

ABU DHABI | BEIJING | BRUSSELS | DÜSSELDORF | FRANKFURT | HONG KONG | LONDON | MANNHEIM | MENLO PARK | MUNICH
NEW YORK | PARIS | ROME | SAN FRANCISCO | SÃO PAULO | SHANGHAI | SINGAPORE | TOKYO | TORONTO | WASHINGTON, DC

SHEARMAN & STERLING LLP IS A LIMITED LIABILITY PARTNERSHIP ORGANIZED IN THE UNITED STATES UNDER THE LAWS OF THE STATE OF DELAWARE, WHICH LAWS LIMIT THE PERSONAL LIABILITY OF PARTNERS.

## Background

Viacom has identified 63,000 unauthorized video clips taken directly from over 3000 of its copyrighted movies and television programs and posted on the YouTube website, where the infringing clips have been viewed millions of times.



## Affirmative Claims

The basic facts set forth above will be backed up by mountains of emails and internal documents, the words of which cannot be disputed. Defendants' own conduct makes them liable for infringement. They are liable under the Supreme Court's *Grokster* case for contributory infringement because they operated YouTube with the unlawful objective of facilitating copyright infringement as a central part of their business plan to fuel YouTube's meteoric growth. They are also liable under the well established doctrine of vicarious copyright liability, which applies where a business derives a direct financial benefit from infringing activity and has the right and ability to control it, but refuses to do so.

## DMCA Defense

This same conduct also will disqualify YouTube from reliance on the so-called DMCA safe harbor defense. Congress intended the DMCA to protect only "an innocent service provider," and protection "disappears at the moment the service provider loses its innocence." *ALS Scan, Inc. v. RemarQ Communities, Inc.*, 239 F.3d 617, 625 (4th Cir. 2001). Defendants' primary defense argument, as we understand it, is essentially a pure issue of law: whether the DMCA protects them because they remove specific infringing clips that are identified with particularity by URL in a takedown notice from a copyright owner. As the Court will see, the DMCA defense has multiple preconditions, and responding to takedown notices is only one of them – a necessary but not sufficient element of the defense. *See* 17 U.S.C. § 512(c)(1)(C).

Google and YouTube in fact fail at least three other preconditions of the DMCA, any one of which disqualifies the safe harbor.

(1) As the wealth of evidence summarized above will show, they had "actual knowledge" and were "aware of facts and circumstances from which infringing activity [was] apparent," but

refused to take readily available steps to stop that infringement. 17 U.S.C. § 512(c)(1)(A). Indeed, as shown above, the infringement on YouTube was fully intended by them, making them liable under *Grokster* as well as disqualifying the DMCA defense.

(2) Defendants also "receive[d] a financial benefit directly attributable to the infringing activity," particularly through present and future advertising, and had "the right and ability to control such activity," 17 U.S.C. § 512(c)(1)(B), through assorted procedures, including fingerprinting. The DMCA parallels and indeed incorporates the common law standard for vicarious copyright liability in this respect. Thus, Google and YouTube are vicariously liable under the common law and the DMCA does not immunize them.

(3) Defendants' liability for infringement is not "by reason of the storage at the direction of a user," or any other core Internet function to which the DMCA applies. 17 U.S.C. § 512(a)-(d). Defendants instead operate an entertainment site, not a storage business, and are engaged in extensive distribution activities, distributing videos to such companies as Sony, Apple, TIVO, Telecom Italia, Vodafone, Cingular (AT&T) and Verizon for display on those companies' televisions, set top boxes and cellular networks. This distribution activity goes far beyond the mere storage and display of videos at the direction of users and, as such, disqualifies another threshold condition for the DMCA to apply.

## Appropriateness of Summary Judgment

Summary judgment is the appropriate procedure to resolve the issues raised by Viacom's motion. First, recent cases, including the Supreme Court in *Grokster*, have held that a defendant's unlawful purpose of facilitating infringement is appropriate for summary judgment in light of documentary evidence of wrongful intent, even if defendant's respond by submitting affidavits asserting their good faith and lack of knowledge. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster Ltd.*, 545 U.S. 913, 941 (2005), *on remand*, 454 F. Supp. 2d 966, 971, 984, 985 (C.D. Cal. 2006) (imposing liability on summary judgment based on "voluminous documentary evidence" showing an "unlawful objective to promote infringement"); *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 154 (S.D.N.Y. 2009) ("Defendants have submitted testimony denying wrongful intent; yet, the facts speak for themselves, and paint a clear picture of Defendants' intent to foster infringement by their users").

Second, as Defendants' counsel have candidly acknowledged, their liability and eligibility for the DMCA defense will largely turn on the correct legal reading of applicable case law and the DMCA statute. *See, e.g.*, Feb. 22, 2008 Status Conf. Tr. 33:13-14 (Mr. Shapiro: "This is a case that may well be decided, we think, on legal questions"); July 28, 2009 Status Conf. Tr. 4:8-10 (Mr. Schapiro: "the parties take very different views of the meaning of some of the key terms of the Digital Millennium Copyright Act, the DMCA"); id. at 20:3-9 (Mr. Schapiro acknowledging that both sides will move based on undisputed facts).

4

Finally, even if Defendants dispute some facts underlying Viacom's motion, a "'summary judgment motion is intended to "smoke out" the facts so that the judge can decide if anything remains to be tried.'" *W.S.A., Inc. v. ACA Corp.*, 1998 WL 635536, at *3 (S.D.N.Y. Sept. 15, 1998) (quoting *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972)). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). The procedure mandated by Local Civil Rule 56.1 requiring fact-by-fact citations to the record is ideally suited to "smoke out" whether purported fact disputes are genuine and material.

Thus, summary judgment will resolve core legal issues and dramatically streamline the remaining factual issues for trial. If Defendants elect to cross move and receive the Court's permission to do so, we will work with them to ensure a procedure that focuses the issues and minimizes the burden on the Court.

Respectfully submitted,

*[signature]*

Stuart J. Baskin

cc: All counsel in the *Viacom* action and in the *Premier League* Action

5