

**ORIGINAL**

MAYER·BROWN

DEC 28 2009

Mayer Brown LLP
1675 Broadway
New York, New York 10019-5820

December 28, 2009

Main Tel +1 212 506 2500
Main Fax +1 212 262 1910
www.mayerbrown.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/7/10

Andrew H. Schapiro
Direct Tel +1 212 506 2672
Direct Fax +1 212 849 5672
aschapiro@mayerbrown.com

BY HAND DELIVERY

The Honorable Louis L. Stanton
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2250
New York, NY 10017

Re:   *Viacom Int'l Inc. v. YouTube, Inc.*, No. 07-cv-
2103; *The Football Association Premier League
Ltd. v. YouTube, Inc.*, No. 07-cv-3582 (LLS)

Dear Judge Stanton:

    On behalf of the Defendants ("YouTube"), I write in response to Plaintiffs' December 21, 2009 pre-motion letter on the issue of summary judgment motions in these cases. We agree that these cases can be resolved on summary judgment, but not in Plaintiffs' favor. A trio of recent decisions, squarely on point and decided at the summary-judgment stage, has held that a video-sharing service such as YouTube is protected by the safe-harbor provision of the Digital Millennium Copyright Act, 17 U.S.C. § 512(c) ("Section 512(c)"). *See Io v. Veoh Networks Inc.*, 586 F. Supp. 2d 1132 (N.D. Cal. 2008); *UMG Recordings, Inc. v. Veoh Networks Inc.*, 2008 WL 5423841 (C.D. Cal. Dec. 29, 2008) ("UMG I"); *UMG Recordings, Inc v. Veoh Networks Inc.*, 2009 WL 3422839 (C.D. Cal. Sept. 11, 2009) ("UMG II"). The result in this case should be no different.

    Section 512(c), which is designed to ensure that "the variety and quality of services on the Internet will continue to expand," S. Rep. No. 105-190, at 8 (1998), "limits the liability of service providers" for "acts that expose them to potential copyright liability." *Id.* It protects service providers against claims arising from material uploaded to their systems by users, and has been applied to a variety of Internet sites, including Amazon.com and eBay (*see Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004); *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082 (C.D. Cal. 2001)), as well as to video-sharing services that operate as YouTube does (*see Io*, 586 F.Supp.2d at 1155). As a general matter, a service provider is protected from copyright liability as long as it expeditiously removes allegedly infringing

*In this case, no pre-motion conference will be required. Each side may move for summary judgment, on a schedule for briefs to be agreed by counsel and approved by the Court. So Ordered.*

*Louis L. Stanton*
*12/30/09*

Mayer Brown LLP operates in combination with our associated English limited liability partnership and Hong Kong partnership (and its associated entities in Asia).

Honorable Judge Stanton
December 28, 2009
Page 2

material from its site upon receipt of a proper notice from the material's purported owner. While this regime requires cooperation between service providers and copyright holders, Congress decided that copyright holders, rather than service providers, should bear the primary responsibility for monitoring the Internet for instances of alleged copyright infringement. The "DMCA notification procedures place the burden of policing copyright infringement – identifying the potentially infringing material and adequately documenting infringement – squarely on the owners of the copyright." *Perfect 10, Inc., v. CCBill LLC*, 488 F.3d 1002, 1113 (9th Cir. 2007); *see also UMG II*, 2009 WL 3422839, at *10 ("the DMCA does not place the burden of ferreting out infringement on the service provider"). Indeed, the statute expressly rejects any requirement that a service provider affirmatively monitor its service for possible infringement to obtain safe-harbor protection. 17 U.S.C. § 512(m).

There are only two circumstances in which a qualifying service provider is not protected by Section 512(c)'s safe harbor. First, the safe harbor does not apply if the provider acquires "actual knowledge" that particular material stored on its system is infringing – or becomes aware of "facts or circumstances from which infringing activity is apparent" – and fails to remove the material. Section 512(c)(1)(A). Second, the safe harbor is inapplicable where the service provider "receive[s] a financial benefit directly attributable to the infringing activity" in a circumstance where it "has the right and ability to control such activity." Section 512(c)(1)(B).

The parties appear to have differing views about what, as a matter of law, constitutes "storage at the direction of a user," "circumstances from which infringing activity is apparent," "financial benefit directly attributable to the infringing activity," and "the right and ability to control such activity." But there does not appear to be any true dispute about how YouTube operates – that is, about the facts to which those legal standards will be applied in this case.

The undisputed facts will demonstrate that YouTube is a service provider protected by the safe-harbor provision because (i) the claims against it arise by reason of the storage on its service of materials placed there at the direction of users; (ii) it appropriately responded to DMCA notices from Plaintiffs; (iii) it had no disqualifying knowledge of supposed infringement of the type contemplated by the statute; and (iv) it did not derive a financial benefit "directly attributable" to allegedly infringing activity that it had the "ability to control" within the meaning of the statute. YouTube is therefore entitled to summary judgment.

It should go without saying that we disagree with Plaintiffs' characterization of the law and of the documents cited in their letter. Indeed, the motions that we seek to file will establish that YouTube is and has always been precisely the type of service that Congress envisioned in enacting the DMCA, offering users an unparalleled platform for free expression while providing industry-leading content-protection tools. We look forward to joining issue on the merits, and are

17611086

Honorable Judge Stanton
December 28, 2009
Page 3

happy to work with Plaintiffs to come up with an appropriate briefing schedule, subject to the guidance of the Court.[1]

Sincerely,

*Andrew Schapiro/ Y F*

Andrew H. Schapiro

cc:   All counsel in this action and the Premier League action

---

[1] Any briefing schedule will need to take into account the fact that fact discovery is not yet complete. Although the parties agreed that the December 18, 2009 fact-discovery deadline in the Amended Rule 16(b) Order is operative in the main, the parties have agreed to meaningful exceptions to that deadline. Numerous depositions, interrogatory responses, and responses to requests for admission will not be completed until mid-January at the earliest.

17611086