HIGHLY CONFIDENTIAL
FILED UNDER SEAL

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIACOM INT'L INC., ET AL.,<br><br>               Plaintiffs,<br><br>      v.<br><br>YOUTUBE, INC., ET AL.,<br><br>             Defendants | ECF Case<br>Civil No. 07-CV-2103 (LLS) |
| THE FOOTBALL ASSOCIATION<br>PREMIER LEAGUE LIMITED, ET AL.,<br>on behalf of themselves and all others<br>similarly situated,<br><br>             Plaintiffs,<br><br>      v.<br><br>YOUTUBE, INC., ET AL.,<br><br>             Defendants. | ECF Case<br>Civil No. 07-CV-3582 (LLS) |

## DECLARATION OF SUZANNE REIDER IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, SUZANNE REIDER, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I work at Google Inc. as the Director of Sales for YouTube. I have been employed by Google since Google's acquisition of YouTube in November 2006. Prior to that, I served as the Chief Marketing Officer for YouTube. Before starting work at YouTube in September 2006, I worked at CNET, where I was the Senior Vice President and General Manager of the Entertainment Group. Through my positions at both CNET and Google, I have gained extensive professional experience in the field of Internet advertising and digital media.

2.      My job responsibilities at YouTube/Google have focused primarily on leading YouTube's advertising-sales efforts. I supervise a team of sales representatives whose job is to sell advertising and marketing programs on YouTube to a host of different advertisers, including some of the largest and most

well-known companies in America. In order to do that, I have to be familiar with the kinds of advertising opportunities that are available on YouTube, including where on the YouTube website advertising is allowed to appear and the types of advertisements that are allowed to appear on different types of pages.

3. YouTube's precise advertising opportunities have changed somewhat over the years to keep pace with the dynamic nature of Internet advertising. In general, however, there have been three primary advertising products that YouTube has made available to advertisers during my time at the company. *First*, we sell an advertisement on the YouTube homepage (www.youtube.com), which we call the "homepage ad." This ad, which can take several different creative forms, is sold to a single advertiser for a 24-hour period. *Second*, YouTube allows advertisers to purchase advertising on the pages of the YouTube website where the results of users' search queries are displayed. We refer to these pages as "search-results pages." *Third*, YouTube allows advertising to be displayed on pages where users can watch videos that have been uploaded or affirmatively claimed by one of YouTube's many "content partners" (content owners who have entered into written agreements with YouTube beyond the terms of service to allow their content to appear on YouTube and have advertising displayed against it). We call these pages "partner-watch pages."

4. Thousands of companies have purchased advertising space on YouTube during my time at the company, including most of the "Ad Age Top 100," a widely used industry list of the nation's top 100 advertisers. In 2009, over three-quarters of the Ad Age Top 50 advertised on YouTube. Those advertisers include some of the world's largest and best-known brands: Procter & Gamble, General Electric, PepsiCo., American Express, Bank of America, Kraft Foods, and Sears, just to name a few. In addition, large media companies and other prominent content owners— including Time Warner, Disney, News Corp., Lions Gate Entertainment, CBS (in

particular, for its coverage of the NCAA Final Four tournament), and the NBA—
also have invested in advertising space on YouTube. Viacom itself has advertised
on YouTube. Between 2006 and 2008, Viacom spent well over a million dollars
purchasing advertising space on the YouTube website, including on the YouTube
homepage and search-results pages.



6.     For some of YouTube's advertising products, such as the homepage ad,
YouTube charges advertisers a flat rate for their ad to appear for a certain amount
of time. That means that the price that an advertiser pays to run a homepage ad
does not vary based on how many users view or interact with that advertisement
while it is displayed.

7.     The pricing mechanism for other kinds of advertising is much more
complicated. For some types of ads, the advertiser pays a fixed amount each time a
user "clicks" on the advertisement itself. These type of ads are called "CPC" ads (or
"cost per click"). Typically, clicking on a CPC ad takes the user to another webpage
(whether on the YouTube website or on some other website) that provides further
information about the advertiser's product or business. Closely related to a CPC ad
is a "CPV" (or "cost per view") ad, where the advertisement takes the form of a
video, and the advertiser pays a fixed amount each time a user clicks on and views
the video-ad. For other types of ads, the advertiser pays a fixed amount for every
1000 "impressions" that are shown of the ad. An "impression" is a technical term in
the Internet advertising industry, but it basically refers to the advertisement being
displayed on a user's computer screen. These impression-based ads are called

"CPM" ads (or "cost per mille [1000 impressions]"). "CPC," "CPV," and "CPM" are generic terms used in Internet advertising since long before YouTube was founded, and CPC, CPV, and CPM ads are standard types of Internet ads that run on countless websites, large and small.

8. At various times, CPC, CPV, and CPM ads have all appeared on YouTube search-result pages. Today, the majority of the advertising that appears on search-results pages are CPV video-ads uploaded to YouTube by advertisers. Such ads have gone by various names, but today we call them "promoted videos."

9. As for the advertising that appears on partner-watch pages, such advertising will only appear when YouTube has entered into a written agreement with a content partner, and the content partner has affirmatively indicated that it wants advertisements to run in conjunction with videos that the partner has posted or claimed. YouTube is frequently introducing new advertising concepts on partner-watch pages, working in close collaboration with content partners and advertisers. As one of many such examples, last year, at the request of a content partner (Universal Music Group), American Express sponsored the live-streaming on YouTube of a concert that Alicia Keys gave to benefit her AIDS foundation.

10. There was a period prior to January 2007 when YouTube allowed ads be displayed on video-watch pages more broadly. But we had no reason to believe that any given watch page where an advertisement might have appeared was displaying a video that was not properly authorized to be on YouTube. During that period, moreover, YouTube would have received the same rates for watch-page ads regardless of what videos those ads appeared next to.

11. None of YouTube's advertising offerings in any way favors videos that may not have been properly authorized to appear on YouTube over authorized videos. YouTube does not seek to earn advertising revenue from any potentially infringing activities.

12.     From my professional experience, I am familiar with the kinds of advertising options offered by competing video websites (such as Daily Motion, Vimeo, Veoh, and Atom), other websites that are focused on user-submitted content (such as MySpace and Facebook), and video-ad networks (such as Tremor and VideoEgg) that aggregate for advertising purposes video inventory running on thousands of websites that host video. The kinds of advertising that YouTube allows to appear (including CPC and CPM ads, as well as in-video ads and overlays) are similar to the advertising that these websites and networks make available to advertisers and allow to be displayed on their platforms. YouTube's advertising offerings are consistent with prevailing industry standards.

I certify under penalty of perjury that the foregoing is true and correct.

Dated:     San Bruno, California
           March 1, 2010

_____
                Suzanne Reider