# SCHAPIRO DECLARATION EXHIBITS CONTINUED

# Schapiro Exhibit 36



415 West Broadway, Suite 2N New York, NY 10012

# Table of Contents

Paramount Book Two

1. Heartbreak Kid Contract and Proposal
2. Heartbreak Kid Campaign Wrap Up
3. Beowulf Contract and Proposal
4. Beowulf Campaign Wrap Up

# Consultant Agreement

This Agreement (the "**Agreement**") is entered into as of August 5, 2007 ("**Effective Date**"), by and between ICED MEDIA, INC. ("**Consultant**"), Federal Tax ID # _____ and PARAMOUNT PICTURES CORPORATION ("**Paramount**") with respect to the development of the online marketing and promotional campaign, including the development of the official Facebook.com online profile (the "**Profile**"), tied to the motion picture "THE HEARTBREAK KID" (the "**Picture**"). Consultant and Paramount are collectively referred to herein as the "**Parties**" and at times each is individually referred to herein as a "**Party**." For good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

**1.**     Services. Paramount hereby engages Consultant on an independent contractor basis to create and maintain an online marketing and promotional campaign for the Picture (the "**Campaign**"), as well as to create, populate, maintain and promote the Profile (collectively, the "**Services**"). In connection with the Services, Consultant shall perform as set forth in the proposal attached hereto as Exhibit A (the "**Proposal**"). The services detailed in the Proposal are incorporated herein by reference. Consultant shall also prepare a wrap-up report (the "**Wrap-Up Report**") upon completion of the Services; such Wrap-Up Report shall provide, without limitation, screenshots, results and statistics associated with the Services. In connection with the Profile, Consultant shall utilize Flash graphics, incorporate the Picture trailer, and stream Picture clips, as more specifically set forth in the Facebook Initiative attached hereto as Exhibit B (the "**Facebook Initiative**"). Consultant will ensure that the Profile is optimized to work on all browsers. Consultant shall work with Paramount to develop various banners, blog headers and other graphics relating to the Picture and develop contests and promotions. Consultant shall provide Paramount with a weekly report summarizing the activity on the Profile, including member/impression total, weekly percentage increases, projected populations, cost per member and views per member. The Consultant shall take all other steps necessary to create a robust Facebook presence for the Picture. Consultant shall launch the Profile no later than August 18, 2007, unless otherwise agreed by the Parties. Consultant shall not be responsible for changes to the internal architecture of Facebook coding that effects the Profile, technical difficulties beyond Consultant's control such as Facebook becoming unavailable, and problems arising from third party community building tools used by Consultant to develop the Profile.

**2.**     Approval Rights. Consultant shall obtain Paramount's prior written approval prior to launching the Profile and the posting of any other materials related to the Picture campaign.

**3.**     Fees. Provided there is no breach or default by Consultant hereunder, as full and complete compensation for all Services rendered and all rights transferred to Paramount by Consultant hereunder, Paramount will pay Consultant the following fees (collectively, the "**Consultant Fee**") which Consultant Fee shall accrue and be payable as follows:

   3.1.    Consultant Fee for Campaign Services: A total of ~~$████~~ shall be payable as follows: (i) $~~████~~ upon execution of this Agreement; and (ii) $~~████~~ upon completion of the Services.

   3.2.    Consultant Fee for the Profile Services: A total of ~~$████~~ shall be payable as follows: (i) $~~████~~ upon execution of this Agreement; and (ii) ~~$████~~ upon completion of the Services.

   3.3.    Payments will be made by mailing a check to the address specified in Section 10.1 after Paramount's receipt of a written invoice. The Consultant Fees set forth above are the total consideration that will be payable for Consultant's Services and no additional payment obligations under this Agreement will be owed to Consultant in connection with the Services.

4. Term and Termination

   4.1. The term of this Agreement will begin on the Effective Date and, unless earlier terminated pursuant to the provisions of this Agreement, end upon October 31, 2007 (the "**Term**").

   4.2. In addition to any termination rights otherwise set forth in this Agreement and without prejudice to any of its other rights and remedies, Paramount will have the right, upon a breach or default of an obligation, representation and/or warranty hereunder by Consultant, to give a written notice of breach to Consultant, in which event Consultant shall have twenty-four (24) hours to cure said breach, provided said breach is curable. If Consultant does not timely cure the alleged breach, Paramount shall be entitled to terminate this Agreement, or assess Consultant a penalty of two percent (2%) of the total Consultant Fee per day until Consultant cures such alleged breach. Such termination shall be effected by Paramount giving written notice of termination to Consultant. If it should be determined by a court of competent jurisdiction that Paramount has improperly terminated this Agreement pursuant to this Section, such termination shall be deemed a termination for convenience, which Paramount may pursue for any reason or no reason upon three (3) days advance notice in writing to Consultant and upon the payment to Consultant of a prorated portion of the Consultant Fee earned, and all actual, out-of-pocket, verifiable costs incurred, by Consultant prior to termination. The remedies specified in this Section shall be cumulative and in addition to any other remedies available, whether in equity or at law.

5. Work Made For Hire. It is expressly agreed that the Services, any and all results of the proceeds of the Services and the Profile and any other materials created under this Agreement have been specially ordered or commissioned by Paramount and, accordingly, that they are to be "work made for hire" as defined in the Copyright Act of 1976, and Paramount will be considered the author and sole and exclusive owner of such Services, any and all results of the proceeds of the Services and the Profile and all intellectual property rights therein in perpetuity, throughout the universe, in any and all media whether now known or hereafter devised. To the extent that the Services, any and all results of the proceeds of the Services and the Profile do not, in whole or in part, qualify as "works made for hire" under Section 101 of the Copyright Act or equivalent foreign law, Consultant hereby irrevocably grants, transfers, sells and assigns to Paramount and its successors and assigns of any and all of Consultant's right, title and interest therein under any such relevant copyright laws, including, without limitation, all worldwide copyrights and renewals, extensions and restorations thereof in perpetuity throughout the universe. Furthermore, Consultant hereby irrevocably transfers, conveys and assigns to Paramount and its successors and assigns any of its right, title and interest in and to all intellectual property rights, other than those existing under all relevant copyright laws, in and to all elements of the Services, any and all results of the proceeds of the Services, and the Profile and any derivative works thereof throughout the world, and in any language, including, without limitation, any and all rights existing under the laws governing patents, trademarks, trade secrets, unfair competition, moral rights, publicity rights, privacy rights and any other similar proprietary rights, now or hereafter in force and effect in the United States and throughout the universe. In addition, any rights or property of any kind acquired by Consultant in the course of performing its Services for Paramount under this Agreement (including, without limitation, the contract rights), if any, are hereby irrevocably assigned to Paramount and will be held by Consultant only for the account and benefit of Paramount. Consultant, on Consultant's behalf and on behalf of Consultant's heirs, successors and assigns hereby waives any so-called "droit moral" rights, "moral rights of authors" and all other similar rights throughout the world which Consultant may have in connection herewith, and to the extent such waiver is unenforceable, Consultant hereby covenants and agrees on Consultant's behalf, and on behalf of Consultant's heirs, successors and assigns, not to bring any claim, suit or other legal proceeding against Paramount, its successors, assigns or licensees claiming that any of Consultant's "moral rights" have been violated.

6. Representations and Warranties.

      6.1. Consultant represents and warrants that: (i) it has full authority and ability to enter into this Agreement and perform its obligations hereunder; (ii) it will devote its best efforts to perform the Services, and the Services, as performed by either Consultant or any third parties engaged by Consultant, will be performed in a diligent, first-class, timely, technically competent and professional manner and within commercially superior industry standards; (iii) the Profile and any other content created hereunder by Consultant will not contain any virus, "Trojan horse," or other destructive device that could erase data or programming, create the potential for a breach of security, or otherwise compromise the Profile; and (iv) Consultant owns, controls or has the necessary rights to create the Profile and all other materials provided, developed or used by Consultant in connection with the Services.

      6.2. Paramount represents and warrants that: (i) it has the right, power and authority to enter into this Agreement and to perform all of its obligations, financial or otherwise, hereunder; (ii) it owns, controls or has all necessary rights to the Picture and any related materials which Paramount may provide to Consultant (collectively, the "**Paramount Properties**"); and (iii) the Paramount Properties and Consultant's use thereof (as contemplated by this Agreement) will not infringe upon or violate any intellectual property right of any person or entity.

7. Indemnification.

      7.1. Consultant agrees, at its sole expense, to indemnify and hold Paramount and its successors, licensees and assigns and their respective parent, subsidiary and affiliated companies, members, shareholders, directors, officers, employees and agents (the "**Paramount Indemnities**"), harmless from and against any and all claims, damages, losses, actions, causes of action, liabilities, costs and expenses, including attorneys' fees (collectively, "**Losses**") (i) arising out of any breach or alleged breach by Consultant of any representation, warranty, covenant or other provision hereof made by Consultant, or (ii) asserted by or on behalf of any person or entity by reason of any breach of contract or tort committed by Consultant. Consultant will pay all costs, damages and expenses, including, without limitation, reasonable attorneys' fees, awarded against or otherwise incurred by the Paramount Indemnities in connection with or arising from any such Losses. Paramount shall promptly notify Consultant in writing of each such claim. Consultant will not settle any such Losses without Paramount's prior written consent.

      7.2. Paramount agrees, at its sole expense, to indemnify and hold Consultant harmless from and against any and all Losses which result from, or relate in any way to a third party claim alleging that the Paramount Properties, as provided to Consultant, infringes a previously issued U.S. patent, trademark, trade secret or copyright. Paramount will pay all costs, damages and expenses, including, without limitation, reasonable attorneys' fees, awarded against or otherwise incurred by Consultant in connection with or arising from any such Losses. In the event that Consultant seeks indemnification under this Section 7.2, Consultant will promptly notify Paramount in writing of the Losses for which Consultant seeks indemnification. Paramount shall have full and complete authority (including settlement authority) for such indemnification. This Section 7.2 states Consultant's sole and exclusive remedy and Paramount's entire liability for any claim of infringement.

8. Limitation of Liability. IN NO EVENT SHALL PARAMOUNT BE LIABLE TO CONSULTANT FOR ANY INCIDENTAL, INDIRECT, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, LOSSES, COSTS OR EXPENSES OF ANY KIND, HOWEVER CAUSED AND WHETHER BASED IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHER LEGAL OR EQUITABLE THEORY AND INCLUDING DAMAGES FOR INTERRUPTION OF BUSINESS, LOST PROFITS, OR THE LIKE, EVEN IF PARAMOUNT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, LOSSES, COSTS OR EXPENSES. THE FOREGOING

LIMITATION OF LIABILITY AND EXCLUSION OF CERTAIN DAMAGES SHALL APPLY WITHOUT REGARD TO WHETHER OTHER PROVISIONS OF THIS AGREEMENT HAVE BEEN BREACHED OR HAVE BEEN DETERMINED BY A COURT OF COMPETENT JURISDICTION TO BE INVALID, VOID OR UNENFORCEABLE.

9.  Confidentiality. "**Confidential Information**" means information relating to the research, development, products, trade secrets, marketing and business plans, customers, and other data related to the business or affairs of Paramount, its parent or its subsidiaries or affiliates, including without limitation, the terms of this Agreement and the negotiations related to it and the existence and nature of the Services furnished or developed hereunder. Confidential Information does not include any information (i) which has become publicly known through no fault or wrongful acts of Contractor; (ii) which Contractor developed or acquired independently without reliance in any way on Confidential Information, as evidenced by appropriate documentation; or (iii) approved in writing by Paramount for the use and disclosure by Contractor without restriction. Consultant shall maintain in strict confidence, shall not disclose, and shall take all reasonable precautions to prevent the unauthorized dissemination, both during and after termination of the Agreement, of the Confidential Information. Consultant shall not use any Confidential Information for its own benefit or for the benefit of anyone other than Paramount. All Confidential Information remains the property of Paramount, and no license or other rights in the Confidential Information is granted hereby. Consultant agrees to return to Paramount all Confidential Information, including but not limited, to all computer programs, documentation, notes, plans, drawings, and copies thereof, upon termination of this Agreement. Consultant agrees that in the event of any actual or threatened breach of these confidentiality obligations, Paramount will have no adequate remedy at law and will be entitled to injunctive and other equitable relief to prevent such breach, without the necessity of posting a bond. Such relief shall not be deemed to be the exclusive remedy for a breach of this Agreement but shall be in addition to all other remedies available at law or in equity. No failure or delay by Paramount in exercising any right hereunder shall operate as a waiver hereof.

10. General Provisions.

10.1. Notice. Any notice pertaining hereto shall be in writing. Any such notice and any payment due hereunder shall be served by delivering said notice or payment personally or by sending it by mail, cable, or confirmed facsimile addressed to the Paramount's and Consultant's addresses as follows (or as subsequently designated in writing):

| If to Paramount: | If to Consultant |
|---|---|
| Paramount Pictures Corporation<br>5555 Melrose Avenue<br>Hollywood, California 90038<br>Attn: Amy Powell, SVP | Iced Media, Inc.<br>415 West Broadway, 2nd Floor<br>New York, NY 10012<br>Attn: Scott Hurwitz |

With courtesy copies to:

Paramount Pictures Corporation
5555 Melrose Avenue, MOB 3200
Hollywood, California 90038
Attn: Paul Koenig

The date of personal delivery, mailing, or confirmed facsimile of such notice or payment shall be deemed the date of service of such notice or payment, unless otherwise specified herein; provided, that if Paramount's notice to Consultant is sent by regular mail (i.e., in a post-paid, certified or registered

wrapper), the date of giving such notice to Consultant shall be deemed to be the date two (2) days after such notice is so mailed.

10.2. <u>Waiver of Injunctive Relief</u>. Consultant's remedies for any breach of this Agreement are limited to an action at law for money damages, if any. Consultant shall not be entitled to equitable relief, and under no circumstances shall Consultant have the right to interfere with the ownership or exploitation by Paramount of the Profile or the Picture.

10.3. <u>Compliance with Laws</u>. Consultant will cooperate with Paramount to ensure the Profile and any related materials created by Consultant in connection with the Picture do not violate any privacy rules, laws or regulations or Paramount's privacy policies; any Paramount procedures, as Paramount may disclose from time to time throughout the Term; and/or any other MPAA or other administrative agency procedures to which Paramount subscribes.

10.4. <u>Publicity Releases</u>. Consultant may not issue any publicity releases, public relations materials or advertisements concerning this Agreement, the Picture or the Profile, including, without limitation, the development, publication, marketing or distribution thereof, without Paramount's prior written approval, which approval may be withheld in Paramount's sole discretion.

10.5. <u>No Joint Venture</u>. Nothing contained herein shall constitute a partnership between or by the Parties hereto or constitute either Party the agent of the other. Neither Party shall hold itself contrary to the terms of this Section and neither Party shall become liable for any representation, act or omission of the other contrary to the provision hereof. This Agreement is not for the benefit of any third party and shall not be deemed to give any right or remedy to any such party whether referred to herein or not.

10.6. <u>No Obligation to Use</u>. Consultant acknowledges and agrees that Paramount is not obligated to distribute, release or otherwise exploit the Profile, in any way, Paramount's obligations being fully and completely satisfied by the payment of the Consultant Fee.

10.7. <u>Governing Law</u>. This Agreement, the rights and obligations of the Parties, and any claims or disputes relating in any way thereto shall be governed by and construed in accordance with the laws of the State of California, without regard to its choice of law principles which would require application of the laws of another jurisdiction. Each Party, by executing this Agreement, hereby irrevocably submits to the exclusive jurisdiction of any California court sitting in Los Angeles County in respect of any suit, action or proceeding arising out of or in any way relating to this Agreement.

10.8. <u>Other Terms</u>. This Agreement supersedes all prior negotiations, understandings and agreements between the Parties hereto with respect to the subject matter hereof, and the Parties each respectively acknowledge and agree that they have not relied on any representations or promises in connection with this Agreement not contained herein. Paramount shall be free to assign this Agreement, or any part hereof, at any time, to any person or entity. Consultant shall not have the right to assign its rights or delegate his obligations under this Agreement without Paramount's prior written consent, and any attempted assignment without such consent shall be null and void ab initio. This Agreement cannot be modified or amended in any way except by a written instrument signed by the Parties. The waiver of any term, condition, or breach of this Agreement shall not be deemed to be a waiver of that breach or any other term or condition in the future. The headings of the Sections hereof are for convenience only and shall not be deemed to limit or in any way affect the scope, meaning or intent of this Agreement or any portion hereof. Should any Section or provision of this Agreement be held to be void, invalid or inoperative as a result of any judicial or administrative proceeding or decree, such decision shall not affect any other Section or provision hereof, and the remainder of this Agreement shall be effective as though such void, invalid or inoperative Section or provision had not been contained herein.

10.9. <u>Survival</u>. The provisions contained in Sections 4, 5, 6, 7, 8, 9 and 10 will survive any termination or expiration of this Agreement.

10.10. <u>Independent Legal Advice</u>. Each Party acknowledges that it has obtained or has been afforded the reasonable opportunity to obtain independent legal advice with respect to this Agreement and that it understands the nature and consequences of this Agreement.

**IN WITNESS WHEREOF**, please confirm your agreement to the foregoing by signing in the space provided below.

| **ICED MEDIA, INC.** | **PARAMOUNT PICTURES CORPORATION** |
|---|---|
| Name:_____ | Name:_____ |
| Title:_____ | Title:_____ |
| Date:_____ | Date:_____ |

# **EXHIBIT A**

# **(PROPOSAL)**

# Online Marketing, Promotion, & Press
for
## The Heartbreak Kid






## Who Is ICED Media

ICED Media is an integrated marketing company that specializes in online and research initiatives. We are a leaner, meaner agency that doesn't subscribe to the same old run-of-the-mill marketing ideals many traditional companies follow. We believe in creating a plan and developing ideas that deliver unrivaled results.

Trusted by clients such as:



# How Does ICED Media Do It



## We are strategists.

- Our solid relationships with key sites and blogs guarantee your content is seen

- We understand how to manage assets, adhere to guidelines, and drive traffic as well as awareness

- We are online tastemakers who stay ahead of the curve, identifying key sites that can be leveraged to promote our clients

- We know how to build positive buzz for brands using a holistic campaign structure



# The Heartbreak Kid and ICED Media

At ICED Media, we deliver the most effective viral video campaigns in the industry. Equipped with the strongest blogger relationships, largest database of user-generated video upload sites, and deepest roots in the world of social networking, ICED Media is the team to take the latest Farrelly Brother's hit to the masses.

With the Fartelly brother's impressive resume and Ben Stiller's comedic track record, *The Heartbreak Kid* is bound for laugh-out-loud laughs and huge commercial success. ICED Media's properly-targeted online campaign will ensure that content is in all of the right places online as *The Heartbreak Kid* hits theaters, building the buzz that will help make it a box-office success.

Hugely successful online campaigns for comedies *Blades of Glory, Nacho Libre and Norbit* as well as work with Comedy Central's *Sarah Silverman Show, South Park* and *Lil Bush* have allowed the ICED Media team to a build an extensive database of webmasters, bloggers, writers, and media contacts that will be eager to receive *The Heart Break Kid* content. These pre-existing contacts, coupled with a continuing effort to find new sites throughout the campaign, will help us bring *The Heart Break Kid* to all of the online destinations relevant to the target audience, ranging from mainstream movie and entertainment sites and blogs to viral, comedy, college, technology, music, entertainment, dating, wedding, and lifestyle sites.

As we do with all our projects, ICED adapts to meet our clients needs throughout each campaign. We are always available to make each campaign a success.



# The Heartbreak Kid Program Objectives

- Raise awareness and anticipation of theatrical release of The Heartbreak Kid via online press and promotions
- Further expand the audience for The Heartbreak Kid
- Build on the success of The Heartbreak Kid cast's previous projects such as There's Something About Mary, Meet the Parents, Dodgeball, Harold and Kumar Go to White Castle, Zoolander, Blades of Glory, "The Daily Show" and more.
- Target movie, viral, dating, wedding, lifestyle, comedy, college humor, and sketch comedy fans to inform them of online features and contests
- Provide access to The Heartbreak Kid information via press releases, news coverage, etc.
- Generate fan email lists for email database
- Increase sales of The Heartbreak Kid tickets



# *The Heartbreak Kid* Program Timeline





Sample invite from ICED event for Comedy Central

## Phase 1

- Our creative department will design a mock letter encouraging webmasters to try to "trade up", and come to an informational session to see how they can make the trade
- This pdf will double as an invite to a special screening event for HBK with a possible Q&A with the Farrelly Brothers
- Upload first pieces of content (trailers, etc) to 30+ viral sites in appendix A
- Embedded players will be serviced to blogs and sites in appendix B
- News and trailer features at main entertainment sites in appendix B
- Build Facebook profile, start recruiting members, launch first missions/contests