form and substance reasonably satisfactory to such counsel, which representation letters shall not have been withdrawn or modified.

        (f)    <u>Legal Opinion</u>. The Company shall have received the opinion of Wilson Sonsini Goodrich & Rosati, Professional Corporation, in form and substance reasonably satisfactory to Parent, with respect to the matters set forth on Exhibit E hereto.

        (g)    <u>280G Stockholder Approval</u>. With respect to any payments and/or benefits that the Company or Parent reasonably determine may constitute "parachute payments" under Section 280G of the Code with respect to any Employees, the Company Stockholders shall have (i) approved, pursuant to the method provided for in the regulations promulgated under Section 280G of the Code, any such "parachute payments" or (ii) shall have voted and disapproved such parachute payments, and, as a consequence, such "parachute payments" shall not be paid or provided for in any manner and Parent and its subsidiaries shall not have any liabilities with respect so such "parachute payments."

    7.3    <u>Conditions Precedent to Obligation of the Company</u>. The obligation of the Company to consummate the Merger is subject to the satisfaction (or prior written waiver by the Company in its sole discretion) of each condition precedent listed below.

        (a)    <u>Accuracy of Representations and Warranties</u>. The representations and warranties of Parent set forth in this Agreement (disregarding all qualifications and exceptions contained therein regarding materiality or a Parent Material Adverse Effect) shall be true and correct as of the Effective Date and as of the Closing Date as though made on and as of such date, except as contemplated by this Agreement or where the failure of any such representation or warranty to be so true and correct as of the Effective Date or as of the Closing Date would not have a Parent Material Adverse Effect (unless any such representation or warranty is made only as of a specific date, in which event such representation or warranty shall be true and correct only as of such specific date, except as contemplated by this Agreement or where the failure of any such representation or warranty to be so true and correct would not have a Parent Material Adverse Effect).

        (b)    <u>Compliance with Obligations</u>. Each of Parent and Merger Sub shall have performed in all material respects all agreements, obligations and covenants herein required to be performed or observed by it on or prior to the Closing Date.

        (c)    <u>Officer's Certificate</u>. The Company shall have received an officer's certificate duly executed by the Chief Executive Officer and Chief Financial Officer of Parent to the effect that each of the conditions set forth in Section 7.3(a) and Section 7.3(b) have been satisfied.

        (d)    <u>Tax Opinion</u>. The Company shall have received the opinion of Wilson Sonsini Goodrich & Rosati, Professional Corporation, dated as of the Effective Time, to the effect that the Merger (taken together with the Second Step Merger, if applicable) will qualify as a reorganization within the meaning of Section 368(a) of the Code. The issuance of such opinion shall be conditioned upon receipt by such counsel of customary representation letters from each

HIGHLY CONFIDENTIAL        TP000121

of Parent, Merger Sub and Company, in each case, in form and substance reasonably satisfactory to such counsel, which representation letters shall not have been withdrawn or modified.

## ARTICLE 8

## TERMINATION

8.1    Termination. This Agreement may be terminated and the Merger contemplated hereby may be abandoned at any time prior to the Effective Time, notwithstanding any Stockholder Consents:

(a)    By mutual written consent duly authorized by the Parent and the Board of Directors of the Company;

(b)    By either Parent or the Company if the Merger shall not have been consummated on or before April 9, 2007 (; *provided, however,* that the right to terminate this Agreement under this Section 8.1(b) shall not be available to any party whose willful failure to fulfill any material obligation under this Agreement has been the cause of, or resulted in, the failure of the Merger to have been consummated on or before such date;

(c)    By either Parent or the Company, if a Court or Governmental Authority shall have issued an Order or taken any other action, in each case which has become final and non appealable and which restrains, enjoins or otherwise prohibits the Merger;

(d)    By Parent, if the Stockholder Consents shall not have been obtained at or prior to the Effective Time;

(e)    By Parent, if neither Parent nor Merger Sub is in material breach of its obligations under this Agreement, and if (i) at any time that any of the representations and warranties of the Company herein become untrue or inaccurate such that Section 7.2(a) would not be satisfied (treating such time as if it were the Effective Time for purposes of this Section 8.1(e)) or (ii) there has been a breach on the part of the Company of any of its covenants or agreements contained in this Agreement such that Section 7.2(b) would not be satisfied (treating such time as if it were the Effective Time for purposes of this Section 8.1(e)), and, in both case (i) and case (ii), such breach (if curable) has not been cured within 30 days after notice to the Company;

(f)    By the Company, if it is not in material breach of its obligations under this Agreement, and if (i) at any time that any of the representations and warranties of Parent or Merger Sub herein become untrue or inaccurate such that Section 7.3(a) would not be satisfied (treating such time as if it were the Effective Time for purposes of this Section 8.1(f)) or (ii) there has been a breach on the part of Parent or Merger Sub of any of their respective covenants or agreements contained in this Agreement such that Section 7.3(b) would not be satisfied (treating such time as if it were the Effective Time for purposes of this Section 8.1(f), and such breach (if curable) has not been cured within 30 days after notice to Parent; Termination of Agreement.

60

8.2     Effect of Termination.  Other than the obligations set forth in this Section 8.2 and under ARTICLE 10, if this Agreement is terminated pursuant to Section 8.1, then all further obligations of the parties hereto under this Agreement will terminate, except such termination will not relieve any party hereto from any Liability for any fraudulent, intentional or willful breach of this Agreement.

## ARTICLE 9

## INDEMNIFICATION

9.1     Survival of Representations and Warranties.  Each representation and warranty contained in ARTICLE 3, ARTICLE 4 and ARTICLE 5 will survive the Closing and continue in full force and effect until the one-year anniversary of the Closing Date, except (i) the representations and warranties set forth in Section 3.10 (Tax Matters), which will survive the Closing and continue in full force and effect until sixty (60) days after the applicable statute of limitations expires, (ii) the representation and warranty set forth in Section 3.3 (Capitalization), which will survive the Closing and will continue in full force and effect indefinitely (clauses (i) and (ii), collectively, the "Fundamental Representations") and (iii) any claim with respect to any fraudulent, intentional or willful breach of any representation will survive and can be made by an Indemnified Party indefinitely.  The expiration of representations and warranties provided herein shall not affect the right of any Indemnified Party in respect of any claim made by such Indemnified Party in a written notice that is delivered pursuant to and in compliance with the provisions of this ARTICLE 9 prior to the expiration date(s) specified above.

9.2     Indemnification by the Company Stockholders.  Subject to the terms of this ARTICLE 9, each of the Company Stockholders, severally (based on the respective Pro Rata Shares of such Company Stockholders) and not jointly, shall indemnify and hold harmless Parent and its Affiliates (including the Company after the Effective Time) and their respective officers, directors, managers, members, partners, employees, agents and representatives, successors and assigns (the "Parent Indemnified Parties") against, and reimburse any Parent Indemnified Party for, all Damages that such Parent Indemnified Party suffers or incurs as a result of:

(a)     the failure of any representation or warranty of the Company contained in ARTICLE 3 of this Agreement to be true and correct as of the Effective Date and as of the Closing Date as if made on the Closing Date, except to the extent that any such representation or warranty relates to a specific date, in which case the failure of such representation or warranty to be true and correct as of such date, in each case with Damages being determined without regard to any materiality (including the word "material"), Company Material Adverse Effect or similar qualifier contained therein but with full effect being given to all such qualifications for purposes of determining whether any representation or warranty that is so qualified is true and correct;

(b)     the breach by the Company of any of its covenants or agreements contained in this Agreement to be performed prior to the Closing in each case with Damages being determined without regard to any materiality (including the word "material"), Company Material Adverse Effect or similar qualifier contained therein but with full effect being given to all such qualifications for purposes of determining the existence of a breach of any covenant or agreement that is so qualified;

61

(c)     any Indemnified Copyright Action (including any Damages arising prior to or after the Effective Time);

(d)     the amount of any Dissenting Share Payments;

(e)     the amount of (i) all Company Transaction Expenses in excess of $250,000 that is not paid prior to the Closing by the Company and (ii) all payments under the 2006 Retention Cash Bonus Program; and

(f)     solely in the case of Company Stockholders who are Stockholder Parties, the failure of any representation of such Stockholder Party to be true and correct as of the Effective Date and as of the Closing Date as if made on the Closing Date, except to the extent that any such representation or warranty relates to a specific date, in which case the failure of such representation or warranty to be true and correct as of such date, in each case with Damages being determined without regard to any materiality (including the word "material"), Company Material Adverse Effect or similar qualifier contained therein but with full effect being given to all such qualifications for purposes of determining whether any representation or warranty that is so qualified is true and correct; *provided, however,* that for the avoidance of doubt, with respect to a breach by a Stockholder Party giving rise to an indemnification obligation under this Section 9.2(f), all Damages determined to be subject to such indemnification obligation shall be payable in full solely by such Stockholder Party.

9.3     Exclusive Remedy. From and after the Effective Time, except in the case of fraud, the indemnification provisions set forth in Section 9.2 shall be the Parent Indemnified Parties' sole and exclusive remedy for all Damages arising out of this Agreement and the transactions contemplated hereby, and Parent hereby waives, for and on behalf of all of the Parent Indemnified Parties, any and all other remedies, whether at law or in equity, that are otherwise available to the Parent Indemnified Parties, or any of them, arising out of this Agreement and the transactions contemplated hereby, provided, however, that notwithstanding the foregoing, nothing in this Agreement shall eliminate the ability of any party hereto to apply for equitable remedies to enforce the other party's or parties' obligations under this Agreement.

9.4     Indemnification Claims.

(a)     Subject to the terms of this Agreement, no Parent Indemnified Party shall be entitled to recover any Damages pursuant to the indemnification obligations set forth in Section 9.2 hereof unless and until the Company Stockholders Agent receives a written notice (a "Notice of Claim") of a claim for indemnification under Section 9.2 (an "Indemnification Claim") (with a copy to the Escrow Agent) stating, to the then current Knowledge of Parent, (i) that a Parent Indemnified Party has actually suffered or incurred Damages for which such Parent Indemnified Party believes in good faith that it may be entitled to indemnification under Section 9.2, or believes in good faith that a Parent Indemnified Party could suffer or incur Damages for which such Parent Indemnified Party believes in good faith that it may be entitled to indemnification under Section 9.2, (ii) to the extent then known by the Parent Indemnified Party, a brief description, in reasonable detail, of the facts, circumstances or events giving rise to the Indemnification Claim (and the Damages, to the extent known, forming the basis of such Indemnification Claim), including to the extent then known by the Parent Indemnified Party the

62

identity and address of any third-party claimant and copies of any formal demand or complaint, and (iii) the representation, warranty or covenant of this Agreement that may form the basis of such Indemnification Claim under Section 9.2. To be valid pursuant to this Section 9.4, a Notice of Claim relating to an Indemnification Claim under Section 9.2(a) must be received by the Stockholders Agent prior to the expiration of the representation or warranty forming the basis of such claim, and any delivery or attempted delivery of a Notice of Claim after such expiration date shall be void and of no force or effect. In the event that a Parent Indemnified Party shall deliver a Notice of Claim with respect to any claim that is not a Copyright Action but would constitute a Copyright Action if filed or instituted in any Court, such Notice of Claim shall not be effective unless and until a Copyright Action is filed or instituted in Court on or prior to the one-year anniversary of the Closing Date.

(b)     After receipt of a Notice of Claim, the Stockholders Agent shall have thirty (30) Business Days following such party's receipt of the Notice of Claim in which to deliver notice of objection to such claim to the Parent Indemnified Party and the Escrow Agent. If no objection notice is given within such 30 Business Day period, then the Indemnification Claim set forth in the related Notice of Claim shall be deemed to be valid and indemnifiable pursuant hereto, whereupon the Escrow Agent shall deliver to such Parent Indemnified Parties (as allocated from the Escrow Shares then remaining in the Escrow Account pursuant to Section 9.4(d)) Escrow Shares equal in value (valued at the Company Closing Price) to the amount of the Indemnification Claim set forth in the Resolved Claim Notice. In the event that the Stockholders Agent shall deliver written objection to any Indemnification Claim set forth in a Notice of Claim within the foregoing 30 Business Day period, then no Parent Indemnified Party shall be entitled to any indemnification payment and release of Escrow Shares in respect thereof unless and until such Indemnification Claim is finally resolved by mutual agreement, Court Order or settlement. In the event that a Parent Indemnified Party and the Stockholder Agent shall mutually agree to resolve a disputed Indemnification Claim in favor of the Parent Indemnified Parties (or any of them), then the applicable Parent Indemnified Parties and the Stockholders Agent shall provide joint written notice (the "Resolved Claim Notice") of such offset to the Escrow Agent, whereupon the Escrow Agent shall deliver to such Parent Indemnified Parties (as allocated from the Escrow Shares then remaining in the Escrow Account pursuant to Section 9.4(d)) Escrow Shares equal in value (valued at the Company Closing Price) to the amount of the Indemnification Claim set forth in the Resolved Claim Notice. In the event that a disputed Indemnification Claim shall be resolved by Court Order in favor of the Parent Indemnified Parties (or any of them), then the Parent Indemnified Party shall be permitted to unilaterally deliver a Resolved Claim Notice (a "Unilateral Resolved Claim Notice") to the Escrow Agent (with a copy of the Court Order related thereto), whereupon the Escrow Agent shall deliver to such Parent Indemnified Parties (as allocated from the Escrow Shares then remaining in the Escrow Account pursuant to Section 9.4(d)) Escrow Shares equal in value (valued at the Company Closing Price) to the amount of the Indemnification Claim set forth in the Unilateral Resolved Claim Notice.

(c)     Notwithstanding the other provisions of this Section 9.4, the parties hereto agree that Parent shall have the right to deliver immediately prior to the one-year anniversary of the Closing an Indemnification Claim with respect to all amounts that will thereafter in the future become due and payable under the 2006 Retention Cash Bonus Plan pursuant to the terms of

HIGHLY CONFIDENTIAL                    TP000125

such 2006 Retention Cash Bonus Plan and the awards made thereunder, and shall be entitled to payment of such Indemnification Claim in full at such time.

(d)     In the event Parent and the Stockholders Agent shall have instructed the Escrow Agent to deliver any Escrow Shares to a Parent Indemnified Party pursuant to Section 9.4(b), such Escrow Shares shall be allocated by the Escrow Agent among the Escrow Shares of the Company Stockholders in proportion to their respective Pro Rata Shares.

9.5     Third Party Claim Procedures.  In the event any Parent Indemnified Party becomes aware of a made by any third party claim against the Parent Indemnified Party (a "Third-Party Claim"), which such Parent Indemnified Party reasonably believes may result in a claim for indemnification pursuant to this ARTICLE 9, such Parent Indemnified Party shall notify the Stockholders Agent or, in the event indemnification is being sought hereunder directly from a party or parties hereto liable for such indemnification and not from the Escrow Shares (the "Indemnifying Party"), such Indemnifying Party, of such claim, and the Stockholders Agent (on behalf of the Company Stockholders) or the Indemnifying Party, as applicable, shall be entitled, at their expense, to participate in, but not to determine or conduct, the defense of such Third Party Claim. The Parent Indemnified Party shall have the right in its sole discretion to conduct the defense of, and to settle, any such claim; *provided, however,* that except with the consent of the Stockholders Agent or the Indemnifying Party, as applicable, no settlement of any such Third Party Claim with third party claimants shall be determinative of the amount of Damages relating to such matter.

9.6     Limitations on Indemnification.  Any claims of any Parent Indemnified Party made under this ARTICLE 9 will be limited as follows:

(a)     Notwithstanding any other provision of this Agreement to the contrary, the Company Stockholders shall not be required to indemnify or hold harmless any Parent Indemnified Party against, or reimburse any Parent Indemnified Party for, any Damages pursuant to Section 9.2(a) unless and until the aggregate amount of all such Damages suffered or incurred by the Parent Indemnified Parties subject to indemnification pursuant to Section 9.2(a) exceeds $1,000,000 (the "Threshold"), after which the Company Stockholders shall be obligated for all of such Damages of the Parent Indemnified Parties, including the amount of Damages below the Threshold; *provided, however,* that the Threshold limitation shall not apply to the Fundamental Representations or to any indemnification claim arising out of any fraudulent, intentional or willful breach of any representation of the Company in this Agreement.

(b)     The Escrow Shares shall be held as the Parent Indemnified Parties' sole security for the indemnification obligations of the Company Stockholders under Section 9.2. Except in the case of any indemnification claim under Section 9.2(a) relating to the Fundamental Representations or any claim under Section 9.2 arising out of any fraudulent, intentional or willful breach of any representation, warranty, covenant or agreement of the Company in this Agreement (which are addressed in Section 9.6(c)), notwithstanding any other provision of this Agreement to the contrary, recovery of Escrow Shares from the Escrow Account shall be the Parent Indemnified Parties' sole and exclusive recourse against the Company Stockholders in respect of the Company Stockholders' indemnification obligations under Section 9.2; *provided, however,* that notwithstanding the foregoing, recovery of up to five percent (5%) of the total

64

number of Escrow Shares initially deposited in the Escrow Account pursuant to ARTICLE 2 shall be the Parent Indemnified Parties' sole and exclusive recourse against the Company Stockholders in respect of the Company Stockholders' indemnification obligations under Section 9.2(c).

(c)     Notwithstanding any other provision of this Agreement to the contrary, no Company Stockholder shall be required to indemnify or hold harmless any Parent Indemnified Party against, or reimburse any Parent Indemnified Party for, any Damages in excess of such Company Stockholder's Pro Rata Share of the Aggregate Merger Consideration Value (as defined below) for any and all indemnification claims under Section 9.2(a) relating to the Fundamental Representations or any claim under Section 9.2 arising out of any fraudulent, intentional or willful breach of any representation, warranty, covenant or agreement of the Company in this Agreement, and in no event shall any Company Stockholder be liable to the Parent Indemnified Parties for any amounts in excess of each such Company Stockholder's Pro Rata Share of the Aggregate Merger Consideration Value. In the event that the Parent Indemnified Parties (or any of them) shall be entitled to indemnification under Section 9.2(a) in respect of any of the Fundamental Representations or for any fraudulent, intentional or willful breach of any representation of the Company in this Agreement, none of the Company Stockholders shall be required to directly indemnify any Parent Indemnified Parties, other than pursuant to the release of Escrow Shares allocated to such Company Stockholder from the Escrow Account, unless and until all of the Escrow Shares held in escrow on behalf of such Company Stockholder have been either released from the Escrow Account or allocated to an Outstanding Claim. For purposes of the foregoing, the "<u>Aggregate Merger Consideration Value</u>" means $1,650,000,000.

(d)     Notwithstanding any other provision of this Agreement to the contrary, the Company Stockholders shall only be liable under the indemnification obligations set forth in Section 9.2 for 50% of any Damages that arise from the matters set forth in Section 9.6(d) of the Company Disclosure Schedule.

(e)     Notwithstanding any other provision of this Agreement to the contrary, the indemnification obligation set forth in Section 9.2(c) is the Company Stockholders' sole and exclusive obligation, duty and potential source of liability, and Parent Indemnified Parties' sole and exclusive right and remedy, with respect to any Copyright Action (or any claim that if filed or otherwise instituted in a Court would constitute a Copyright Action) regardless of whether such claim or matter would constitute a breach of any representation, warranty or covenant of Company or any Company Stockholders under this Agreement, including Section 3.12(b).

(f)     Notwithstanding anything to the contrary set forth in this Agreement, the "Damages" for which the Parent Indemnified Parties are entitled to indemnification under Section 9.2 hereof shall expressly exclude, and the Parent Indemnified Parties shall not be entitled to recover, any punitive damages, except to the extent such punitive damages are payable by any Parent Indemnified Party as a result of a third-party claim.

9.7     <u>Adjustment to Purchase Price</u>. To the extent permitted by Law, any indemnification payment made pursuant to this ARTICLE 9 will be treated as an adjustment to the Merger consideration.

HIGHLY CONFIDENTIAL     TP000127

9.8    Several Obligations. For purposes of this Agreement, the liability of the Company Stockholders with respect to Losses shall be deemed to be allocated and borne pro rata based on their respective Pro Rata Shares.

9.9    Stockholders Agent.

(a)    At least 5 Business Days prior to the Closing Date the Company shall appointed an agent reasonably acceptable to Parent (the "Stockholders Agent") to act as agent for and on behalf of the Company Stockholders with the exclusive authority to give and receive notices and communications pursuant to the terms of this ARTICLE 9 solely with respect to indemnification claims by the Parent Indemnified Parties to be satisfied solely by the delivery of Escrow Shares to the applicable Parent Indemnified Parties, to authorize delivery to the Parent Indemnified Parties of the Escrow Shares in satisfaction of indemnification claims by the Parent Indemnified Parties as contemplated by Section 9.3, to object to such deliveries, to agree to, negotiate, enter into settlements and compromises of, and take legal actions and comply with orders of courts and awards of arbitrators with respect to indemnification claims by the Parent Indemnified Parties that will or may be paid or otherwise satisfied solely by the delivery of Escrow Shares, and to take all actions necessary or appropriate in the judgment of the Stockholders Agent for the accomplishment of the foregoing; *provided, however,* that notwithstanding the foregoing, the Stockholder Agent shall have no power or authority to take any of the foregoing actions for or on behalf of any Company Stockholder in respect of any indemnification claims by the Parent Indemnified Parties that will or may be paid or otherwise satisfied other than by the delivery of Escrow Shares to the applicable Parent Indemnified Parties. No bond shall be required of the Stockholders Agent, and the Stockholder Agent shall receive no compensation for services rendered. Notices or communications to or from the Stockholders Agent shall constitute notice to or from each of the Company Stockholders solely with respect to indemnification claims by the Parent Indemnified Parties to be satisfied solely by the delivery of Escrow Shares to the applicable Parent Indemnified Parties.

(b)    The Stockholders Agent shall not be liable for any act done or omitted hereunder in his capacity as Stockholders Agent, except to the extent it has acted with gross negligence or willful misconduct, and any act done or omitted pursuant to the advice of counsel shall be conclusive evidence that he did not act with gross negligence or willful misconduct. The other Company Stockholders shall severally and not jointly indemnify the Stockholders Agent and hold it harmless against any loss, liability or expense incurred without gross negligence or bad faith on the part of the Stockholders Agent and arising out of or in connection with the acceptance or administration of the duties hereunder, including any out-of-pocket costs and expenses and legal fees and other legal costs reasonably incurred by the Stockholders Agent ("Outstanding Stockholders Agent Expenses"). If not paid directly to the Stockholders Agent by the Company Stockholders, such losses, liabilities or expenses may be recovered by the Stockholders Agent from the Escrow Shares (if any) that otherwise would be distributed to the Company Stockholders following the Initial Escrow Release Date after giving effect to, and satisfaction of, all claims for indemnification made by the Parent Indemnified Parties pursuant to ARTICLE 9, and such recovery (if any) of Outstanding Stockholders Agent Expenses from such Escrow Shares will be made from the Company Stockholders according to their respective Pro Rata Shares.

66

(c)   A decision, act, consent or instruction of the Stockholders Agent shall constitute a decision of all the Company Stockholders and shall be final, binding and conclusive upon each of the Company Stockholders, and the Escrow Agent and Parent may rely upon any decision, act, consent or instruction of the Stockholders Agent as being the decision, act, consent or instruction of each of the Company Stockholders. The Escrow Agent and Parent are hereby relieved from any liability to any person for any acts done by them in accordance with such decision, act, consent or instruction of the Stockholders Agent.

## ARTICLE 10

## MISCELLANEOUS

10.1   Entire Agreement.  This Agreement, together with the Company Disclosure Schedule, the Parent Disclosure Letter and the Exhibits and Schedules hereto (including any agreements between or among the parties hereto referenced therein), and the certificates, documents, instruments and writings that are delivered pursuant hereto and thereto, constitutes the entire agreement and understanding of the parties hereto in respect of its subject matters and supersedes all prior understandings, agreements, or representations by or among the parties hereto, written or oral, to the extent they relate in any way to the subject matter hereof or the Merger or the other transactions contemplated hereby. Except as expressly contemplated by Section 6.11 and ARTICLE 9, there are no third party beneficiaries having rights under or with respect to this Agreement.

10.2   Successors.  All of the terms, agreements, covenants, representations, warranties, and conditions of this Agreement are binding upon, and inure to the benefit of and are enforceable by, the parties hereto and their respective successors.

10.3   Assignments.  No party hereto may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other parties hereto, except that Parent and Merger Sub may assign all or any of their rights hereunder to any Affiliate; provided that no such assignment shall relieve the assigning party of its obligations hereunder, and any attempted assignment in derogation of this sentence shall be null and void.

10.4   Notices.  All notices or other communications which are required or permitted hereunder shall be in writing and sufficient if delivered personally or sent by nationally recognized overnight courier or by registered or certified mail, postage prepaid, return receipt requested, or by electronic mail, with a copy thereof to be delivered or sent as provided above or by facsimile or telecopier, as follows:

If to Parent or Merger Sub:

Google Inc.
1600 Amphitheatre Parkway
Mountain View, CA 94043
Attention: General Counsel
Tel:
Fax:

HIGHLY CONFIDENTIAL                                    TP000129

Copy to (which will not constitute notice):

Simpson Thacher & Bartlett LLP
2550 Hanover Street
Palo Alto, California 94304
Attention:     William Hinman
               Kirsten Jensen
Tel:     █████████████
Fax:     █████████████

If to the Company:

YouTube, Inc.
1000 Cherry Avenue
Suite 200
San Bruno, California 94066
Attention: General Counsel
Tel:█████████████
Fax:█████████████

Copy to (which will not constitute notice):

Wilson Sonsini Goodrich & Rosati
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304
Attention:     Jack Sheridan
               Michael S. Ringler
               Catherine S. Kirkman
Tel:     █████████████
Fax:     █████████████

If to the Stockholder Parties, to their respective addresses on the Exhibit F hereto.

Copy to (which shall not constitute notice):

Wilson Sonsini Goodrich & Rosati
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304
Attention:     Jack Sheridan
               Michael S. Ringler
               Catherine S. Kirkman
Tel:     █████████████
Fax:     █████████████

10.5   <u>Submission to Jurisdiction</u>.  Except as otherwise expressly provided in this
Agreement, the parties hereto agree that any suit, action or proceeding seeking to enforce any

68

provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby shall be brought in the Court of Chancery of the State of Delaware, County of New Castle or the United States District Court for the District of Delaware. Each party hereto also agrees not to bring any Action arising out of or relating to this Agreement in any other court (and of the appropriate appellate courts therefrom). Each party hereto agrees that a final and non-appealable judgment in any Action may be enforced by Action on the judgment or in any other manner provided at Law or in equity. Each party hereto waives any defense of inconvenient forum to the maintenance of any Action so brought and waives any bond, surety, or other security that might be required of any other party hereto with respect thereto. Each party hereto agrees that service of process on it by notice as provided in Section 10.3 shall be deemed effective service of process.

        10.6     Resolution of Conflicts; Arbitration.

        (a)     Any claim or dispute arising out of or related to this Agreement, or the interpretation, making, performance, breach or termination thereof, shall (except as specifically set forth in this Agreement) be finally settled by binding arbitration in the County of Santa Clara, California in accordance with the then current Commercial Arbitration Rules of the American Arbitration Association and judgment upon the award rendered may be entered in any court having jurisdiction thereof. The arbitrator(s) shall have the authority to grant any equitable and legal remedies that would be available in any judicial proceeding instituted to resolve a dispute.

        (b)     Such arbitration shall be conducted by a single arbitrator chosen by mutual agreement of Parent and the Stockholders Agent. Alternatively, at the request of either party before the commencement of arbitration, the arbitration shall be conducted by three independent arbitrators, none of whom shall have any competitive interests with the Parent or Stockholders Agent. Parent and Stockholders Agent shall each select one arbitrator. The two arbitrators so selected shall select a third arbitrator.

        (c)     In any arbitration under this Section 10.6, each party shall be limited to calling a total of three witnesses both for purposes of deposition and the arbitration hearing. Subject to the foregoing limitation on the number of witnesses, the arbitrator or arbitrators, as the case may be, shall set a limited time period and establish procedures designed to reduce the cost and time for discovery while allowing the parties an opportunity, adequate in the sole judgment of the arbitrator or majority of the three arbitrators, as the case may be, to discover relevant information from the opposing parties about the subject matter of the dispute. The arbitrator, or a majority of the three arbitrators, as the case may be, shall rule upon motions to compel or limit discovery and shall have the authority to impose sanctions for discovery abuses, including attorneys' fees and costs, to the same extent as a competent court of law or equity, should the arbitrators or a majority of the three arbitrators, as the case may be, determine that discovery was sought without substantial justification or that discovery was refused or objected to without substantial justification.

        (d)     The decision of the arbitrator or a majority of the three arbitrators, as the case may be, as to the validity and amount of any claim shall be final, binding, and conclusive upon the parties to this Agreement. Such decision shall be written and shall be supported by written findings of fact and conclusions which shall set forth the award, judgment, decree or

69

        

order awarded by the arbitrator(s). Within 30 days of a decision of the arbitrator(s) requiring payment by one party to another, such party shall make the payment to such other party, including any distributions out of the Escrow Fund, as applicable.

(e) The parties to the arbitration may apply to a court of competent jurisdiction for a temporary restraining order, preliminary injunction or other interim or conservatory relief, as necessary, without breach of this arbitration provision and without abridgement of the powers of the arbitrator(s).

(f) The parties agree that each party shall pay its own costs and expenses (including counsel fees) of any such arbitration, and each party waives its right to seek an order compelling the other party to pay its portion of its costs and expenses (including counsel fees) for any arbitration.

10.7 <u>Release</u>. As of the Effective Time, each Stockholder Party, for itself and on behalf of its heirs, legal representatives, successors and assigns (collectively, the "<u>Relevant Persons</u>"), does hereby unconditionally and irrevocably waive, release and forever discharge the Company and each current (as of the Effective Time) and former director and officer of the Company from any and all Claims that such Relevant Persons may have against the Company, a director or officer to the extent such Claims arise out of or relate to such Relevant Person's ownership of Company Stock or other Equity Interests in the Company or their status as a securityholder of the Company except for any breach of the Agreement or any Transaction Agreement (for the avoidance of doubt, this is not intended to, and shall not constitute, a release of any Claims arising out of a Relevant Person's status as a director or officer of the Company). With respect to such Claims, each Seller Party hereby expressly waives any and all rights conferred upon him or her by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the released party, including, without limitation, the following provisions of California Civil Code Section 1542: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor."

10.8 <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.

10.9 <u>Governing Law</u>. This Agreement and the performance of the Merger and the other transactions contemplated hereby and the obligations of the parties hereunder will be governed by and construed in accordance with the laws of the State of Delaware.

10.10 <u>Amendments and Waivers</u>. No amendment, modification, replacement, termination or cancellation of any provision of this Agreement will be valid, unless the same will be in writing and signed by the parties hereto.

HIGHLY CONFIDENTIAL     TP000132

10.11 Severability. The provisions of this Agreement will be deemed severable and the invalidity or unenforceability of any provision will not affect the validity or enforceability of the other provisions hereof.

10.12 Construction. The parties hereto have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the parties hereto and no presumption or burden of proof will arise favoring or disfavoring any party hereto because of the authorship of any provision of this Agreement. Any reference to any federal, state, local, or foreign Law will be deemed also to refer to such Law as amended and all rules and regulations promulgated thereunder, unless the context requires otherwise. The parties hereto intend that each representation, warranty, and covenant contained herein will have independent significance. If any party hereto has breached any representation, warranty, or covenant contained herein in any respect, the fact that there exists another representation, warranty or covenant relating to the same subject matter (regardless of the relative levels of specificity) that such party has not breached will not detract from or mitigate the fact that the party is in breach of the first representation, warranty, or covenant.

10.13 Incorporation of Exhibits, Schedules and Disclosure Letters. The Exhibits, Schedules, Company Disclosure Schedule, Parent Disclosure Letter and other attachments identified in this Agreement are incorporated herein by reference and made a part hereof.

10.14 Remedies. No failure or delay on the part of any party hereto in the exercise of any right hereunder will impair such right or be construed to be a waiver of, or acquiescence in, any breach of any representation, warranty or agreement herein, nor will any single or partial exercise of any such right preclude other or further exercise thereof or of any other right. Except as expressly provided herein, the rights, obligations and remedies created by this Agreement are cumulative and in addition to any other rights, obligations, or remedies otherwise available at Law or in equity. Except as expressly provided herein, nothing herein will be considered an election of remedies.

10.15 Effectiveness of Amendment and Restatement. This Agreement amends and restates certain provisions of the Original Agreement and restates the terms of the Original Agreement in their entirety. All amendments to the Original Agreement effected by this Agreement, and all other covenants, agreements, terms and provisions of this Agreement, shall have effect as of the Effective Date unless expressly stated otherwise. This Agreement shall be effective as of the date that copies hereof have been executed and delivered upon execution by each of the parties hereto.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

HIGHLY CONFIDENTIAL

TP000133

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date first above written.

GOOGLE INC.

By: _____

    Name:  David C. Drummond
    Title:   Senior Vice President,
           Corporate Development

SNOWMASS HOLDINGS INC.

By: _____

    Name:  David C. Drummond
    Title:   President and Treasurer

YOUTUBE, INC.

By: _____

    Name:
    Title:

[Signature Page to Amended and Restated Agreement and Plan of Merger]

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date first above written.

GOOGLE INC.

By: _____
    Name:
    Title:

SNOWMASS HOLDINGS INC.

By: _____
    Name:
    Title:

YOUTUBE, INC.

By: _____
    Name: Chad Hurley
    Title: CEO

[Signature Page to Amended and Restated Agreement and Plan of Merger]

HIGHLY CONFIDENTIAL

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date first above written.

**STOCKHOLDER PARTIES:**

Steve S. Chen

_____

Steve Chen 2006 Grantor Retained Annuity Trust dated 9/27/06

_____
Steve S. Chen
Trustee

Chad M. Hurley

_____

The Chad Hurley Irrevocable Children's Trust created UTA dated March 2, 2006

_____
Brent Hurley
Trustee

Zahavah Levine

_____

[Signature Page to Amended and Restated Agreement and Plan of Merger]

HIGHLY CONFIDENTIAL

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date first above written.

STOCKHOLDER PARTIES:

Steve S. Chen

_____

Steve Chen 2006 Grantor Retained Annuity Trust dated 9/27/06

_____

Steve S. Chen
Trustee

Chad M. Hurley

_____

The Chad Hurley Irrevocable Children's Trust created UTA dated March 2, 2006

_____

Brent Hurley
Trustee

Zahavah Levine

_____

[Signature Page to Amended and Restated Agreement and Plan of Merger]

HIGHLY CONFIDENTIAL

TP000137

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date first above written.

**STOCKHOLDER PARTIES:**


Steve S. Chen

_____

Steve Chen 2006 Grantor Retained Annuity Trust dated 9/27/06

_____

Steve S. Chen
Trustee

Chad M. Hurley

_____

The Chad Hurley Irrevocable Children's Trust created UTA dated March 2, 2006

Brent Hurley
Trustee

Zahavah Levine

_____

[Signature Page to Amended and Restated Agreement and Plan of Merger]

HIGHLY CONFIDENTIAL

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date first above written.

STOCKHOLDER PARTIES:

Steve S. Chen

_____

Steve Chen 2006 Grantor Retained Annuity Trust dated 9/27/06

_____
Steve S. Chen
Trustee

Chad M. Hurley

_____

The Chad Hurley Irrevocable Children's Trust created UTA dated March 2, 2006

_____
Brent Hurley
Trustee

Zahavah Levine

*[signature]*

[Signature Page to Amended and Restated Agreement and Plan of Merger]

HIGHLY CONFIDENTIAL

TP000139

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date first above written.

STOCKHOLDER PARTIES:

SEQUOIA CAPITAL XI
SEQUOIA TECHNOLOGY PARTNERS XI
SEQUOIA CAPITAL XI PRINCIPALS FUND
    By:  SC XI Management, LLC
    A Delaware Limited Liability Company

    General Partner of Each

By: _____
    ~~Ernest Botha~~ Douglas Leone
    Managing Member


Artis Technology Partners, L.P.
Artis Technology 2X, L.P.
Artis Technology Qualified Partners, L.P.
Artis Technology Qualified 2X, L.P.
Artis Microcap Fund, L.P.

    By: Artis Capital Management, LLC
    General Partner for Each Fund

    By: _____
    Name: John Milani
    Its: Chief Operating Officer

Artis Microcap Master Fund, L.P.
    By: Artis Microcap GP, LLC
    General Partner

    By: _____
    Name: John Milani
    Its: Chief Operating Officer


[Signature Page to Amended and Restated Agreement and Plan of Merger]

HIGHLY CONFIDENTIAL

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date first above written.

**STOCKHOLDER PARTIES:**

SEQUOIA CAPITAL XI
SEQUOIA TECHNOLOGY PARTNERS XI
SEQUOIA CAPITAL XI PRINCIPALS FUND
    By: SC XI Management, LLC
    A Delaware Limited Liability Company

    General Partner of Each

    By: _____
        Roelof Botha
        Managing Member


Artis Technology Partners, L.P.
Artis Technology 2X, L.P.
Artis Technology Qualified Partners, L.P.
Artis Technology Qualified 2X, L.P.
Artis Microcap Fund, L.P.

    By: Artis Capital Management, L.P.
    General Partner for Each Fund

    By: _____
    Name: John Milani
    Its: Chief Operating Officer

Artis Microcap Master Fund, L.P.
    By: Artis Microcap GP, LLC
    General Partner

    By: _____
    Name: John Milani
    Its: Chief Operating Officer


[Signature Page to Amended and Restated Agreement and Plan of Merger]

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date first above written.

STOCKHOLDER PARTIES:

Artis Technology Partners Ltd.
Artis Technology 2X Ltd.

By: Artis Capital Management, LLC
Investment Adviser and Attorney-In-Fact for Each
Fund

By: _____
Name: John Milani
Its: Chief Operating Officer

[Signature Page to Amended and Restated Agreement and Plan of Merger]

HIGHLY CONFIDENTIAL                                    TP000142