UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

VIACOM INTERNATIONAL, INC., COMEDY PARTNERS, COUNTRY MUSIC. TELEVISION, INC., PARAMOUNT PICTURES CORPORATION, and BLACK ENTERTAINMENT TELEVISION, LLC,

Plaintiffs,

vs. NO. 07-CV-2103

YOUTUBE, INC., YOUTUBE, LLC, and GOOGLE, INC.,

Defendants.

---

THE FOOTBALL ASSOCIATION PREMIER LEAGUE LIMITED, BOURNE CO., et al., on behalf of themselves and all others similarly situated,

Plaintiffs,

vs. NO. 07-CV-3582

YOUTUBE, INC., YOUTUBE, LLC, and GOOGLE, INC.,

Defendants.

---

H I G H L Y C O N F I D E N T I A L

VIDEOTAPED DEPOSITION OF SERGEY BRIN

PALO ALTO, CALIFORNIA

THURSDAY, OCTOBER 15, 2009

JOB NO. 17756

OCTOBER 15, 2009

12:05 p.m.

VIDEOTAPED DEPOSITION OF SERGEY BRIN, WILSON, SONSINI, GOODRICH & ROSATI, LLP, 601 Page Mill Road, Palo Alto, California pursuant to notice, and before, ANDREA M. IGNACIO HOWARD, CLR, RPR, CRR, CSR License No. 9830.

898909e3-f3da-48ef-bd65-49b9fa432374

A P P E A R A N C E S:

FOR THE PLAINTIFFS VIACOM INTERNATIONAL, INC.:

SHEARMAN & STERLING, LLP
By: STUART BASKIN, Esq.
SEAN T. STRAUSS, Esq.
599 Lexington Avenue
New York, New York 10022
(212) 848-4000 stuart.baskin@shearman.com

FOR THE LEAD PLAINTIFFS AND PROSPECTIVE CLASS:

BERNSTEIN LITOWITZ BERGER & GROSSMANN, LLP
By: JOHN C. BROWNE, Esq.
1285 Avenue Of The Americas
New York, New York 10019
(212) 554-1533 johnb@blbglaw.com

FOR THE DEFENDANTS YOUTUBE, INC., YOUTUBE, LLC and GOOGLE, INC.:

MAYER BROWN, LLP
By: JOHN MANCINI, Esq.
DAVID MCGILL, Esq.
1675 Broadway
New York, New York 10019-5820
(212) 506-2312 jmancini@mayerbrown.com

A P P E A R A N C E S (Continued.)

ALSO PRESENT: Timothy Alger, Deputy General Counsel

Adam Barea, Google Inc.

Lou Meadows, Videographer.

---oOo---

898909e3-f3da-48ef-bd65-49b9fa432374

12:08:56 THE VIDEOGRAPHER: Thank you.

12:08:57 Please administer the oath.

12:08:57

12:08:57 SERGEY BRIN,

12:08:57 having been sworn as a witness,

12:08:57 testified as follows:

12:09:08

12:09:08 MR. BASKIN: Ready?

12:09:13 THE REPORTER: Yes.

12:09:13

12:09:15 EXAMINATION BY MR. BASKIN

12:09:15 MR. BASKIN: Q. Good afternoon, Mr. Brin.

12:09:21 A Good afternoon.

12:09:22 Q You are both a founder and currently the
12:09:25 president of technology at Google?

12:09:27 A That's correct.

12:09:27 Q And do you attend most meetings of, I guess,
12:09:32 what used to be called the Executive Management Group?

12:09:36 A Yes.

12:09:36 Q And currently that's called the Operations
12:09:38 Committee; is that correct?

12:09:39 A It's a slightly different makeup now, but
12:09:42 there's significant overlap.

12:09:43 Q And you do try to attend most meetings of --

13:08:33 such non-presentations actually.

13:08:36 Q Now, I take it, as you sit here now, you don't recall the presentation shown to you in and around the fall -- the spring of 2006 at the GPS that considered Google Video, did you -- do you, sir?

13:08:47 MR. MANCINI: Objection; assumes facts; vague and ambiguous.

13:08:49 THE WITNESS: Yeah, well, once again, I'm not sure that there was such a presentation, and I don't recall.

13:08:52 MR. BASKIN: Well, let me begin, if I can, we'll mark as Exhibit 6...

13:09:20 MR. MANCINI: Stu, any sense of when you want to break for lunch? Maybe after this document?

13:09:24 MR. BASKIN: Give me about another ten minutes, then we'll break.

13:09:28 MR. MANCINI: Okay.

13:09:31 (Document marked Brin Exhibit 6 for identification.)

13:09:32 MR. BASKIN: Q. You can stop after page one, Mr. Brin. I'm not going on to the other pages with you.

13:11:13 A Okay. I'm just almost done. Okay.

13:11:38 Q Does this document, as Exhibit 6, Mr. Brin,

13:11:41 refresh your recollection that you attended a GPS meeting in the spring of 2006 where the discussion undertaken at that meeting was Google Video's copyright compliance practices and how best to compete with YouTube?

13:11:53 MR. MANCINI: Objection; assumes facts, and objection to the characterization of the document.

13:11:56 THE WITNESS: Yeah, no, I don't agree with that. There's one bullet here that says that I said something at the last GPS, which may or may not be accurate, but -- but I feel like your characterization of that goes beyond anything suggested here.

13:12:15 MR. BASKIN: Q. Well, does this document refresh your recollection that you attended the Google Video GPS in the spring of 2006?

13:12:21 A No.

13:12:21 MR. MANCINI: Objection; assumes facts.

13:12:23 MR. BASKIN: Q. No?

13:12:24 A No.

13:12:24 Q Do you recall --

13:12:25 A I'm not saying that I didn't. I'm just saying no, this doesn't particularly help. I'm not doubting you.

13:12:29 Q And as you sit here now, you have no

898909e3-f3da-48ef-bd65-49b9fa432374

13:12:31 recollection of attending the -- the Google Video GPS
13:12:33 meeting; is that right, Mr. Brin?
13:12:36 A That's correct. As I said, these happen at
13:12:39 least every week. In fact, the GPS is -- often
13:12:41 there's several of them stacked together, so I've
13:12:44 attended hundreds.
13:12:46 Q Now, you made reference a few minutes ago to
13:12:50 paragraph six of Exhibit 6; do you see that, Mr. Brin?
13:12:51 A Yeah, I made that in response to your
13:12:52 question, because that's the only mention of me.
13:12:54 Q Okay. And I take it, again, the Sergey
13:12:57 listed in paragraph six of Exhibit 6 is you, is it
13:13:00 not, sir?
13:13:00 A Well, you'd have to ask David. If I was sent
13:13:02 this, I would presume that.
13:13:04 Q Now, do you recall at a GPS meeting raising
13:13:13 the question, is changing a policy to increase
13:13:17 traffic, knowing beforehand that we'll profit from
13:13:24 illegal downloads, how we want to conduct our
13:13:27 business? Do you recall saying that, Mr. Brin?
13:13:29 MR. MANCINI: Objection; assumes facts.
13:13:30 THE WITNESS: No. I -- you know, I'd caution
13:13:32 you that people in the company often try to
13:13:35 characterize something I said, or Larry said, or Eric

13:13:39 said to achieve a particular viewpoint that they have,
13:13:42 and it's -- very often mischaracterizes what one of us
13:13:46 may have said or takes it out of context, so...
13:13:49 MR. BASKIN: Q. And is it your position,
13:13:50 Mr. Brin, as you sit here today, that that sentence
13:13:53 mischaracterizes what you said?
13:13:55 A Yes, if I even said anything, but I -- I
13:13:57 would believe that it mischaracterizes it.
13:13:59 Q And do you recall at the prior GPS meeting
13:14:05 expressing the question of whether it is Googley to
13:14:11 change a policy to increase traffic knowing beforehand
13:14:14 that we'll profit from illegal downloads? Do you
13:14:17 remember saying that, sir?
13:14:18 MR. MANCINI: Objection; assumes facts.
13:14:19 THE WITNESS: No, I don't. And, furthermore,
13:14:22 even if you look at this document, that's a separate
13:14:25 sentence here. So that's not attached to anything
13:14:28 that I might have said.
13:14:30 MR. BASKIN: Q. Do you know the phrase "This
13:14:30 is Googley"? What does that mean, Mr. Brin?
13:14:33 A I could -- I could infer what it means. I
13:14:37 would -- I would assume that this is consistent with
13:14:45 Google's beliefs and values.
13:14:48 Q And that's, in fact, a concept that you use