UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

VIACOM INTERNATIONAL INC., COMEDY PARTNERS, COUNTRY MUSIC TELEVISION, INC., PARAMOUNT PICTURES CORPORATION, AND BLACK ENTERTAINMENT TELEVISION, LLC,

Plaintiffs,

vs. No. 1:07CV02103

YOUTUBE, INC., YOUTUBE, LLC, AND GOOGLE, INC.,,

Defendants.

**CAPTION CONTINUED ON FOLLOWING PAGE**

DEPOSITION OF MICHAEL ROBINSON
FRIDAY, JANUARY 15, 2010
LOS ANGELES, CALIFORNIA

REPORTED BY: JEANINE CURCIONE
FILE NO.: 18585

**CAPTION CONTINUED FROM PREVIOUS PAGE**

THE FOOTBALL ASSOCIATION PREMIER LEAGUE LIMITED, BOURNE CO., ET AL., ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

vs.

YOUTUBE, INC., YOUTUBE, LLC, AND GOOGLE, INC.,

Defendants.

No. 07CV3582

Videotaped deposition of MICHAEL ROBINSON, taken on behalf of Defendants, at 10:05 a.m, Friday, January 15, 2010, at 350 South Grand Avenue, 25th Floor, Los Angeles, California, before Jeanine Curcione, C.S.R. No. 10223, RPR, pursuant to notice.

APPEARANCES OF COUNSEL:

FOR VIACOM PLAINTIFFS:

JENNER BLOCK, LLP
BY: SCOTT B. WILKENS, ESQ.
1099 NEW YORK AVENUE, NW
SUITE 900
WASHINGTON, DC 20001
(202) 639-6072
swilkens@jenner.com

FOR PREMIER LEAGUE PLAINTIFFS:

PROSKAUER ROSE, LLP
BY: GIL N. PELES, ESQ.
2049 CENTURY PARK EAST
SUITE 3200
LOS ANGELES, CALIFORNIA 90067-3206
(310) 284-5611
gpeles@proskauer.com

FOR YOUTUBE AND GOOGLE DEFENDANTS:

WILSON SONSINI GOODRICH & ROSATI
BY: BART VOLKMER, ESQ.
650 PAGE MILL ROAD
PALO ALTO, CALIFORNIA 94304-1050
(650) 565-3508
bvolkmer@wsgr.com

AND

MAYER BROWN, LLP
BY: DAVID H. MCGILL, ESQ.
1675 BROADWAY
NEW YORK, NEW YORK 10019
(212)506-2507
dmcgill@mayerbrown.com

FOR THE MOTION PICTURE ASSOCIATION OF AMERICA AND THE WITNESS:

MUNGER, TOLLES & OLSON, LLP
BY: KELLY M. KLAUS, ESQ.
355 SOUTH GRAND AVENUE
35TH FLOOR
LOS ANGELES, CALIFORNIA 90071

1ba3a7db-bce0-4da1-a251-def00e0d5ef0

INDEX

| WITNESS | EXAMINATION | PAGE |
| --- | --- | --- |
| MICHAEL ROBINSON | MR. MCGILL | 5 |

E X H I B I T S

| NO. | PAGE | DESCRIPTION |
| --- | --- | --- |
| Exhibit 1 | 19 | Organizational Chart |
| Exhibit 2 | 22 | Subpoena |
| Exhibit 3 | 31 | Article from Hollywood Reporter dated 3/21/06 |
| Exhibit 4 | 40 | Letter to Bart Volkmer from Kelly Klaus dated 8/14/08 |
| Exhibit 5 | 67 | Printout on Kori Bernards from Wikipedia |
| Exhibit 6 | 76 | Screen Shot from YouTube MoviesEverywhere Channel |
| Exhibit 7 | 79 | E-mail from Craig Winter to Miscellaneous Recipients dated 1/5/07 |
| Exhibit 8 | 89 | E-mail from Brad Borchard to Miscellaneous Recipients dated 8/2/06 |
| Exhibit 9 | 89 | E-mail from David Lin to Craig Seidel dated 9/12/07 |
| Exhibit 10 | 89 | E-mail from Dean Garfield to Audiblemagic dated 9/20/06 |
| Exhibit 11 | 89 | Letter from Audible Magic |
| Exhibit 12 | 89 | E-mail from Craig Winter to Miscellaneous Recipients dated 4/9/07 |

EXHIBITS (CONTINUED)

| NO. | PAGE | DESCRIPTION |
| --- | --- | --- |
| Exhibit 13 | 89 | E-mail from Dean Garfield to Audible Magic dated 11/15/06 |

QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER

| PAGE | LINE |
| --- | --- |
| 34 | 8 |
| 82 | 18 |

1ba3a7db-bce0-4da1-a251-def00e0d5ef0

10:28:24 testify on the topics listed therein, excluding
10:28:33 Topics 4, 11, 12, 13 and 15?
10:28:37 MR. KLAUS: Objection. Vague and ambiguous.
10:28:38 I think it calls for a legal conclusion. Again,
10:28:40 there is extensive correspondence memorialized in
10:28:45 writing between myself and counsel for
10:28:47 Google/YouTube going through each of those topics.
10:28:52 Subject to that objection, Mr. Robinson, you
10:28:56 of course may answer the question.
10:28:58 THE WITNESS: Yes.
10:29:03 BY MR. MCGILL:
10:29:04 Q. Mr. Robinson, what is the MPAA?
10:29:08 A. The MPAA was formed in 1922 as the trade
10:29:14 association for the American film industry, and
10:29:17 today we advocate for the motion picture industry,
10:29:23 television industry and for the home entertainment
10:29:28 industry.
10:29:29 Q. And "MPAA" stands for "motion picture" --
10:29:32 A. Motion Picture Association of America.
10:29:34 Q. Okay. Thank you.
10:29:34 And which companies are members of the
10:29:36 MPAA?
10:29:38 A. Paramount Pictures Corporation. Sony
10:29:42 Pictures Entertainment. 20th Century Fox Films.
10:29:45 Universal City Studios. Walt Disney Studios Motion

1ba3a7db-bce0-4da1-a251-def00e0d5ef0


10:29:52 Picture. Warner Bros. Entertainment.
10:29:54 Did I name all six?
10:29:56 Q. Sounds like you got them all to me.
10:29:59 And Paramount is owned by Viacom; is that correct?
10:30:03 A. Paramount is a subsidiary of Viacom, yes.
10:30:06 Q. So does the MPAA consider Viacom to be a member of its association?
10:30:12 A. MPAA considers Paramount Pictures to be a member of MPAA.
10:30:20 Q. So but my question is: Does the MPAA consider Viacom to be a member of its association?
10:30:25 A. No.
10:30:30 Q. And am I correct that the purpose of the MPAA is to further the goals of its members?
10:30:35 MR. VOLKMER: Objection. Vague and ambiguous.
10:30:37 THE WITNESS: The purpose of the MPAA is to advocate for the protection of the creative rights and the creative works that are produced and distributed by the industry and to aggressively investigate and prevent copyright theft.
10:31:02 BY MR. MCGILL:
10:31:03 Q. In connection with that advocating, does the MPAA assume a public relations role with respect

even within your construction of the negotiations of Topic No. 7.

MR. KLAUS: Just for -- I do not think that -- this should not be a big point, Mr. McGill, but I think that the way you phrased your question was a UGC site making content identification technology available to content owners. And I think the topic that we had negotiated -- and I believe if you ask the question, then he'll be prepared to testify to -- is UGC sites employing content identification technology during that time frame.

BY MR. MCGILL:

Q. Okay. So let me ask you that question. To the extent that there's a distinction there, we'll explore it.

Mr. Robinson, are you aware of any UGC site -- excuse me. Are you aware of any UGC video service that made content identification -- that employed content identification technology during the time frame we're talking about?

A. Yeah, I believe that there were some that did do that, specifically, Grouper and MySpace.

Q. When you say you believe that, what is the basis for your belief?

A. Conversations that I had with

1ba3a7db-bce0-4da1-a251-def00e0d5ef0

11:36:26 Mr. Rajagopalan and information which I recall in my
11:36:38 capacity with the MPAA.
11:36:43 Q. And let's start with Grouper. What
11:36:48 content ID technology was Grouper, according to your
11:36:54 understanding, using during this time frame?
11:37:00 A. I believe that they were using
11:37:10 Audible Magic.
11:37:14 Q. And Audible Magic, to your understanding,
11:37:18 is an audio fingerprinting vendor; is that correct?
11:37:22 A. Yes.
11:37:22 Q. And at the time only offered
11:37:26 fingerprinting technology for audio as opposed to
11:37:29 video; correct?
11:37:33 MR. WILKENS: Objection to the form of the
11:37:34 question.
11:37:35 MR. KLAUS: It lacks foundation.
11:37:37 You can testify to it.
11:37:39 MR. MCGILL: Asking for his understanding.
11:37:40 MR. KLAUS: You can certainly testify to your
11:37:42 understanding.
11:37:45 THE WITNESS: Would you repeat the question.
11:37:46 BY MR. MCGILL:
11:37:47 Q. Yeah.
11:37:47 Do you have an understanding as to
11:37:49 whether Audible Magic's fingerprinting technology

1ba3a7db-bce0-4da1-a251-def00e0d5ef0