1   a performance or display under the Copyright Act where there is

2   an automatic system where some users upload content and other

3   users view the content.  But if they show that it is, and that

4   the copyright laws apply in the first instance and there is

5   infringement, then the question becomes whether the provisions

6   of the Digital Millennium Copyright Act do apply.  And there

7   will be questions there too, Judge, while it is a defense, as

8   to who has the burden on particular issues.  And those are

9   legal issues that we'll hash out as we go forward.

10      Finally, your Honor, in terms of an overview, we

11   haven't really touched on Premier yet, but we do believe the

12   Premier case is inappropriate for class treatment.  There's too

13   many individual issues that are going to predominate, but I

14   won't take up a lot of time on that right now.

15      One last thing I would say, your Honor, is that

16   because this bears on some of the requests that have been made

17   for very expedited approach by Premier, for example, that we

18   are today, we being YouTube and Google, we are today working

19   very intensively and cooperating with some of the major content

20   providers in the world on what we hope will be an effective

21   technology fix that we believe would go well beyond any legal

22   obligations that we have but would hopefully eliminate largely

23   any such disputes in the future.

24      And without getting into the nuts and bolts of the

25   technology fix, it basically would be somebody who has a

1   copyrighted video, for example, would provide it to us and say

2   we don't want this up on YouTube.  And then we're developing a

3   way to take basically an electronic or video or digital

4   fingerprint of this material so that if somebody does try to

5   upload it, within a minute or so the computers will figure out

6   that that's one of the items that the copyright owner said they

7   don't want up on the system, and we would be able to pull that

8   down until any issues are resolved.

9       As I said, we're working hard on that.  We have

10  invited major content companies to help us in that effort in

11  terms of testing it.  Many of them are cooperating, and we hope

12  to have this in place -- hope and expect to have it in place

13  sometime in the fall, hopefully in September.

14      If we're successful in that regard --

15      THE COURT:  What does "in place" mean?

16      MR. BECK:  What does "in place" mean?

17      THE COURT:  Yeah.

18      MR. BECK:  It means up, running and effective.  So

19  anybody that wants to could say -- a movie production house, a

20  studio, could say here's our new Tom Cruise movie and we don't

21  want any knuckleheads with their video cameras in the theater

22  videoing our movie and then uploading a ten-minute segment onto

23  YouTube, so take our movie.  And we would get the movie from

24  them, and then our computers would do their magic, and that's

25  what's being worked on now, so there would be key information

1    extracted from the video and stored on a computer.  And then

2    when somebody uploads -- any video that gets uploaded basically

3    gets filtered through the fingerprint database, and like the

4    AFIS that the FBI has, and if there's a hit, then within

5    minutes the computer knows that and pulls it down.  So we hope

6    that -- when I say "in place," I mean operating and available

7    to any content provider in the world.

8        So that's the plan that we're working on.  As I said,

9    we believe it goes way beyond any legal requirements, but we're

10    not interested in having legal fights if we can avoid them and

11    we're interested in trying to cooperate with people if we can,

12    and we're going to put that in place.  We hope that obviates

13    any future disputes.  We may still have disagreements about

14    what happened before we were able to develop this technology,

15    and we'll resolve those in due course.

16        THE COURT:  Thank you.

17        Mr. Verrilli, did you --

18        MR. VERRILLI:  Well, I think it might make sense to

19    hear from the class plaintiffs on the issues Mr. Beck raised

20    and circle back to scheduling.

21        THE COURT:  Sure.

22        MR. SOLOMON:  Good afternoon, Judge, I'm Lou Solomon

23    from Proskauer Rose.  I'm here with Mr. Coffey from the

24    Bernstein Litowitz firm.  We too have a signed proposal.

25        THE COURT:  I had a conference with Mr. Coffey earlier