UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIACOM INT'L INC., ET AL.,<br><br>        Plaintiffs,<br>    v.<br><br>YOUTUBE, INC., ET AL.,<br><br>        Defendants | ECF Case<br>Civil No. 07–CV–2103 (LLS) |
| THE FOOTBALL ASSOCIATION PREMIER LEAGUE LIMITED, ET AL., on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>    v.<br><br>YOUTUBE, INC., ET AL.,<br><br>        Defendants. | ECF Case<br>Civil No. 07–CV–3582 (LLS) |

## DECLARATION OF MICHAEL RUBIN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Michael Rubin, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

    1.    I am a partner with the firm of Wilson Sonsini Goodrich & Rosati, attorneys for Defendants Google Inc., YouTube, LLC, and YouTube, Inc., (collectively "YouTube"). I submit this declaration in support of Defendants' Motion for Summary Judgment. I have been involved in these cases from their outset and am familiar with the documents produced in discovery by the parties and by third parties. The following facts are true based upon my personal knowledge and if called as a witness I could competently testify to them.

### Selected Documents Regarding the Use of YouTube for Marketing and Promotional Purposes by Plaintiffs and Other Companies

2. Attached hereto as Exhibits 1 and 2 are tables that I prepared identifying selections of documents produced in discovery by the parties and third parties showing marketing and promotional uses of YouTube by Plaintiffs and other companies, respectively. True and correct copies of the documents identified on those tables are attached hereto as Exhibits 3 - 41. The information contained in the tables is drawn from the underlying exhibits.

### Selected Documents Regarding Mistaken Takedown Requests Viacom Sent to YouTube Targeting Its Own Content

3. Attached hereto as Exhibit 42 is a table that I prepared identifying a selection of documents produced in discovery by the parties and third parties showing instances in which Viacom or its agents sent to YouTube takedown notices for videos that it or its agents had uploaded to the YouTube site, including cases that resulted in the suspension or termination of Viacom-authorized YouTube accounts. True and correct copies of the documents identified in that table are attached hereto as Exhibits 43 - 68. The information contained in the table is drawn from the underlying exhibits.

### Selected Documents Regarding Mistaken Takedown Requests Other Companies Sent to YouTube

4. Attached hereto as Exhibit 69 is a table that I prepared identifying a selection of documents produced in discovery by the parties and third parties showing instances in which various companies sent to YouTube takedown notices for videos they had uploaded or authorized to appear on the YouTube site, including cases that resulted in the suspension or termination of their YouTube accounts. True and correct copies of the documents identified in that table are attached hereto as Exhibits 70 - 83. The information contained in the table is drawn from the underlying exhibits.

### Selected Documents Regarding Viacom's "Whitelists"

5. The sub-paragraphs below identify selected documents produced in this action showing that Viacom maintains "whitelists" to avoid sending takedown notices for videos that it wanted to remain on YouTube, including videos that it had uploaded to YouTube or had authorized to appear there. The documents show that Viacom's whitelists consistently failed to include a variety of Viacom-approved YouTube accounts. Attached hereto as Exhibits 84 and 85 are excerpts from the depositions of Michelena Hallie and Warren Solow describing Viacom's whitelist practice.

>   a. Attached hereto as Exhibit 86 is a true and correct copy of a document produced by Viacom in this action that purports to contain a set of YouTube accounts on Viacom's whitelist as of January 3, 2007. The exhibits listed below are true and correct copies of documents that show that the following Viacom-authorized YouTube accounts had been registered and were in use as of January 3, 2007: *demansr* (Exs. 87 (Response to RFA 61), 88), *MTV2* (Exs. 87 (Response to RFA 25), 89), *Mosjef73* (Exs. 87 (Response to RFA 42), 90, 91, 92), *mtvnewsinterns* (Exs. 87 (Response to RFA 48), 93), *MTVSneakAttack* (Exs. 87 (Response to RFA 49), 94), and *veehonerockz* (Exs. 87 (Response to RFA 45), 95). These YouTube accounts, however, do not appear on the January 3, 2007 Viacom whitelist.
>
>   b. Attached hereto as Exhibit 96 is a true and correct copy of a document produced by Viacom in this action that purports to contain a set of YouTube accounts on Viacom's whitelist as of February 28, 2007. The exhibits listed below are true and

3

correct copies of documents that show that the following Viacom-authorized YouTube accounts had been registered and were in use as of February 28, 2007: *Beheard* (Exs. 87 (Response to RFA 58), 97), *Chu2007* (Exs. 87 (Response to RFA 107), 98), and *Zachbraffdotcom* (Exs. 99, 100). These YouTube accounts, however, do not appear on the February 28, 2007 Viacom whitelist.

c.     Attached hereto as Exhibit 101 is a true and correct copy of a document produced by Viacom in this action that purports to contain a set of YouTube accounts on Viacom's whitelist as of March 16, 2007. The exhibits listed below are true and correct copies of documents that show that the following Viacom-authorized YouTube accounts had been registered and were in use as of March 16, 2007: *demansr* (Exs. 87 (Response to RFA 61), 88), *MTV2* (Exs. 87 (Response to RFA 25), 89), *Mosjef73* (Exs. 87 (Response to RFA 42), 90, 91, 92), *mtvnewsinterns* (Exs. 87 (Response to RFA 48), 93), *MTVSneakAttack* (Exs. 87 (Response to RFA 49), 94), *veehonerockz* (Exs. 87 (Response to RFA 45), 95), *Beheard* (Exs. 87 (Response to RFA 58), 97), *Chu2007* (Exs. 87 (Response to RFA 107), 98), *Zachbraffdotcom* (Exs. 99, 100), *Globe427* (Exs. 102, 103), *Live2rhyme88* (Exs. 102, 104), and *the110th* (Ex. 105). These YouTube accounts, however, do not appear on the March 16, 2007 Viacom whitelist.

d.     Attached hereto as Exhibit 106 is a true and correct copy of a document produced by Viacom in this action that purports to contain a set of YouTube accounts on Viacom's whitelist as

4

of April 16, 2008. The exhibits listed below are true and correct copies of documents that show that the following Viacom-authorized YouTube accounts had been registered and were in use as of April 16, 2008: *demansr* (Exs. 87 (Response to RFA 61), 88), *MTV2* (Exs. 87 (Response to RFA 25), 89), *Mosjef73* (Exs. 87 (Response to RFA 42), 90, 91, 92), *mtvnewsinterns* (Exs. 87 (Response to RFA 48), 93), *MTVSneakAttack* (Exs. 87 (Response to RFA 49), 94), *veehonerockz* (Exs. 87 (Response to RFA 45), 95), *Beheard* (Exs. 87 (Response to RFA 58), 97), *Chu2007* (Exs. 87 (Response to RFA 107), 98), *Zachbraffdotcom* (Exs. 99, 100), *Globe427* (Exs. 102, 103), *Live2rhyme88* (Exs. 102, 104), *the110th* (Ex. 105), *GossipGirl40* (Exs. 87 (Response to RFA 66), 107), *keithhn* (Exs. 87 (Response to RFA 43), 108, 109), *MysticalGirl8* (Exs. 87 (Response to RFA 44), 110, 111), *FunFunFunnyVideo* (Exs. 112, 113), and *strangewildernessuk* (Exs. 87 (Response to RFA 39), 114). These YouTube accounts, however, do not appear on the April 16, 2008 Viacom whitelist.

e. Attached hereto as Exhibit 115 is a true and correct copy of a document produced by Viacom in this action that purports to contain a set of YouTube accounts on Viacom's whitelist as of June 16, 2008. The exhibits listed below are true and correct copies of documents that show that the following Viacom-authorized YouTube accounts had been registered and were in use as of June 16, 2008: *demansr* (Exs. 87 (Response to RFA 61), 88), *MTV2* (Exs. 87 (Response to RFA 25), 89), *Mosjef73* (Exs. 87 (Response to RFA 42), 90, 91, 92),

5

*mtvnewsinterns* (Exs. 87 (Response to RFA 48), 93), *MTVSneakAttack* (Exs. 87 (Response to RFA 49), 94), *veehonerockz* (Exs. 87 (Response to RFA 45), 95), *Beheard* (Exs. 87 (Response to RFA 58), 97), *Chu2007* (Exs. 87 (Response to RFA 107), 98), *Zachbraffdotcom* (Exs. 99, 100), *Globe427* (Exs. 102, 103), *Live2rhyme88* (Exs. 102, 104), *the110th* (Ex. 105), *keithhn* (Exs. 87 (Response to RFA 43), 108, 109), *MysticalGirl8* (Exs. 87 (Response to RFA 44), 110, 111), *FunFunFunnyVideo* (Exs. 112, 113), and *strangewildernessuk* (Exs. 87 (Response to RFA 39), 114). These YouTube accounts, however, do not appear on the June 16, 2008 Viacom whitelist.

f.     Attached hereto as Exhibit 116 is a true and correct copy of a document produced by Viacom in this action that purports to contain a set of YouTube accounts on Viacom's whitelist as of May 14, 2009. The exhibits listed below are true and correct copies of documents that show that the following Viacom-authorized YouTube accounts had been registered and were in use as of May 14, 2009: *demansr* (Exs. 87 (Response to RFA 61), 88), *MTV2* (Exs. 87 (Response to RFA 25), 89), *Mosjef73* (Exs. 87 (Response to RFA 42), 90, 91, 92), *mtvnewsinterns* (Exs. 87 (Response to RFA 48), 93), *MTVSneakAttack* (Exs. 87 (Response to RFA 49), 94), *veehonerockz* (Exs. 87 (Response to RFA 45), 95), *Beheard* (Exs. 87 (Response to RFA 58), 97), *Chu2007* (Exs. 87 (Response to RFA 107), 98), *Zachbraffdotcom* (Exs. 99, 100), *Globe427* (Exs. 102, 103), *Live2rhyme88* (Exs. 102, 104), *the110th* (Ex. 105), *keithhn* (Exs. 87 (Response to RFA 43), 108, 109), *MysticalGirl8* (Exs.

6

87 (Response to RFA 44), 110, 111), *FunFunFunnyVideo* (Exs. 112, 113), and *strangewildernessuk* (Exs. 87 (Response to RFA 39), 114). These YouTube accounts, however, do not appear on the May 14, 2009 Viacom whitelist.

**<u>Viacom's Continuing Assertion of Infringement Claims Regarding Clips It Uploaded to YouTube</u>**

6. In June 2008, the Court ordered plaintiffs to disclose the copyrighted works and any alleged infringements that they planned to assert in these cases no later than 90 days before the close of fact discovery (the "Identification Deadline"). *See* June 23, 2008 Hearing Tr. at 3:10-23.

7. By the Identification Deadline, Viacom had asserted 63,497 videos on YouTube as allegedly infringing its copyrights. (Our analysis found 13 videos that were identified twice, so the unique number of allegedly infringing video should be 63,484). Attached hereto as Exhibit 117 are the accumulated lists that Viacom provided during the course of this litigation identifying: (i) the purportedly copyrighted works Viacom claims it is asserting in this action (the "Works in Suit") and (ii) the URLs corresponding to the videos that were on the YouTube service that Viacom alleges infringe those works (the "Clips in Suit").

8. Viacom employee Michael Housley submitted a declaration in the *Viacom* action in early 2008 attesting to the time-consuming, multi-step, multi-review process that Viacom used to identify its Clips in Suit. A true and correct copy of the February 28, 2008 Declaration of Michael Housley is attached hereto as Exhibit 118.

9. On October 15, 2009, after the Identification Deadline, Viacom sent YouTube an "Amended Production of Works in Suit" that purported to withdraw its claims of infringement regarding 241 of the Clips in Suit that Viacom had previously identified. In its cover letter, Viacom asserted that its withdrawal had

7

been prompted by another "quality check" of its infringement allegations. Attached hereto as Exhibit 119 is a true and correct copy of Viacom's October 15, 2009 letter. The enclosure to that letter, an Excel spreadsheet entitled "Amended Production of Works in Suit," is attached hereto as Exhibit 120.

10. On December 21, 2009, the Court ruled that to effect its desired withdrawals, Viacom needed to submit a request for dismissal with prejudice pursuant to Fed. R. Civ. P. 41(a). *See* Docket No. 162.

11. On January 8, 2010, Viacom served its responses to YouTube's Third Set of Interrogatories and YouTube's First Set of Requests for Admission. In its verified interrogatory responses, Viacom averred that none of the Clips in Suit listed in its October 15, 2009 "Amended Production of Works in Suit" had been uploaded to YouTube by Viacom or at its direction (Response to Interrogatory 23). Viacom likewise denied in its RFA responses that it or its agents had uploaded to YouTube any of the Clips in Suit listed in the October 15, 2009 amended disclosure (Response to Request for Admissions 16, 21). True and correct copies of Viacom's responses to YouTube's Third Set of Interrogatories and YouTube's Requests for Admission are attached hereto as Exhibits 121 and 87, respectively.

12. On February 26, 2010, one week before motions for summary judgment were to be filed, Viacom submitted a Notice of Dismissal with Prejudice with respect to various infringement claims it had asserted. A true and correct copy of Viacom's Notice of Dismissal with prejudice is attached hereto as Exhibit 122. Viacom's Notice of Dismissal with Prejudice included the infringement claims for the 241 clips that Viacom had sought to withdraw via its October 15, 2009 "Amended Production of Works in Suit." Viacom's Notice of Dismissal with Prejudice also included claims regarding 193 additional Clips in Suit that Viacom had continued to assert even after its quality check, and its October 15, 2009 "Amended Production of Works in Suit."

8

13. Among the additional infringement claims that Viacom sought to drop with prejudice in late February 2010 were claims regarding six clips that had been uploaded to YouTube by a user with the account name "Wiredset." "Wiredset" is a YouTube account name controlled by a company called Wiredset that is one of the viral marketing firms that Viacom frequently used to upload Viacom clips to YouTube. Attached hereto as Exhibit 123 is testimony from the deposition of Wiredset affirming that all of its uploads of Viacom content were done with Viacom's permission.

14. In Viacom's most recent iteration of its infringement claims (its October 15, 2009 "Amended Production of Works in Suit," as modified by its February 26, 2010 Request for Dismissal), Viacom continues to assert infringement claims against the following videos uploaded to YouTube:

    a. Two clips (with the YouTube Video IDs ABeJNFyj26o and XEzbW6wTS3o) that were uploaded to the service using the account name "wiredsetassets," which was registered by KatrinaA@wiredset.com. During the deposition of Wiredset in this action, its corporate designee identified the email address KatrinaA@wiredset.com as belonging to a Wiredset employee (Ex. 124);

    b. A clip (a promotional video for the Paramount film "There Will Be Blood" with the YouTube Video ID 0c5ZqEMxgu8) that was uploaded using the account name JakeMyers2001. There is a Paramount marketing employee named Jake Myers who is identified as uploading Paramount promotional clips to YouTube and as using JakeMyers2001 as an instant messaging handle in the attached Exhibit 125;

9

    c.        Two clips (with the YouTube Video IDs tckEWbOvmrY and 2dZ66NoxefY) that were uploaded using the account names "kate3984" and "drillbit001," which were both registered to the email address of kate@waytoblue.com. Exhibits 126-127 reflect that Viacom authorized internet marketing company Way To Blue to upload videos to YouTube. In its response to YouTube Requests for Admission 85 and 88 in this action (Exhibit 87 hereto), Viacom admitted that two other Way to Blue YouTube accounts, WayTBlue and WayToBlueFrance, are accounts Viacom authorized to upload videos to YouTube, and Viacom has dismissed with prejudice infringement claims based on clips uploaded by those accounts.

With respect to the YouTube clips cited in the foregoing sub-paragraphs, attached hereto as Exhibit 128 are excerpts of data produced by YouTube in response to Plaintiffs' discovery request showing the YouTube user name and email registration information for uploaders of the Clips in Suit.

### The Length of the Clips in Suit

15. YouTube has produced in this case data regarding the run-length for each Clip in Suit. That data shows that the majority of Viacom Clips in Suit are under four minutes long; many are under one minute long; and some are fewer than ten seconds long. For example, Video ID iA_YOiYmoNo is 3 seconds long, Video ID _dtnyvBmOTw is 5 seconds long, and Video ID ErNz4SjgrsU is 10 seconds long. Versions of these videos are attached hereto as exhibits 311A, 311B, 312A, 312B, 313A, 313B. The "A" version is the original file format and the "B" version is a copy of the same file converted to the MPEG format.

16. Prior to the disclosure deadline, the *Premier League* plaintiffs collectively identified approximately 13,500 video clips that they allege infringe

their copyrights (excluding duplicates with identical Video IDs). Attached hereto as Exhibit 129 are the accumulated lists that the *Premier League* plaintiffs provided during the course of this litigation identifying (i) the purportedly copyrighted works that the *Premier League* plaintiffs claim they are asserting in this action and (ii) the Video IDs corresponding to the videos on the YouTube service that the *Premier League* plaintiffs allege infringe those works. According to our analysis of the *Premier League* plaintiffs' identifications, we located approximately 900 different titles of allegedly copyrighted works that the *Premier League* plaintiffs assert are infringed by the Clips in Suit. We conducted the same analysis of the length of the *Premier League* Clips in Suit that we conducted for the *Viacom* Clips in Suit. That analysis showed that plaintiff Premier League has asserted dozens of clips less than 5 seconds in length. For example, YouTube Video ID l3Nza0UMqis, asserted by Premier League, is two seconds in length; Video IDs 8jKKlH4pios and 4utcuLY6YRU, also asserted by Premier League, are even shorter at one second in length. Versions of these videos are attached hereto as exhibits 314A, 314B, 315A, 315B, 316A, 316B. The "A" version is the original file format and the "B" version is a copy of the same file converted to the MPEG file format.

### Many Viacom Clips in Suit Are Identical to Viacom Promo Videos

17. In response to YouTube's Request for Production No. 140, which sought "one copy of each video file used in connection with the promotion or marketing of any work in suit," Viacom agreed to produce the requested files with two exceptions: they would not produce (i) promo videos shorter than 30 seconds or (ii) multiple versions of promo videos where the only difference was the "call to action." Attached hereto as Exhibit 130 is a true and correct copy of Viacom's Amended Responses and Objections to YouTube's Fourth Set of Requests for Production. Viacom ultimately produced a number of DVDs that they told me

11

contain promo videos. I reviewed many of the promo videos on those DVDs and compared them to certain of the *Viacom* Clips in Suit. Based on this analysis, I have determined that many of Viacom's Clips in Suit are indistinguishable from the promo videos it produced. Attached hereto as Exhibit 131 is a chart showing a sample of more than one hundred Clips in Suit that appear indistinguishable from promo videos that Viacom produced. Exhibits 132A through 176B constitute the promo videos identified on Exhibit 131, while Exhibits 177A to 310B constitute the Clips in Suit identified on Exhibit 131. The "A" version is the original file format and the "B" version is a copy of the same file converted to the MPEG file format. For the promo videos, the Version A files were produced by Viacom in this action; for the matching YouTube videos, the Version A files are versions of the "Flash" (or ".flv") files, as stored on YouTube's servers (*see* Declaration of Michael Solomon, submitted concurrently, at ¶ 12, which explains the manner in which those videos were obtained from YouTube's servers).

### Viacom Has Uploaded Thousands of Clips to YouTube

18.  I have reviewed documents and testimony that cumulatively reference thousands of clips authorized by Viacom to be posted on YouTube. This includes, *inter alia*, whitelists provided by Viacom to BayTSP; DMCA counternotices from Viacom and its marketing agents sent to YouTube after Viacom mistakenly took down its own authorized videos; reports from Viacom's marketing agents, such as ICED Media, Fanscape, and Wiredset, detailing their uploads to YouTube; email correspondence among members of Viacom's various marketing departments; and the accounts on the YouTube website of the usernames that Viacom admitted in response to Requests for Admission were used by Viacom for its authorized uploads.

### Submission of Videos from the YouTube Service

19. In connection with the briefing process for this motion, YouTube provided us with a designated set of videos for use in connection with its opening papers in .FLV format. Once received, I then caused those videos to be converted into the .MPEG file format. Both versions have been provided.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed the 5th day of March 2010, at New York City, New York.

_____
Michael Rubin