# RUBIN DECLARATION EXHIBITS CONTINUED

# Rubin Exhibit 118

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIACOM INTERNATIONAL INC., COMEDY PARTNERS, COUNTRY MUSIC TELEVISION, INC., PARAMOUNT PICTURES CORPORATION, and BLACK ENTERTAINMENT TELEVISION LLC,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>YOUTUBE, INC., YOUTUBE, LLC, and GOOGLE INC.,<br><br>　　　　　　　　　　Defendants. | Case No. 1:07-cv-02103 (LLS)<br>(Related Case No. 1:07-cv-03582 (LLS))<br><br>**DECLARATION OF MICHAEL HOUSLEY** |

Michael Housley, being duly sworn, deposes and says:

1. I have been Manager, Legal Support, of Viacom Inc. ("Viacom") since July, 2007. My duties include the identification of works in suit in the above-captioned action.

2. The process by which the works in suit are identified is a multi-step procedure designed to accurately identify infringing content, match it with Viacom's copyrighted works, and match it with copyright registration information.

3. The matching process begins with a pool of clips that have appeared on YouTube and that have previously been identified as potentially infringing Viacom's copyrights. Those potentially infringing clips must be matched with specific works in which Viacom owns the copyrights.

15759.1

Filed Under Seal Pursuant to Protective Order
Contains Material Designated CONFIDENTIAL by Viacom

4. Although a clip has already been identified as likely infringing, it takes additional time and effort to identify the *specific* work from which it was taken. Some of Viacom's television series have at least hundreds of episodes. For example, it may be easy to recognize that a clip was taken from and infringes Viacom's nightly series *The Daily Show*, but because there are over one thousand episodes of *The Daily Show*, it may be more difficult to match the clip with the specific work (episode) from which it was taken. We have been making these matches through a combination of human and automated processes.

5. Once a potentially infringing clip from YouTube has been matched with a Viacom work by these processes, the clip is reviewed by one of a team of first-level reviewers to verify that it is infringing. First-level reviewers watch and listen to each clip and code each clip as part of this process.

6. Clips that have gone through first-level review are then reviewed by second-level reviewers, who perform quality control of the first-level reviewers' designations.

7. The next stage of the process is copyright registration data matching. In this process, Viacom's copyright registration data is linked to infringing clips of Viacom's original content. There are two primary sources of registration data: (1) Viacom's internal copyright records, and (2) comprehensive registration portfolios and reports provided by an outside vendor.

8. Once an infringing clip has been identified, personnel at Viacom enter and match the registration data for the original Viacom content to the infringing clip. The way these registration records are organized and maintained by Viacom does not allow

the process of matching the registrations with infringing clips to be automated the first time a match is made for each registration. After registration data for a specific work is entered into the system for one infringing clip, however, the data then automatically propagates to all clips matching the same copyrighted work. Thus, registration data must only be entered once for each program or asset.

9. From time to time, Viacom generates an export report of the works in suit. This report contains identifying data about each infringing clip and the Viacom asset which it infringes, including but not limited to: (1) the title of the Viacom asset which the clip infringes, (2) registration data linked to the Viacom asset which is infringed, (3) the YouTube URL at which the infringing clip was found, and (4) the YouTube ID for the infringing clip. The data contained in the export report is reviewed for consistency and accuracy prior to being produced to defendants.

10. Based on my experience supervising this work, completing the multi-step matching process will take many months, even for the pool of clips that Viacom has already identified as potentially infringing. Of course, as additional potentially infringing clips are identified, more time will be needed to process them. I cannot make a more precise estimate of the time needed because there are many unforeseeable variables involved.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.

Executed this 28th day of February, 2008, at New York, New York.

*Michael Housley*
Michael Housley

# Rubin Exhibit 119

JENNER&BLOCK

October 15, 2009

Jenner & Block LLP
919 Third Avenue
37th Floor
New York, NY 10022
Tel 212-891-1600
www.jenner.com

Chicago
Los Angeles
New York
Washington, DC

*VIA E-MAIL*

Andrew H. Schapiro
Mayer Brown LLP
1675 Broadway
New York, NY 10019-5820

Susan J. Kohlmann
Tel 212 891-1690
Fax 212 909-0821
skohlmann@jenner.com

Re: *Viacom International Inc., et al. v YouTube, Inc. et al.*, No 07 cv 2103 (LLS)

Dear Andy:

Viacom has completed its quality check of the spreadsheets it previously produced identifying infringing videos at issue in this case. An amended master spreadsheet is attached. The amended spreadsheet contains no new infringing clips that were not previously identified by Viacom.[1] A small number of clips that were erroneously included in prior spreadsheets have been removed from the list. In addition, corrections were made to entries for a number of other infringing clips that were previously identified.

For ease of reference, the rows in the amended spreadsheet are arrayed in the same order as the spreadsheets previously produced to Defendants, in chronological order from Exhibit A of the Complaint through the Eighteenth Identification of Works in Suit. The values in the Video ID column also serve as unique identifiers to cross-walk between this amended spreadsheet and the previously produced spreadsheets. The rows corresponding to removed Video IDs are "blacked out" on the amended spreadsheet.

Sincerely,

Susan J. Kohlmann

cc: All counsel

---

[1] In four cases, a typographical error in the Video ID was corrected: -X5-m56U_Go was corrected to -X4-m56U_Go; 0-G9U7tWTY was corrected to -0-G9U7tWTY; -kXHBY2-A962 was corrected to -kXHBY2-a10; and -FT10-BZgR-8 was corrected to -FU9-BZgR-8.

# Rubin Exhibit 120

# EXHIBIT FILED MANUALLY