USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/11/12

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

VIACOM INTERNATIONAL, INC.
COMEDY PARTNERS, COUNTRY
MUSIC TELEVISION, INC.,
PARAMOUNT PICTURES, CORP.
BLACK ENTERTAINMENT
TELEVISION, LLC

Plaintiff's

CASE NO. 1:07-cv-02103 (LLS)
(Related Case)
1:07-cv-03582 (LLS)

V.

YOUTUBE, INC., YOUTUBE LLC,
GOOGLE, INC.,

Defendant's

MOTION FOR ENTRY OF DEFAULT

George May, Plaintiff, Intervener here requests that the Clerk of the United States District Court, Southern District of New York enter default against Viacom International, Inc., Comedy Partners, Country Music Television, Inc., Paramount Pictures, Corp. D/B/A Paramount Recreation and CBS, Black Entertainment Television, LLC, Arab Bank Group, Inc., Arab Bank PLC, Dubai World Corporation, defendant's here above pursuant to Federal Rule of Civil Procedure 55(a). In support of this request George May, Plaintiff, Intervener relies upon the record in this case and his affidavit submitted herein.

Dated this 21, day of August, 2012.

George May, Plaintiff,
Intervener
P.O. Box 32247
Palm Bch. Gardens
Fl. 33420
Ph./Fax. 561-290-4384

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

VIACOM INTERNATIONAL, INC.
COMEDY PARTNERS, COUNTRY
MUSIC TELEVISION, INC.,
PARAMOUNT PICTURES, CORP.
BLACK ENTERTAINMENT
TELEVISION, LLC

Plaintiff's

CASE NO. 1:07-cv-02103 (LLS)
(Related Case)
1:07-cv-03582 (LLS)

v.

YOUTUBE, INC., YOUTUBE LLC,
GOOGLE, INC.,

Defendant's

AFFIDAVIT IN SUPPORT OF
MOTION FOR ENTRY OF DEFAULT

I, George May, Plaintiff, Intervener here being duly sworn state as follows:

1. I am the attorney for George May, Plaintiff, Intervener in the above entitled action and I am familiar with the file, records, and pleadings in this matter.

2. The defendant's Viacom International, Inc., Comedy Partners, Country Music Television, Inc., Paramount Pictures, Corp. D/B/A Paramount Recreation and CBS, Black Entertainment Television, LLC, Arab Bank Group, Inc., Arab Bank PLC, Dubai World Corporation, defendant's herein all in complicity, aiders, abetters, joint tort feasers, all inter related by

their contracts, acts under 18 U.S.C. §2,§3,§4, §2333(a)(b)(c), §2332(a), §2339A,B,C, were served with George May, Plaintiff, Intervener on July 28, 2012 by George May fax. Attached here are the Fax Verification Reports.

3. An answer to George May, Plaintiff, Intervener Complaint was due August 21, 2012. No valid Response, Answer, Affirmative Defense was served on the Plaintiff, Intervener George May within the 21 days time required by Law. No answer, Affirmative Defense, Pleading, Response is permitted by the defendant's named herein Viacom International, Inc., Comedy Partners, Country Music Television, Inc., Paramount Pictures, Inc., D/B/A Paramount Recreation and CBS, Black Entertainment Television, LLC, Arab Bank Group, Inc., Arab Bank PLC, Dubai World Corporation by 18 U.S.C. §2,§3,§4, §2333(a)(b)(c), §2333(a), §2339A,B,C, and the defendant's named herein are now in default.

4. The defendant's herein have failed to appear, plead or otherwise defend as required by Law, within the time allowed.

5. The defendant's herein have failed to appear, plead or otherwise defend within the time allowed and, therefore are now in default.

6. George May, Plaintiff, Intervener here requests that the Clerk of the United States District Court for the Southern District of New York enter default against the defendant's named herein above.

Sworn to and subscribed before me this 31, day of August, 2012.

NOTARY PUBLIC

My Commission Expires: Apr 26, 2015

MICHELLE L. HYATT
Notary Public - State of Florida
My Comm. Expires Apr 26, 2015
Commission # EE 87686

George May
P.O. Box 32247
Palm Bch. Gardens
Fl. 33420
Ph./Fax. 561-290-4384

TRANSMISSION VERIFICATION REPORT

TIME : 07/28/2012 18:32
NAME : GEORGE MAY
FAX : 561-290-4384
SER.# : BROL9F217174

| | |
|---|---|
| DATE,TIME | 07/28 18:08 |
| FAX NO./NAME | 12129692900 |
| DURATION | 00:24:26 |
| PAGE(S) | 33 |
| RESULT | OK |
| MODE | STANDARD |

Charless Simins

TRANSMISSION VERIFICATION REPORT

TIME : 07/28/2012 18:52
NAME : GEORGE MAY
FAX : 561-290-4384
SER.# : BROL9F217174

| | |
|---|---|
| DATE,TIME | 07/28 18:37 |
| FAX NO./NAME | 12128497100 |
| DURATION | 00:15:17 |
| PAGE(S) | 26 |
| RESULT | OK |
| MODE | STANDARD |

Andy Shapiro



Paramount Parks
A VIACOM COMPANY

November 21, 1995

Mr. George May
P.O. Box 32247
Palm Beach Gardens, FL 33420

Dear Mr. May:

Your proposal for a Star Trek theme park has been forwarded to us by Thomas Byrne of Blockbuster Entertainment Group.

While we find your proposal very interesting, we regret to inform you that we are not pursuing this type of joint venture at the present time. We thank you for your interest and wish the best of luck in your endeavor.

Sincerely,

Jane Cooper
President & CEO

JC:amw

# US $1.5bn funding secured for Star Trek attraction

**Harriet Sinclair**, *August 7th, 2011*

**US$1.5 billion of funding has been secured for a major tourism and theme park development in Jordan, featuring a Star-Trek inspired attraction.**

Construction work on the 74-hectare Red Sea Astrarium project in Aqaba, which will include four hotels and 17 entertainment developments, is expected to start early next year, *The National* reported.

The project is being funded by investors from the US and the Gulf, according to a partner in the project.

The Amman company Rubicon Group Holding, which makes animated films, said in May that it would design and produce the entertainment elements of the resort

The "Star Trek" attraction is being creatively developed by Paramount Recreation.

TRSA is expected to generate employment for more than 500 high-skilled workers in the local commu RGH facilitating the training for these key jobs, as well.

"At its core, Star Trek is about bringing worlds together and about a profound hope for the future," sai Kalodner, EVP and general manager of CBS Consumer Products.

"We are proud to bring such a unique, interactive Star Trek property to this part of the world to be a p Jordan's future."

The themed entertainment destination will also serve as a model for "green energy," incorporating sta of-the-art renewable technologies throughout the facility, and hosting a "future" pavilion where busine students and attendees can learn about alternative energy sources ranging from solar and wind ener greywater harvesting.

The Star Trek-themed centre will deliver a variety of multi-sensory 23rd-century experiences, culmina state-of-the art space-flight adventure that takes real-time immersive entertainment experiences to b heights.

Architectural firm Callison has been engaged to work with Rubicon Group Holding and its team, includ Paramount Recreation and CBS, to master plan and create a world class destination resort.

"TRSA will be a destination showcase in an extraordinary part of Jordan," said Randa S. Ayoubi, CEC Rubicon Group Holding.

"The opportunity to lead the design on such a remarkable project and to work with such world class pa CBS and Paramount is a dream-come-true for the entire RGH family. We are honored, elated, and pr have our Themed Entertainment team in charge of moving this project forward."

©2012 ITP Business Publishing Ltd. | Use of this site content constitutes acceptance of our User Policy, Privacy Policy and Terms



Source: www.ameinfo.com
» Company News/A/Arab Bank Plc

# Arab Bank Group enters $5bn loan agreement for

Arab Bank Group has recently signed a $5bn loan agreement, as part of a cc banks, for the benefit of Dubai World Corporation.

**Jordan:** Sunday, December 23 - 2007

The Arab Bank plays the top role in the deal as the Mandated Lead Arranger.

The loan will be used to fund general commercial activities including acquisitions and glob

Arab Bank's Chairman and CEO Abdel Hamid Shoman said the bank is always keen on div growing needs in the region amid an exceptional boom witnessed by the various sectors a major regional and international banks.

He also said that Arab Bank constantly seeks to be a key player by responding to the nee end a crystal clear strategy and a unique approach. He added that the bank's participatio potential for growth characterizing Dubai World.

Shoman also stressed that Arab Bank provides versatile and diverse packages of products competition within the banking sector. He also reiterated that the Bank which was establi decades in implementing professional banking practices based on mutual trust between th safeguards their savings and increases them.

Dubai World Corporation is a holding company which manages and supervises a diversifie and projects for the government of Dubai. It seeks to ensure the Emirate of Dubai a top r exchange realm. The investments portfolio it manages spans over 100 different cities arou implemented by Nakheel Development, and Dubai Ports, one of the top three port operat various sectors like tourism and financial services.

Dubai World's assets stand at $65bn and the company employs 50,000 people around the leading regional and international companies in the fields of transport, real estate, ports a

Arab Bank is based in Amman, Jordan. It is considered the biggest private sector financial shareholder equity base of $6.6bn at the end of September 2007, and the largest Arab ba balance sheet at end of September 2007 totaled $52.6bn, assets $37.2bn, and revenues

The Group has gained prominence in key markets and financial centers in Europe, Asia-Pa

The Arab Bank Group provides a wide variety of financial services to individuals, corporati financial institutions.

---

**© 1996-2010 by AME Info FZ LLC / Emap Limited. All rights reserved.**

This story was posted by Anne-Birte Stensgaard, Senior News Editor
Sunday, December 23 - 2007 at 16:50 UAE local time (GMT+4)

**Find this article at:**
http://www.ameinfo.com/142390.html



# Backgrounder: The Holy Land Foundation for Relief and Development

## Introduction

CONVICTION IS A JUDGMENT

The Holy Land Foundation for Relief and Development (HLF), once considered the largest Muslim charity in the U.S., has been shut down by the government for funding Hamas.

On May 27, 2009, a federal judge in Dallas handed down sentences ranging from 15 to 65 years in prison to five of the charity's founders and former fundraisers. A federal jury returned guilty verdicts on all 108 counts against the HLF and its five former officers on November 24, 2008. The federal government proved to the jury that the defendants funneled over $12 million to Hamas after the U.S. government had designated it a foreign terrorist organization in 1995.

All five defendants were convicted for providing material support to Hamas. Ghassan Elashi and Shukri Abu-Baker, former HLF chairman and chief executive, were convicted of a combined 69 counts that included charges of tax fraud and money laundering. The other defendants – Mufid Abdulqader, Abdelrahman Odeh and Mohammed El-Mezain – were also convicted on conspiracy charges.

HLF gave money to charity organizations known as zakat committees that operated in the Palestinian territories. Though these were not listed as terrorist entities, Hamas controlled them and the money they collected benefited the terrorist organization's structure. According to the Department of Justice, "HLF intentionally hid its financial support for Hamas behind the guise of charitable donations."

Public records, including documents released by the government during the trial, indicate that HLF was part of an organizational structure that was set up by the radical Muslim Brotherhood to support the Hamas terrorist organization.

HLF was shut down and its assets frozen by the government in December 2001 after it was designated as a charity that provided material and logistical support to Hamas under Executive Orders 13224 and 12947. Subsequent appeals by HLF challenging the freezing of its assets were rejected.

The U.S. Justice Department obtained an indictment against HLF in 2004, accusing the charity and its top leaders of a conspiracy to provide aid to a terrorist organization. The Justice Department contended that HLF provided more than $12 million to individuals and organizations linked to Hamas between 1995 and 2001. In addition, the group reportedly raised a total of $57 million since its incorporation in 1992, but only reported $36.2 million to the IRS.

A first trial ended in a mistrial in October 2007 when the jury failed to come to a unanimous decision on most counts. Prosecutors made significant changes in the second trial, including dropping 29 counts against two of the defendants, Mufid Abdulqader and Abdulrahman Odeh, calling new witnesses, and decreasing the overall amount of evidence presented to the jury to avoid confusion.

During the trial, several Muslim organizations joined together with an anti-war group and other organizations to form a coalition in support of HLF. The coalition, dubbed "Hungry for Justice," included the Council on American-Islamic Relations (CAIR), the Muslim American Society (MAS) and the ANSWER Coalition.

## Connections to the Muslim Brotherhood and Hamas

Documents and evidence released during the Holy Land Foundation (HLF) trial showed that the charity was part of an apparatus set up in the U.S. to support efforts by the Muslim Brotherhood and Hamas.

HLF was part of the Palestine Committee, an organizational structure that operated in the U.S. in support of the Muslim Brotherhood and the Muslim Brotherhood's Palestinian offshoot, Hamas. The Palestine Committee included the United Association for Studies and Research (UASR) and the Islamic Association for Palestine (IAP both Hamas-linked anti-Semitic propaganda organizations.

The UASR, a Virginia based think tank, was founded by Hamas leader Musa Abu Marzuq. In 2006 UASR's director, Ahmed Yousef, became personal adviser to Hamas leader Ismail Haniyeh and a Hamas spokesman in Gaza. The IAP, described by the U.S. government as part of "Hamas' propaganda apparatus," distributed officia Hamas communiqués and the Hamas Charter.

HLF operated as a non-profit 501(c)(3) tax-exempt charity organization. It was founded in 1987 in Los Angeles, California, as the Occupied Land Fund (OLF) by its President and CEO, Shukri Abu-Baker. In 1991, it changed i name to HLF, and it moved to Richardson, Texas in 1993.

Below are some examples of how HLF supported Hamas:

- In 1997, Israel banned the Jerusalem-based HLF as a Hamas front group. That year, Israel raided the group's headquarters and seized documents that allegedly linked the Jerusalem office with the HLF in the U.S. Israel security also arrested the Jerusalem HLF's director, Mohamed Anati, for purportedly distributing monthly stipends to families of Hamas suicide bombers. During the HLF trial, the government exhibited a document from 1994 that was signed by Abu-Baker and Anati recognizing HLF Jerusalem as the "sole agency in the West Bank and Jerusalem" of the Richardson-based charity.

- In October 1993, several representatives of HLF and IAP attended a meeting in meeting in Philadelphia c the Palestine Committee, which was set up by the Muslim Brotherhood to support Hamas, according to evidence presented during the trial. Those present discussed supporting Hamas in the United States through fundraising and political activity, and countering the Israeli-Palestinian peace accords.

- A March 1993 HLF Ramadan appeal pledge card declared, "Yes. I can and want to help needy families c Palestinian martyrs, prisoners and deportees."

- An October 1992 IAP memo, which was submitted as evidence in the HLF trial, described the history of the Muslim Brotherhood's involvement in Palestinian politics. It mentioned the founding of IAP and HLF (OLF in the document), as well as the launching of Hamas. It also listed resolutions reached by the Musli Brotherhood movement, including "supporting the continuation of the intifada," and "the completion of formation of Palestine committees... publicizing and focusing on the savagery of the Jews in Palestine." According to the document, IAP and HLF were part of "a Palestine Committee" formed in consultation between U.S.-based activists and the leadership of the Muslim Brotherhood, and were part of a structure that functioned to support Hamas, the movement's "tool and striking wing."

- According to IRS records, more than 10% of HLF funds in 1992 came from Hamas leader Musa Abu Marzuq.

- A 1992 letter from the Islamic Relief Committee, one of the Palestinian entities that received money from HLF, was found at the home of Ismail Elbarrase, an unindicted co-conspirator in the case. That letter praised the killing of Jews and asked for support, including weapons, for the mujahideen. The letter, one the documents presented by the prosecution during the trial, stated:

"You do not know how happy people become when they watch those Mujahideen and how proud they feel when they parade in their uniforms and weapons and the extent of their honor when they carry out their Jihadist

UNITED STATES OF AMERICA
DEPARTMENT OF THE TREASURY
FINANCIAL CRIMES ENFORCEMENT NETWORK

ORDER TO PAY A CRIMINAL FINE IS A DECREE BY THE FINANCIAL CRIMES ENFORCEMENT NETWORK

| IN THE MATTER OF: | ) | |
|---|---|---|
| | ) | |
| | ) | |
| | ) | Number 2005-2 |
| THE FEDERAL BRANCH OF | ) | |
| ARAB BANK PLC | ) | |
| NEW YORK, NEW YORK | ) | |

**ASSESSMENT OF CIVIL MONEY PENALTY**

## I. INTRODUCTION

The Secretary of the United States Department of the Treasury has delegated to the Director of the Financial Crimes Enforcement Network the authority to determine whether a financial institution has violated the Bank Secrecy Act and the regulations issued pursuant to that Act,[1] and what, if any, sanction is appropriate.

In order to resolve this matter, and only for that purpose, the Federal Branch of Arab Bank plc, New York, New York ("Arab Bank – New York") has entered into a CONSENT TO THE ASSESSMENT OF CIVIL MONEY PENALTY ("CONSENT") dated August 17, 2005, without admitting or denying the determinations by the Financial Crimes Enforcement Network, as described in Sections III and IV below, except as to jurisdiction in Section II below, which is admitted.

The CONSENT is incorporated into this ASSESSMENT OF CIVIL MONEY PENALTY ("ASSESSMENT") by this reference.

## II. JURISDICTION

Arab Bank is a public shareholding company and banking institution, with headquarters in Amman, the capital city of the Hashemite Kingdom of Jordan. Arab Bank has approximately 400 branches, offices, and subsidiaries – members of the Arab Bank Group – in thirty countries. The Arab Bank Group employs approximately 7,500 people and provides retail, private, corporate, correspondent, and other banking services to numerous businesses, organizations, institutions, and individuals in the Middle East and throughout the world. As of December 31, 2004, the Arab Bank Group had consolidated total assets of $27 billion. For the year ending December 31, 2004, the Arab Bank Group had consolidated net income of $319 million. The Arab Bank Group is a leading provider of financial services in the Middle East and North Africa.

[1] 31 U.S.C. §§ 5311 et seq. and 31 C.F.R. Part 103.



# Hamas member convicted of killing 46 Israelis

An Israeli military court on Wednesday found a senior Hamas militant guilty in the deaths of 46 Israelis in a string of attacks between 2000 and 2005.

Conviction is a judge matter

The Ofer Military Court near Jerusalem found Ibrahim Hamed, 47, guilty of masterminding a host of deadly bombings during the second intifada (2000 to 2005), including attacks on The Hebrew University of Jerusalem, and suicide bombings at several downtown locations.

The indictment charged Hamed, a Hamas member since 1980s, with commanding the Islamic movement' West Bank military wing, al- Qassam Brigades.

Between September 2000 and 2005, some 5,500 Palestinians and 1, 100 Israelis died in violent attacks.

During the trial, the prosecution submitted the testimony of Abdullah Barghouti, an explosive engineer now serving 67 life sentences, against Hamed, who was arrested in 2006.

The Shin Bet (Israel Security Agency) officials testified that Hamed is a "groundbreaker in the field of strategic terror" and a "model" for other militants.

However, Hamed's attorney, Salah Mahmid, told Ha'aretz daily " my client does not recognize this court's authority to try him since this is the occupation's court and according to international law, it has no jurisdiction in this case."

The prosecution is aiming for 56 consecutive life sentences for Hamed at a hearing scheduled for next week.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

VIACOM INTERNATIONAL, INC.
COMEDY PARTNERS, COUNTRY
MUSIC TELEVISION, INC.,
PARAMOUNT PICTURES, CORP.
BLACK ENTERTAINMENT
TELEVISION, LLC

Plaintiff's

CASE NO. 1:07-cv-02103 (LLS)
(Related Case)
1:07-cv-03582 (LLS)

v.

YOUTUBE, INC., YOUTUBE LLC,
GOOGLE, INC.,

Defendant's

---

ENTRY OF DEFAULT

---

George May, Plaintiff, Intervener here requests that the Clerk of the United States District Court, Southern District of New York enter default against Viacom International, Inc., Comedy Partners, Country Music Television, Inc., Paramount Pictures, Corp. D/B/A Paramount Recreation and CBS, Black Entertainment Television, LLC, Arab Bank Group, Inc., Arab Bank PLC, Dubai World Corporation, defendant's pursuant to Federal Rule of Civil Procedure 55(a).

It appearing from the record that the defendant's named herein above have failed to appear, plead, or otherwise defend, the default of the defendant's named herein above is hereby entered pursuant to Federal Rule of Civil Procedure 55(a).

Dated this_____, day of August, 2012.

_______________________________
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

VIACOM INTERNATIONAL, INC., COMEDY PARTNERS, COUNTRY MUSIC TELEVISION, INC., PARAMOUNT PICTURES, CORP. BLACK ENTERTAINMENT TELEVISION, LLC,

Plaintiff's

CASE NO. 1:07-cv-02103 (LLS)
(Related Case)
1:07-cv-03582 (LLS)

V.

YOUTUBE, INC., YOUTUBE LLC, GOOGLE, INC.,

Defendant's

CERTIFICATE OF SERVICE

I George May, Plaintiff, Intervener hereby certify that on this 27, day of August, 2012, I caused a copy of the Motion for Entry of Default, Affidavit in Support of Motion for Entry of Default, and Proposed Entry of Default to be placed in a postage-paid envelope, faxed to:

Charles S. Simms
PROSKAUER, ROSE, LLP
1585 Broadway
New York, New York 10036
Ph. 212-969-3000
Fax. 212-969-2900

Andy Schapiro
QUINN, EMANUEL
51 Madison Ave.
22nd Floor
New York, New York 10010
Ph. 212-849-7164
Fax. 212-849-7100

Dated this 27, day of August, 2012.

George May, Plaintiff,
Intervener
P.O. Box 32247
Palm Bch. Gardens
Fl. 33420
Ph./Fax. 561-290-4384

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

VIACOM INTERNATIONAL, INC., COMEDY PARTNERS, COUNTRY MUSIC TELEVISION, INC., PARAMOUNT PICTURES, CORP. BLACK ENTERTAINMENT TELEVISION, LLC,

Plaintiff's

CASE NO. 1:07-cv-02103 (LLS)
(Related Case)
1:07-cv-03582 (LLS)

V.

YOUTUBE, INC., YOUTUBE LLC, GOOGLE, INC.,

Defendant's

MOTION FOR ENTRY OF DEFAULT JUDGEMENT

George May, Plaintiff, Intervener here requests entry of judgement by default be entered against defendant's Viacom International, Inc., Comedy Partners, Country Music Television, Inc., Paramount Pictures, Corp. D/B/A Paramount Recreation and CBS, Black Entertainment Television, LLC, Arab Bank Group, Inc., Arab Bank PLC, Dubai World Corporation, defendant's herein above pursuant to Federal Rule of Civil Procedure 55(b). In support of this request George May, Plaintiff, Intervener relies upon the record in this case and his affidavit submitted herein.

Dated this 21, day of August, 2012.

George May, Plaintiff,
Intervener
P.O. Box 32247
Palm Bch. Gardens
Fl. 33420
Ph./Fax. 561-290-4384

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

VIACOM INTERNATIONAL, INC., COMEDY PARTNERS, COUNTRY MUSIC TELEVISION, INC., PARAMOUNT PICTURES, CORP. BLACK ENTERTAINMENT TELEVISION, LLC,

Plaintiff's

CASE NO. 1:07-cv-02103 (LLS)
(Related Case)
1:07-cv-03582 (LLS)

V.

YOUTUBE, INC., YOUTUBE LLC, GOOGLE, INC.,

Defendant's

AFFIDAVIT IN SUPPORT OF
MOTION FOR ENTRY OF DEFAULT JUDGEMENT

I George May, Plaintiff, Intervener being duly sworn state as follows:

1. I am the attorney for George May, Plaintiff, Intervener in the above entitled action and I am familiar with the file, records, and pleadings in this matter.

2. The defendant's Viacom International, Inc., Comedy Partners, Country Music Television, Inc., Paramount Pictures, Corp. D/B/A Paramount Recreation and CBS, Black Entertainment Television, LLC, Arab Bank Group, Inc., Arab Bank PLC, Dubai World Corporation were served with George May, Plaintiff, Intervener Complaint on July 28, 2012 by George May Fax.

Attached herein are the Fax Verification Reports.

3. An Answer to George May, Plaintiff, Intervener Complaint was due August 21, 2012. No valid Response, Answer, Affirmative Defense was served on the Plaintiff, Intervener George May within the 21 days time required by Law. No Answer, Affirmative Defense, Pleading, Response is permitted by the defendant's named herein by 18 U.S.C. §2,§3,§4, §2333(a)(b)(c), §2332(a), §2339A,B,C, A lien exists for George May, by U.C.C. Article 9.

4. The default by the defendant's named herein was entered on August 21, 2012.

5. As required by the Servicemembers Civil Relief Act of 2003, I have confirmed that the defendant's named herein are not currently in the active military service.

6. The defendant's named herein are currently in complicity, aiding, abetting, in conspiracy, doing business daily with convicted terrorist, Countries listed on the United States of America Terrorist list, and have committed Criminal, Terrorist, Treason, Robbing, Trespassing Acts against the United States of America Citizen George May, Plaintiff, Intervener.

7. To the best information and belief, defendant's are not an infant or incompetent person.

8. The Claim of George May, Plaintiff, Intervener is for damages in the sum certain of $3.6 Billion Dollars plus interest from July 15, 2004.

Sworn to and subscribed before
me this 31, day of August, 2012.

[signature]
NOTARY PUBLIC

My Commission Expires: Apr 26, 2015

MICHELLE L. HYATT
Notary Public - State of Florida
My Comm. Expires Apr 26, 2015
Commission # EE 87636

[signature]
George May
P.O. Box 32247
Palm Bch. Gardens
Fl. 33420
Ph./Fax. 561-290-4384



Published on OpenJurist (http://openjurist.org)

Home > Printer-friendly > Printer-friendly

# 18 USC 2333 - Civil remedies

(a) Action and Jurisdiction.—
Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorneys fees.

(b) Estoppel Under United States Law.—
A final judgment or decree rendered in favor of the United States in any criminal proceeding under section 1116, 1201, 1203, or 2332 of this title or section 46314, 46502, 46505, or 46506 of title 49 shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding under this section.

(c) Estoppel Under Foreign Law.—
A final judgment or decree rendered in favor of any foreign state in any criminal proceeding shall, to the extent that such judgment or decree may be accorded full faith and credit under the law of the United States, estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding under this section.

Source URL: http://openjurist.org/title-18/us-code/section-2333 18 U.S.C. 2333 (a) (b), 18 U.S.C. 2333 (c), 2339 A, 2339 (b) 18 U.S.C §2 AUTOMATICALLY RENDERS A DEFAULT, DEFAULT JUDGEMENT, JUDGEMENT AS A MATTER OF LAW, FACT, EVIDENCE. F.R.C.P. 50 (a) CONFESSION OF JUDGEMENT by SIGNED, WRITTEN CORROBORATED CONFESSIONS pleading Guilty, to All PLAINTIFFS CLAIMS AGAINST All DEFENDANTS

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

VIACOM INTERNATIONAL, INC., COMEDY PARTNERS, COUNTRY MUSIC TELEVISION, INC., PARAMOUNT PICTURES, CORP. BLACK ENTERTAINMENT TELEVISION, LLC,

Plaintiff's

CASE NO. 1:07-cv-02103 (LLS)
(Related Case)
1:07-cv-03582 (LLS)

V.

YOUTUBE, INC., YOUTUBE LLC, GOOGLE, INC.,

Defendant's

DEFAULT JUDGEMENT

The defendant's herein having failed to appear, plead or otherwise defend in George May, Plaintiff, Intervener action, and default having been entered, and attorney for George May, Plaintiff, Intervener having requested judgement against the defaulted defendant's Viacom International, Inc., Comedy Partners, Country Music Television, Inc., Paramount Pictures, Corp, D/B/A Paramount Recreation and CBS, Black Entertainment Television, LLC, Arab Bank Group, Inc., Arab Bank PLC, Dubai World Corporation and having filed a proper motion and affidavit in accordance with Federal Rule of Civil Procedure 55(a) and (b), Judgement is hereby entered in favor of George May, Plaintiff, Intervener, and against the defendant's

Viacom International, Inc., Comedy Partners, Country Music Television, Inc., Paramount Pictures, Corp. D/B/A Paramount Recreation and CBS, Black Entertainment Television, LLC, Arab Bank Group, Inc., Arab Bank PLC, Dubai World Corporation jointly and severally as follows:

> The sum certain of $3.6 Billion Dollars, plus interest from July 15, 2004, at the legal rate until paid.

Dated this_____, day of August, 2012.

CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

VIACOM INTERNATIONAL, INC., COMEDY PARTNERS, COUNTRY MUSIC TELEVISION, INC., PARAMOUNT PICTURES, CORP. BLACK ENTERTAINMENT TELEVISION, LLC,

Plaintiff's

CASE NO. 1:07-cv-02103 (LLS)
(Related Case)
1:07-cv-03582 (LLS)

V.

YOUTUBE, INC., YOUTUBE LLC, GOOGLE, INC.,

Defendant's

CERTIFICATE OF SERVICE

I George May, Plaintiff, Intervener hereby certify that on this 27, day of August, 2012, I caused a copy of the Motion for Entry of Default Judgement, Affidavit in Support of Motion for Entry of Default Judgement, and Proposed Entry of Default Judgement to be placed in a postage-paid envelope, faxed to:

Charles S. Simms
PROSKAUER, ROSE, LLP
1585 Broadway
New York, New York 10036
Ph. 212-969-3000
Fax. 212-969-2900

Andy Schapiro
QUINN, EMANUEL
51 Madison Ave.
22nd Floor
New York, New York 10010
Ph. 212-849-7164
Fax. 212-849-7100

Dated this 27, day of August, 2012.

George May, Plaintiff,
Intervener
P.O. Box 32247
Palm Bch. Gardens
Fl. 33420
Ph./Fax. 561-290-4384

TRANSMISSION VERIFICATION REPORT

TIME : 09/02/2012 18:08
NAME : GEORGE MAY
FAX : 561-290-4384
SER.# : BROL9F217174

| | |
|---|---|
| DATE,TIME | 09/02 17:51 |
| FAX NO./NAME | 0012129692900 |
| DURATION | 00:16:46 |
| PAGE(S) | 28 |
| RESULT | OK |
| MODE | STANDARD |

Charles S. Simms

TRANSMISSION VERIFICATION REPORT

TIME : 09/02/2012 18:21
NAME : GEORGE MAY
FAX : 561-290-4384
SER.# : BROL9F217174

| | |
|---|---|
| DATE,TIME | 09/02 18:10 |
| FAX NO./NAME | 0012128497100 |
| DURATION | 00:11:02 |
| PAGE(S) | 28 |
| RESULT | OK |
| MODE | STANDARD |

Andy Schapiro

Print page | Close

# Detailed Results

Tracking no.: 480725121105 | Select time format: 12H

## Delivered

Delivered
Signed for by: J.MAMZILIANO

Default
Judge mont
UCC Sec 9

Shipment Dates
Ship date Aug 27, 2012
Delivery date Aug 29, 2012 9:23 AM

Destination
NEW YORK, NY
Signature Proof of Delivery

## Shipment Options

**Hold at FedEx Location**
Hold at FedEx Location service is not available for this shipment.

## Shipment Facts

| | | | |
|---|---|---|---|
| Service type | Priority Envelope - Indirect Signature Required | Delivered to | Mailroom |
| Weight | 0.7 lbs/.3 kg | Reference | INV 20796 KD |

## Shipment Travel History

Select time zone: Local Scan Time

Print page | Close

## Detailed Results

Tracking no.: 480725111332 Select time format: 12H

### Delivered

Delivered
Signed for by: P.GELARDI

INTERVENTION
UCC 55C 9

Shipment Dates
Ship date Jul 25, 2012
Delivery date Jul 26, 2012 9:39 AM

Destination
NEW YORK, NY
Signature Proof of Delivery

### Shipment Options

**Hold at FedEx Location**
Hold at FedEx Location service is not available for this shipment.

### Shipment Facts

| | | | |
|---|---|---|---|
| Service type | Priority Envelope - Indirect Signature Required | Delivered to | Mailroom |
| Weight | 0.7 lbs/.3 kg | Reference | INV 20362 KD |

### Shipment Travel History

Select time zone: Local Scan Time

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

VIACOM INTERNATIONAL, INC., COMEDY PARTNERS, COUNTRY MUSIC TELEVISION, INC., PARAMOUNT PICTURES, CORP., BLACK ENTERTAINMENT TELEVISION, LLC.

Plaintiff's

CASE NO. 1:07-cv-02103 (LLS)
(Related Case)
1:07-cv-3582 (LLS)

V.

YOUTUBE, INC., GOOGLE, INC., YOUTUBE LLC.

Defendant's

_______________________________________/

GEORGE MAY, PLAINTIFF MOTION TO INTERVENE, MOTION TO ENFORCE JUDGEMENT LIEN AGAINST VIACOM INTERNATIONAL, INC., COMEDY PARTNERS, COUNTRY MUSIC TELEVISION, INC., PARAMOUNT PICTURES, CORP., BLACK ENTERTAINMENT TELEVISION, LLC., LIEN AGAINST VIACOM INTERNATIONAL INC., PARAMOUNT PICTURES, CORP. STOCK, UNDER FEDERAL RULE OF CIVIL PROCEDURE 18, 19, 20, 21, 22, 24, FEDERAL STATUTES 28 U.S.C. § 1367, MOTION TO ADD PARTIES NECESSARY FOR JUST ADJUDICATION ARAB BANK, DUBAI WORLD CORPORATION.

COMES NOW GEORGE MAY, Plaintiff and files this his motion to intervene, motion to enforce judgement lien against Viacom International, Inc., Comedy Partners, Country Music Television, Inc., Paramount Pictures, Corp., Black Entertainment, Television, LLC, Lien against Viacom International, Inc., Paramount Pictures, Corp. Stock, under Federal Rule of Civil Procedure 18, 19, 20, 21, 22, 24, Federal Statutes 28 U.S.C. § 1367, Motion to add parties necessary for just adjudication, Arab Bank, Dubai World Corporation for

Cause Herein as Follows:

1. That on October 14, 2004 George May, Plaintiff obtained a judgement lien against Viacom, Inc., Summer Redstone, Hilton Hotels Corp., others in complicity, conspiracy named before herein by not filing any answer, response, within the required 21 days required by Florida Rule of Civil Procedure, and had judge Jeffrey A. Winikoff who by his void, invalid, unconstitutional order of October 14, 2004 was automatically disqualified by his void, invalid, unconstitutional order by Florida Statutes 38.01 issue a void, invalid, null, of no effect what-so-ever order, based on a void, invalid, null, of no effect what-so-ever order by automatically disqualified Elizabeth Maass, after default by their co-conspirators International Game Technology, Inc., Mandalay Resorts, Group, Inc., others to with evil intent, malice of aforethought, knowledge, without regard for the law Tortiously Interfere with George May, Plaintiff's Contract and Prospective Economic Advantage of November 21, 1995, causing George May damages, harm.

2. The defendant's Viacom International, Inc., Summer Redstone, Hilton Hotels, Inc., others in Case Number 502004CA 008739XXXXMB were prohibited from filing any answer or defense in George May, Plaintiff Circuit Court Case in Palm Beach County, Florida by 18 U.S.C. § 2, 2333(a)(b)(c) as Viacom

International, Inc., Summer Redstone, Hilton Hotels, Corp. do business daily with International Terrorists who have been convicted of Terrorism, and are on the United States Terrorist List. See Linde v. Arab Bank, their Oil, Gas Companies, their associates, in complicity, conspiracy, aiders, abetters.

3. George May, Plaintiff judgement attached herein is an automatic lien on Viacom International, Inc., Summer Redstone, Hilton Hotels Corp. the plaintiff's in this case herein, any judgement obtained by the Plaintiff's in this case herein as George May, Trade Secrets robbed by Viacom International, Inc., Summer Redstone, Hilton Hotels, Inc. are a Continuing Contract for payment, Equitable Lien, Legal Lien, Warrant, Secured Transaction under the Uniform Commercial Code, the International Sale of Goods, (CISG) Laws.

4. George May, Plaintiff here objects to any Settlement between the Parties to this case herein that does not pay his judgement of $3.6 Billion Dollars.

5. The judgement is to be automatically trebled by Federal Statutes 18 U.S.C. §2, §3, §4, 2333(a)(b)(c), § 2332(a), §2339 A,B,C, as Viacom International, Inc., Summer Redstone, Hilton Hotels Corp., conspired with John Ellis (Jeb) Bush, to deprive George May, Plaintiff of his Civil Rights, Constitutional Rights, Tortiously Interfering with George May, Plaintiff Contracts, Economic Advantage for Viacom International, Inc.,

Summer Redstone, Individually, Hilton Hotels Corporation Arab Bank PLC, Dubai World Corporation, their Oil, Gas companies, all Terrorist in complicity, conspiracy, Aiders, Abetters in the Theft of George May, Plaintiff, Intervener Trade Secrets.

WHEREFORE, George May, Plaintiff, Intervener requests here that Arab Babk PLC, Dubai World Corporation be added as parties, that George May, Plaintiff, Intervener be awarded damages in the amount of $3.6 Billion Dollars, plus interest from October 14, 2004, trebled, for George May, Plaintiff, Intervener, and against Viacom International, Inc., Summer Redstone, Individually, Hilton Hotels Corporation, Arab Bank PLC, Dubai World Corporation jointly and severally, that this honorable court order that George May, Plaintiff, Intervener herein receive payment of his JUdgement Lien, Equitable Lien, Legal Lien, Warrant, Secured Transaction of $3,6 Billion Dollars under the Uniform Commercial Code, the International Sale of Goods (CISG) Laws, from any Settlement, Modified Judgement in this case herein between the parties in this case herein.

Respectfully submitted

George May, Intervener
P.O. Box 32247
Palm Bch. Gardens
Fl. 33420
Ph. 561-290-4384
Fax. 561-290-4384

I hereby certify that a copy of the foregoing was mailed, faxed this July 26, 2012 to:

The Clerk of the U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007
Ph. 212-805-0136

Donald B. Verrilli, Jr.
JENNER & BLOCK LLP
601 13th Street N.W.
Washington, D.C. 20005
Ph. 202-639-6000
Fax. 202-639-6066

MAX W. Berger
BERNSTEIN, LITOWITZ, BERGER & GROSSMAN
1285 Ave. of the Americas,
New York, New York 10019
Ph. 212-554-1400
Fax. 212-554-1444

Andy Schapiro
QUINN, EMANUEL
51 Madison Ave.
22nd Floor,
New York, New York 10010
Ph. 212-849-7164
Fax. 212-849-7100

Charles S. Simms
PROSKAUER ROSE, LLP
1585 Broadway
New York, New York 10036
Ph. 212-969-3000
Fax. 212-969-2900

George May
P.O. Box 32247
Palm Bch. Gardens
Fl. 33420
Ph./Fax. 561-290-4384



Paramount Parks
A VIACOM COMPANY

November 21, 1995

Mr. George May
P.O. Box 32247
Palm Beach Gardens, FL 33420

Dear Mr. May:

Your proposal for a Star Trek theme park has been forwarded to us by Thomas Byrne of Blockbuster Entertainment Group.

While we find your proposal very interesting, we regret to inform you that we are not pursuing this type of joint venture at the present time. We thank you for your interest and wish the best of luck in your endeavor.

Sincerely,

Jane Cooper
President & CEO

JC:amw

| SPRING 2006 | Trade Secrets | | |
|---|---|---|---|
| Course No. 9200-704-801<br>ID No. 16545 | W 6:30 - 9:30 p.m. | Room W-215 | |
| Professor Jay Dratler, Jr. | Room 231D (IP Alcove) | (330) 972-7972 | dratler@uakron.edu, dratler@neo.rr.com |

Copyright © 2000, 2002, 2003, 2006 Jay Dratler, Jr.

For permission, see

# Smith v. Dravo Corp.

203 F.2d 369, 97 U.S.P.Q. (BNA) 98 (7th Cir.1953)

Intentional harm is a tort

Before Duffy, Lindley and Swaim, Circuit Judges.

Lindley, Jr. [*370]

* * * [*371] * * *

In the early 1940s Leathem D. Smith, now deceased, began toying with an idea which, he believed, would greatly facilitate the ship and shore handling and transportation of cargoes. As he was primarily engaged in the shipbuilding business, it was quite natural that his thinking was chiefly concerned with water transportation and dock handling. Nevertheless his overall plan encompassed rail shipping as well. He envisioned construction of ships especially designed to carry their cargo in uniformly sized steel freight containers. These devices (which, it appears, were the crux of his idea) were: equipped with high doors at one end; large enough for a man to enter easily; weather and pilfer proof; and bore collapsible legs, which (1) served to lock them (a) to the deck of the ship by fitting into recesses in the deck, or (b) to each other, when stacked, by reason of receiving sockets located in the upper four corners of each container, and (2) allowed sufficient clearance between deck and container or container and container for the facile insertion of a fork of a lift tractor, and (3) were equipped with lifting eyelets, which, together with a specially designed hoist, made possible placement of the containers upon or removal from a ship, railroad car or truck, while filled with cargo. The outer dimensions of the devices were such that they would fit compactly in standard gauge North American railroad cars, or narrow gauge South American trains, and in the holds of most water vessels.

World War II effectually prevented Smith from developing his conception much beyond the idea stage. Nevertheless blue prints were drawn in 1943, and in 1944, as a result of

**Trade Regulation—Trade Secrets—Applicability of Statute of Limitations to Wrongful Appropriation of Trade Secret.**—In 1921 the plaintiff disclosed a trade secret to the defendant, pursuant to a contract which prohibited the defendant from taking advantage of the principle thus disclosed unless and until adequate compensation for the plaintiff had been agreed upon. After disclosure the defendant declared itself as not interested in the process and no agreement for compensation was made. The defendant, however, according to allegations, investigated the process, developed machinery embodying its principle, and in 1930 obtained patents thereon. The plaintiff seeks to have the patent rights assigned to him, to restrain the defendant's use of his process, and to secure an accounting. The defendant moved to dismiss on the ground that the plaintiff's action was for breach of contract and therefore barred by the statute of limitations. *Held*, motion to dismiss denied. There is a property right in the trade secret, apart from the contract, which equity will protect. As the defendant's user is in the nature of a continuing wrong, the statute of limitations is inapplicable as to those rights which arose within the statutory period. *Sachs v. Cluett, Peabody & Co., Inc.*, 31 N. Y. S.(2d) 718 (Sup. Ct. 1941).

If the rights of the plaintiff were derived solely from the contract the defendant's position would unquestionably be correct, but there are numerous cases in which, despite the absence of a contract, the court has granted equity protection for a trade secret.[1] In granting equitable relief, the majority of courts proceed on the theory that the basis of protection is the property right in a trade secret, while others state that the basis is a breach of contract or of confidential relations.[2] At the present stage in the development of the trade secrets doctrine, it seems unnecessary to tie down the grant of protection to the reasoning of the earlier cases;

1. *E.g.*, Philadelphia Extracting Co. v. Keystone Extracting Co., 176 Fed. 830 (E. D. Pa. 1910); Peasal v. Noxall Polish Mfg. Co., 268 Fed. 887 (E. D. Pa. 1920) (contract had expired); Shavoir v. American Rebonded Leather Co., 104 Conn. 472, 133 Atl. 582 (1926) (contract had been abrogated and was not in issue); Morrison v. Woodbury, 105 Kan. 617, 185 Pac. 735 (1919); Abalene Exterminating Co. v. Oser, 125 N. J. Eq. 329, 5 A.(2d) 738 (Ch. 1939); Tabor v. Hoffman, 118 N. Y. 30, 32 N. E. 12 (1889); see Barton, *A Study in the Law of Trade Secrets* (1939) 13 U. of Cin. L. Rev 507, 540. As to what may constitute a trade secret, see A. O. Smith Corporation v. Petroleum Iron Works Co. of Ohio, 73 F.(2d) 531, 538, 539 (C. C. A. 6th, 1934); Walker v. Berger, 148 Ga. 326, 96 S. E. 627 (1918) (not necessarily a patentable idea); Barton, *supra*, at 515, 521; Note, *The Protector's Remedies to Enforce a Property Right in an Idea* (1941) 15 St. John's L. Rev 243, 247.

2. See Derenberg, Trade-Mark Protection and Unfair Trading (1936) § 8; Barton, *supra* note 1, at 530 *et seq.*; Notes, *Equitable Protection of Trade Secrets* (1923) 23 Columbia Law Rev 164; *Basis of Jurisdiction for the Protection of Trade Secrets* (1919) 19 Columbia Law Rev 233; *Nature of Trade Secrets and Their Protection* (1928) 42 Harv. L. Rev. 254; see also (1928) 6 Tex. L. Rev

JSTOR

GEORGE MAY
BUSINESS PLAN
TRADE SECRET
USED IN
NEVADA,
JORDAN,
DUBAI BY
PARAMOUNT,
VIACOM

You are not currently logged in through a participating institution or individual account. See for more information.

A VOID ORDER
IS NOT AN
ANSWER OR
AFFIRMATIVE
DEFENSE

# Trade Regulation. Trade Secrets. Applicability of Statute of Limitations to Wrongful Appropriation of Trade Secret

*Columbia Law Review*
Vol. 42, No. 2 (Feb., 1942), pp. 317-320
Published by:
Article Stable URL:

A CONTINUING WRONG,
A CONTINUING CONTRACT
CANNOT BE
DISMISSED — ALL
ORDERS WERE ARE
NULL, OF NO
EFFECT WHAT SO
EVER VOID INVALID
UNCONSTITUTIONAL

## Rights and Permissions

Search This Issue for
found banner=NoAccess_CDST_PSSN
issue available=false
purchase type=none



EXECUTIVE OFFICES 301 North Olive Ave West Palm Beach, FL 33401 (561) 355 2996

## Report Selection Criteria

**Case ID:** 502004CA008739XXXXMB
**Docket Start Date:**
**Docket Ending Date:**

## Case Description

| | |
|---|---|
| **Case ID:** | 502004CA008739XXXXMB |
| **Case Caption:** | GEORGE MAY V CAROL LUMPKIN |
| **Division:** | AD - FRENCH |
| **Filing Date:** | Wednesday, September 15th, 2004 |
| **Court:** | CA - CIRCUIT CIVIL |
| **Location:** | MB - MAIN BRANCH |
| **Jury:** | Y-Jury |
| **Type:** | CD - CONTRACT & DEBT |
| **Status:** | AS - REDISPOSED |

NO ANSWER OR AFFIRMATIVE DEFENSE FILED WITHIN THE REQUIRED 21 DAYS BY VIACOM, SUMMER REDSTONE, HILTON HOTELS CORP THEIR ATTORNEYS

## Related Cases

*No related cases were found.*

## Case Event Schedule

(c) Copyright 1998 Affiliated Computer Systems, Inc. ACS and the ACS logo are registered trademarks.
CourtConnect is a trademark of ACS. This contains trade secrets and is subject to a confidentiality agreement. The unauthorized possession, use, reproduction, distribution, display, or disclosure of this material or the information contained herein is prohibited.
All rights reserved. User Accepts/Agrees to . Not for official use.

CFN 20040607732
OR BK 17683 PG 1698
RECORDED 10/26/2004 09:13:57
Palm Beach County, Florida
Dorothy H Wilken, Clerk of Court
Pgs 1698 - 1699; (2pgs)

4020

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA
CASE NO CA 04 8739 AN

502004CA008739XXXXMBAN

GEORGE MAY
Plaintiff(s),

vs.

CAROL C LUMPKIN et al
Defendant(s).

CLOSED

# ORDER OF DISMISSAL

THIS MATTER came before the Court upon Defendants, Carol C. Lumpkin, Michael C. Marsh, Hilton Hotels Corp., Barron Hilton, Viacom, Inc., and Sumner M. Redstone's Notice to Clerk of Court of Pre-filing Orders, Notice of Automatic Stay and Request for Dismissal by Administrative Judge. Upon considering the Motion and being otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDGED that this matter is dismissed without prejudice to Plaintiff seeking an Order from Judge Elizabeth Maass allowing its filing and referring same to Judge Maass for consideration of potential sanctions for violation of her Order dated July 15, 2004.

Void invalid unconstitutional order Based on a void invalid, unconstitutional order. of

DONE AND ORDERED in West Palm Beach, Palm Beach County, Florida on this 14th day of October, 2004.

21A

JEFFREY A. WINIKOFF
CIRCUIT COURT JUDGE

**Copies furnished:**
**George May**
**P O Box 32247**
**Palm Bch Gardens FL 33420**
**James M Miller Esq**
**Megan J Knight Esq**
**1 SE 3rd Ave 28th Fl**
**Miami FL 33131**
**Hilarie Bass Esq**
**1221 Brickell Ave**
**Miami FL 33131**
**Michael C Marsh Esq**
**2 S Biscayne Blvd 1500**
**Miami FL 33131**

This is not a certified copy

IN THE FIFTEENTH JUDICIAL CIRCUIT IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 502004CA004938XXXXMB

GEORGE MAY
Plaintiff,

and

PATRICK C. BARTHET, et al.,
Defendants.
_______________________________/

**ORDER ON PLAINTIFF, GEORGE MAY'S SWORN AND VERIFIED MOTION TO DISQUALIFY JUDGE ELIZABETH MARIE T. MAASS FROM THIS CASE, ALL CASES INVOLVING GEORGE MAY PURSUANT TO FLORIDA STATUTES 38.10, FLORIDA RULE OF JUDICIAL ADMINISTRATION 2.160, 2.330 (2008), FEDERAL STATUTES 28 U.S.C. §455, HER OATH CONTRACT**

THIS CAUSE came before the Court, in Chambers, on Plaintiff, George May's Sworn and Verified Motion to Disqualify Judge Elizabeth Marie T. Maass from this Case, All Cases Involving George May Pursuant to Florida Statutes 38.10, Florida Rule of Judicial Administration 2.160, 2.330 (2008), Federal Statutes 28 U.S.C. §455, Her Oath Contract. Based on a review of the Motion, it is

ORDERED AND ADJUDGED that Plaintiff's Motion is denied, as moot. The undersigned does not preside in the above action.

DONE AND ORDERED in West Palm Beach, Palm Beach County, Florida this 2 day of December, 2008.

ELIZABETH T. MAASS
Circuit Court Judge

DEFENDANTS, COMPANY, INDIVIDUALS

VARIOUS STATE ACTORS BUSH BROTHERS CONSPIRED TOGETHER TO DENY MY CIVIL RIGHTS, CONSTITUTIONAL RIGHTS, INTERFER WITH MY CONTRACT, BUSINESS

# Tortious Interference with Contract and Prospective Economic Advantage

ADVANTAGES, ECONOMIC ADVANTAGES VALUED

This Quarterly Update[1] focuses on tortious interference with contract and tortious interference with prospective economic advantage.[2] IN THE BILLIONS OF

## Introduction

DOLLARS TO TAKE MY PROPERTY, TRADE SECRET WITHOUT PAYMENT,

Claims for tortious interference with contract or prospective economic advantage can result in enormous judgments. *See, e.g., Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 4 (1987) (jury verdict in excess of $10 billion for tortious interference with contract); *JAM Sports & Entertainment, LLC v. Paradama Productions, Inc.*, 382 F. Supp. 2d 1056, 1058 (N.D. Ill. 2005) (jury verdict in excess of $90 million for tortious interference with contract and prospective economic advantage, although defendant later granted judgment as a matter of law on claim for tortious interference with prospective economic advantage). The reasons for such large potential damage awards are obvious: the underlying contract or business relationship at issue can be extremely valuable and, if the defendant's conduct is sufficiently egregious, punitive damages may be awarded in "economic interference" cases. *See, e.g., Pennzoil*, 481 U.S. at 4 (interference with acquisition of Getty Oil; jury verdict of $7.53 billion in actual damages and $3 billion in punitive damages); *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 290 (2d Cir. 2003) (affirming award of punitive damages for tortious interference with prospective economic advantage).

[1] Meyer & O'Connor, LLC ("Meyer & O'Connor"), a trial and appellate firm focusing on complex commercial litigation, tort and general civil litigation, criminal defense and civil rights litigation, publishes a Quarterly Update that addresses significant legal developments. The Quarterly Update is an informational service for clients, friends and acquaintances of the firm (and attorney advertising) and is not legal advice and does not create an attorney-client relationship with Meyer & O'Connor.

TO INTENTIONALLY HARM ME.

[2] "Tortious interference with prospective economic advantage" is the title used in some jurisdictions to refer to the tort claim that can arise when one wrongfully interferes with a significant business relationship that has not been reduced to contract. We refer to this tort by this title herein, but it should be noted that some jurisdictions refer to this tort by different titles. *See, e.g., Amaranth LLC v J.P. Morgan Chase & Co.*, 71 A.D.3d 40, 47, 888 N.Y.S.2d 489, 494 (Sup. Ct. App. Div. 1st Dept. 2009)(discussing "claim for tortious interference with business relations" and "complaint alleging tortious interference with prospective economic advantage" in reference to same claim).

Attorney advertising material. This material does not constitute legal advice or create an attorney-client relationship with Meyer & O'Connor, LLC. Please direct questions or comments regarding these materials to Timothy P. O'Connor, Meyer & O'Connor, LLC, Suite 3300, 135 South LaSalle Street, Chicago, IL 60603; (e) toconnor@meyeroconnor.com; (p) 312-346-9000.



# Computer Crime and Intellectual Property Section (CCIPS)

---

## VIII. Theft of Commercial Trade Secrets

A. Introduction
B. The Economic Espionage Act of 1996: 18 U.S.C.§§ 1831-1839
B.1. Overview of the statute
B.2. Elements common to 18 U.S.C. §§ 1831, 1832
B.2.a. Misappropriation
B.2.b. Knowledge
B.2.c. Trade secret status
B.3. Additional 18 U.S.C. § 1831 element: intent to benefit a foreign government, foreign instrumentality, or foreign agent
B.4. Additional 18 U.S.C. § 1832 elements
B.4.a. Economic benefit to a third party
B.4.b. Intent to injure the owner of the trade secret
B.4.c. Product produced for or placed in interstate or foreign commerce
B.5. Attempts and conspiracies
B.6. Potential defenses
B.6.a. Parallel development
B.6.b. Reverse engineering
B.6.c. General knowledge
B.6.d. The First Amendment
B.6.e. Advice of counsel or claim of right
B.6.f. Statutory challenges
B.7. Criminal forfeiture
B.8. Civil proceedings
B.9. Confidentiality and the use of protective orders
B.10. Extraterritoriality

Go

Select Year: 2006

JUDICIAL BRANCH JUDGES: GENERAL PROVISIONS

**38.01 Disqualification when judge party; effect of attempted judicial acts.**--Every judge of this state who appears of record as a party to any cause before him or her shall be disqualified to act therein, and shall forthwith enter an order declaring himself or herself to be disqualified in said cause. Any and all attempted judicial acts by any judge so disqualified in a cause, whether done inadvertently or otherwise, shall be utterly null and void and of no effect. No judge shall be disqualified from sitting in the trial of any suit in which any county or municipal corporation is a party by reason that such judge is a resident or taxpayer within such county or municipal corporation.

**History.**--s. 2, ch. 16053, 1933; CGL 1936 Supp. 4155(1); s. 1, ch. 59-43; s. 205, ch. 95-147.

Disclaimer: The information on this system is unverified. The journals or printed bills of the respective chambers should be consulted for official purposes. Copyright © 2000-2005 State of Florida.

Automatically Becomes A witness, party Automatically is Recused not Qualified by using the unlawful device of void, Duvalid, unconstitutional order which is fraud on the court, treason a criminal act

Automatically voids all orders in all cases

Automatically becomes a party by not filing his/her yearly financial statement notarized, her his conflicts

Published on OpenJurist (http://openjurist.org)

Home > Printer-friendly > Printer-friendly

# 18 USC 2333 - Civil remedies

(a) Action and Jurisdiction.—
Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorneys fees.
(b) Estoppel Under United States Law.—
A final judgment or decree rendered in favor of the United States in any criminal proceeding under section 1116, 1201, 1203, or 2332 of this title or section 46314, 46502, 46505, or 46506 of title 49 shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding under this section.
(c) Estoppel Under Foreign Law.—
A final judgment or decree rendered in favor of any foreign state in any criminal proceeding shall, to the extent that such judgment or decree may be accorded full faith and credit under the law of the United States, estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding under this section.

Source URL: http://openjurist.org/title-18/us-code/section-2333 18 U.S.C. 2333 (a) (b), 18 U.S.C. 2333 (c), 2339 A, 2339 (b) 18 U.S.C §2 AUTOMATICALLY RENDERS A DEFAULT, DEFAULT JUDGEMENT, JUDGEMENT AS A MATTER OF LAW, FACT, EVIDENCE. F.R.C.P. 50 (a) CONFESSION OF JUDGEMENT BY SIGNED, WRITTEN CORROBORATED CONFESSIONS PLEADING GUILTY. TO ALL PLAINTIFFS CLAIMS AGAINST ALL DEFENDANTS

> > > Criminal Resource Manual 2471

# 2471 18 U.S.C. § 2

The first provision one finds in Title 18 of the United States Code regarc accessories to crime. Title 18, United States Code § 2 now provides:

(a) Whoever commits an offense against the United States or aids, abet counsels, commands, induces or procures its commission, is punishable a principal.

(b) Whoever willfully causes an act to be done which if directly perform by him or another would be an offense against the United States, is punishable as a principal.

Aider and abettor liability is distinct from accessory after the fact under U.S.C. § 3. *United States v. James*, 998 F.2d 74, 80 (2d Cir.), *cert. denied*, U.S. 958, 114 S.Ct. 415, 126 L.Ed.2d 362 (1993). An aider and abettor, unl accessory after the fact, is punishable as a principal. *Id.*

[updated October 1998]

**AMEinfo.com**

Source: www.ameinfo.com
» Banking

# Arab bank assets hit $2.26trillion

Adnan Yousef, Chairman of the Union of Arab Banks has said that the total assets of banks in the Arab world grew 3.57% to $2.26 trillion in 2009 despite the global financial crisis, Khaleej Times has reported. Addressing the Emirates Bankers' Forum, Yousef said that the total assets of the top 100 Arab banks in terms of assets exceeded $1.5 trillion, deposits reached $1 trillion, total loans amounted $831bn, shareholders equities reached $164bn and net profits reached $24bn.

**Middle East:** Thursday, March 11 - 2010

The Arab banking sector currently comprises 280 commercial banks, 60 Islamic banks and 80 investment and specialised banks.

**© 1996-2010 by AME Info FZ LLC / Emap Limited. All rights reserved.**

This story was posted by Staff
Thursday, March 11 - 2010 at 11:20 UAE local time (GMT+4)

**Find this article at:**
http://www.ameinfo.com/226452.html

"AMEinfo.com", "AMEinfo.com/fn", "the ultimate Middle East business resource" and "the news you choose" are trademarks of AME Info FZ LLC / Emap Limited. All other products and brandnames mentioned are trademarks or registered trademarks of their respective companies. Replication or redistribution in whole or in part is expressly prohibited without the prior written consent of AME Info FZ LLC / Emap Limited.

# Counterterrorism Blog

## Arab Bank Case Ruling: A Victory for Victims of Terrorism

**By Victor Comras**

It looks like the 6 year old Linde v Arab Bank case may finally move into its trial on the merits phase following a ruling July 12th by US District Court Judge Nina Gershon that:

> "The factual allegations of the complaints sufficiently support an inference that Arab Bank and the terrorist organizations were participants in a common plan under which Arab Bank would supply necessary financial services to the organizations which would themselves perform the violent acts. Administering the death and dismemberment benefit plan further supports not only the existence of an agreement but Arab Bank's knowing and intentional participation in the agreement's illegal goals. No more is required."

The case had been locked in its discovery phase for some time pending rulings on Arab Bank's refusal to provide documentation concerning such financial transfers. Plaintiffs maintained that such documents, if provided, would establish that Arab Bank participated knowingly in this money raising and transferring scheme. Arab Bank's attorneys maintained that they were precluded from providing such documents because of Jordanian and other country bank secrecy laws. The ruling reflects Judge Gershon's determination that the refusal to comply with the court's order that such documents be made available to the plaintiffs pursuant to discovery requests merits legal sanctions against Arab Bank. And, the judge's instruction to the jury that they can draw the above inference from this lack of production of such documents is the appropriate remedy. This ruling is fully in line with legal precedent in such cases of non production of court ordered documents.

The Linde case was brought before the U.S. District Court for the Eastern District of New York in July 2004 by six American families, victims of Palestinian terrorism in Israel during the Al Aqsa Intifada. They sued Jordan's Arab Bank under section 2333 of the Anti Terrorism Act of 1996 alleging that Arab Bank had encouraged such terrorism by disbursing millions of dollars in support payment for families of suicide bombers, which served as a further incentive for attacks.

Section 2333 provides that "Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue {in Federal Court} … and … recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees." The District Court also permitted foreign nationals to join the lawsuit via the Alien Torts Claims Act. Currently, more than 100 families and 700 individuals in the Linde case and related cases are seeking more than $1 billion in damages based on Arab Bank's role in financially supporting terrorist activities. The foreign nationals consist mostly of Israeli citizens but also include Afghani, Argentinian, Australian, Belarusian, Canadian, French, Iranian, Iraqi, Peruvian, South African, Turkmenian, Ukranian, and Uzbeki citizens.

The payments were transferred by Arab Bank to and through several charities that allegedly serve as fronts for Hamas, the Palestinian Islamic Jihad, and Al Aqsa Martyr's Brigade and the Popular Front for the Liberation of Palestine. These funds were originally collected by two special committees established in Saudi Arabia with the stated intention of raising funds for the families of those carrying



NEW YORK POST
Updated: Fri., Oct. 14, 2011, 9:35 PM

# Judge: Al-Qaeda owes $9.3 billion for 9/11 harm

*Last Updated: 9:35 PM, October 14, 2011*
*Posted: 9:34 PM, October 14, 2011*

A magistrate judge in New York has recommended al-Qaeda be assessed $9.3 billion for the damage done to properties and businesses in the Sept. 11 attacks.

Federal Magistrate Judge Frank Maas in a ruling Friday sent the recommendation to a district judge presiding over a lawsuit brought by several insurance companies.

The companies in 2003 sued various defendants, seeking damages for the 2001 terror attacks, which demolished the World Trade Center's twin towers. Al-Qaeda never responded to the lawsuit and was found in default in 2006. Maas determined the actual damages and then tripled them as allowed by law.

At this time, the companies were only seeking an assessment of damages against al-Qaeda. The organization founded by Osama bin Laden is blamed for orchestrating the terror attacks.

NEW YORK POST is a registered trademark of NYP Holdings, Inc.
NYPOST.COM, NYPOSTONLINE.COM, and NEWYORKPOST.COM are trademarks of NYP Holdings, Inc.
Copyright 2011 NYP Holdings, Inc. All rights reserved. Privacy | Terms of Use

# Summary

Zacarias Moussaoui, members of the Colombian drug cartels, members of organized crime, and some of the former Enron executives have at least one thing in common: they all have federal conspiracy convictions. The essence of conspiracy is an agreement of two or more persons to engage in some form of prohibited misconduct. The crime is complete upon agreement, although some statutes require prosecutors to show that at least one of the conspirators has taken some concrete step or committed some overt act in furtherance of the scheme. There are dozens of federal conspiracy statutes. One, 18 U.S.C. 371, outlaws conspiracy to commit some other federal crime. The others outlaw conspiracy to engage in various specific forms of proscribed conduct. General Section 371 conspiracies are punishable by imprisonment for not more than five years; drug trafficking, terrorist, and racketeering conspiracies all carry the same penalties as their underlying substantive offenses, and thus are punished more severely than are Section 371 conspiracies. All are subject to fines of not more than $250,000 (not more than $500,000 for organizations), most may serve as the basis for a restitution order, and some for a forfeiture order.

The law makes several exceptions for conspiracy because of its unusual nature. Because many united in crime pose a greater danger than the isolated offender, conspirators may be punished for the conspiracy, any completed substantive offense which is the object of the plot, and any foreseeable other offenses which one of the conspirators commits in furtherance of the scheme. Since conspiracy is an omnipresent crime, it may be prosecuted wherever an overt act is committed in its furtherance. Because conspiracy is a continuing crime, its statute of limitations does not begin to run until the last overt act committed for its benefit. Since conspiracy is a separate crime, it may be prosecuted following conviction for the underlying substantive offense, without offending constitutional double jeopardy principles; because conspiracy is a continuing offense, it may be punished when it straddles enactment of the prohibiting statute, without offending constitutional ex post facto principles. Accused conspirators are likely to be tried together, and the statements of one may often be admitted in evidence against all.

In some respects, conspiracy is similar to attempt, to solicitation, and to aiding and abetting. Unlike aiding and abetting, however, it does not require commission of the underlying offense. Unlike attempt and solicitation, conspiracy does not merge with the substantive offense; a conspirator may be punished for both.

An abridged version of this report without footnotes and most citations to authority is available as CRS Report R41222, *Federal Conspiracy Law: A Sketch*, by Charles Doyle.

change language: English بالعربية

Taking on the world's toughest energy challenges

regional website

# What we do

For more than 100 years, ExxonMobil has proudly worked with countries in the Middle East and North Africa to unlock new energy sources, develop new technologies, and add value along the entire energy chain. Our industry has proven that cooperation in the Middle East and North Africa brings together strengths, maximizing the value of resources for the benefit of all.

ExxonMobil is the world's largest publicly traded petroleum and natural gas company. Our company and its affiliates are present on a global scale. We operate facilities and market products around the world and explore for oil and natural gas on six continents. We lead the industry in almost every aspect of the energy and petrochemical business.

In the Middle East and North Africa, ExxonMobil uses industry-leading technology to address the region's energy challenges. We take great pride in the strong partnerships that we have built up in the region over the years, and we look forward to playing a role in helping the region grow.

For example, we are proud of our joint ventures with Qatar Petroleum and our cooperation with the State of Qatar. Our partnerships are maximizing the value of Qatar's energy resources through the development of new technologies which are opening up new natural gas markets around the world. ExxonMobil established ExxonMobil Research Qatar (EMRQ) as an anchor tenant at the Qatar Science & Technology Park (QSTP) in Education City, Qatar. ExxonMobil shares the Qatar Foundation's objectives to advance science and technology through research and development. EMRQ is conducting research in areas of common interest to the State of Qatar and ExxonMobil, including environmental management and LNG safety.

In the Kingdom of Saudi Arabia, ExxonMobil's interests include petrochemicals manufacturing and petroleum refining. And with our partners, Saudi Aramco and Sinopec, we recently celebrated the start-up of China's first fully integrated refining, petrochemical and fuels marketing joint venture with foreign participation.

In Abu Dhabi, leading-edge technology applied to the Upper Zakum development project is helping recover resources more

# Shell Oil Company

From Wikipedia, the free encyclopedia

**Shell Oil Company** is the United States-based subsidiary of Royal Dutch Shell, a multinational oil company ("oil major") of Anglo Dutch origins, which is amongst the largest oil companies in the world. Approximately 22,000 Shell employees are based in the U.S. The U.S. head office is in Houston, Texas. Shell Oil Company, including its consolidated companies and its share in equity companies, is one of America's largest oil and natural gas producers, natural gas marketers, gasoline marketers and petrochemical manufacturers.

**Shell Oil Company**

| | |
|---|---|
| **Industry** | Oil, energy |
| **Headquarters** | Houston, Texas, US |
| **Key people** | Marvin E. Odum, President |
| **Revenue** | US$ 2.147 billion (2008) |
| **Employees** | 24,008 (2008) |
| **Parent** | Royal Dutch Shell |
| **Website** | Shell USA Official website (http://www.shell.us) |

Shell is the market leader through approximately 25,000 Shell-branded gas stations in the US which also serve as Shell's most visible public presence. Shell Oil Company is a 50/50 partner with the Saudi Arabian government-owned oil company Saudi Aramco in Motiva Enterprises, a refining and marketing joint venture which owns and operates three oil refineries on the Gulf Coast of the United States. It also holds 80% of an exploration firm called Pecten that explores and drills in various offshore locations including the oil basin near Douala, Cameroon in cooperation with the French government-owned Elf Aquitaine (now Total).[1]

One Shell Plaza, Shell Oil Company's headquarters in Houston.

Shell products include oils, fuels, and card services as well as exploration, production, and refining of petroleum products.[2] The Shell Oil Refinery in Martinez, California, the first Shell refinery in the United States,[3] supplies Shell and Texaco stations in the West and Midwest.[4]

Shell gasolines previously included the RU2000 and SU2000 lines (later there was a SU2000E) but they have been superseded by the V-Power line.[5]

In 1997, Shell and Texaco entered into two refining/marketing joint ventures. One combined their midwestern and western operations and was known as Equilon. The other, known as Motiva, combined the eastern and gulf coast operations of Shell Oil and Star Enterprise, itself a joint venture between Saudi Aramco and Texaco.[6] After Texaco merged with Chevron in 2001, Shell purchased Texaco's shares in the joint ventures.[7] In 2002, Shell began converting these Texaco stations to the Shell brand, a process that was to be



JURIST
Legal News & Research

**Friday, July 08, 2011**

## Federal appeals court reinstates Indonesia lawsuit against Exxon Mobil

Zach Zagger at 3:13 PM ET

[JURIST] The US Court of Appeals for the District of Columbia Circuit [official website] Friday revived a lawsuit [opinion, PDF] brought by 15 Indonesian citizens against the US corporation ExxonMobil Corp. [corporate website] alleging that its wholly-owned subsidiary hired security forces that committed numerous human rights abuses. The US District Court for the District of Columbia [official website] dismissed the lawsuit in 2009. Plaintiffs alleged that ExxonMobil hired members of the Indonesian military as security that it knew had committed human rights abuses in the past. They claim that the security forces committed abuses including genocide, extrajudicial killing, torture, crimes against humanity, sexual violence and kidnapping in violation of the Alien Torture Statute (ATS) [28 USC § 1350] and the Torture Victims Protection Act of 1991 [text]. The plaintiffs appealed that decision and ExxonMobil issued a cross-appeal arguing for the first time that it was immune from the lawsuit since it is not subject to the ATS. The court held that the plaintiffs had alleged sufficient facts to prove ExxonMobil was guilty of aiding and abetting and that "neither the text, history, nor purpose of the ATS supports corporate immunity for torts based on heinous conduct allegedly committed by its agents in violation of the law of nations." One judge dissented arguing that the ATS is meant to apply to conduct within the US or on the high seas, not in foreign countries, and that the ATS does not apply to corporations since it depends on customary international law that does not recognize corporate liability.

The federal courts have recently allowed lawsuits alleging violations of the ATS and TVPA for violence overseas by paramilitary troops hired by US corporations. Last month, a judge for the US District Court for the Southern District of Florida [official website] permitted lawsuits [JURIST report] under the ATS and TVPA against Chiquita Brand International [corporate website] to move forward. Family members of several thousand victims of paramilitary violence in Colombia filed suit against Chiquita Brand International, which has admitted to funding United Self-Defense Forces of Colombia (AUC) [CDI backgrounder], a right-wing paramilitary group in Colombia. In May, the US Court of Appeals for the Ninth Circuit [official website] allowed a lawsuit by Argentine citizens against Daimler AG [official website] for the actions of Mercedes-Benz Argentina [official website, in Spanish] during the nation's 1976-1983 "Dirty War" [GlobalSecurity backgrounder; JURIST news archive]. The suit, which was dismissed by the US District Court for the Northern District of California [official website] in 2005 due to a lack of jurisdiction, alleges that Mercedes-Benz Argentina "collaborated with state security forces to kidnap, detain, torture, and kill the plaintiffs and/or their relatives."

Published on *EarthRights International* (http://www.earthrights.org)

# Wiwa v. Royal Dutch Shell Case History [1]

This case charges Royal Dutch Petroleum Company and Shell Transport and Trading Company (Royal Dutch/Shell) with complicity in human rights abuses in Nigeria. The particular abuses at issue are the November 10, 1995 hangings of Ken Saro-Wiwa and John Kpuinen, two leaders of MOSOP (Movement for the Survival of the Ogoni People), the torture and detention of Owens Wiwa, and the shooting of a woman who was peacefully protesting the bulldozing of her crops in preparation for a Shell pipeline by Nigerian troops called in by Shell. These abuses were intended to suppress the Ogoni people's peaceful opposition to defendants' long history of environmental damage and human rights abuses in the Ogoni region. EarthRights International is co-counsel for the plaintiffs, along with Judith Brown Chomsky, the Center for Constitutional Rights, Paul Hoffman, and Julie Shapiro.

Plaintiffs' action was brought under the Alien Tort Claims Act and also alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). Defendants moved to dismiss both the initial and the amended complaints on the grounds of lack of personal jurisdiction over Royal Dutch/Shell, forum non conveniens (defendants argued that the case should be heard in the Netherlands or England), and lack of subject matter jurisdiction (defendants argued, inter alia, that ATCA did not apply to a corporation and that the claim was precluded by the political question and act of state doctrines, as well as Nigerian law on corporate liability).

On September 25, 1998, Judge Kimba Wood concluded that personal jurisdiction was appropriate in New York, but also ruled that England was a more convenient forum, and therefore that defendants' motion to dismiss should be granted for forum non conveniens.

On appeal to the U.S. Court of Appeals for the Second Circuit, plaintiffs argued that a forum non conveniens dismissal would vitiate Congressional intent to allow plaintiffs' claims to be heard in U.S. courts. Defendants cross-appealed the ruling on personal jurisdiction. In a huge victory for the plaintiffs, the Court of Appeals on September 15, 2000 reversed the district court's forum non conveniens dismissal, concluding that the United States is a proper forum. The Court also upheld the district court's ruling that jurisdiction over the defendants was proper and remanded the case back to the district court to rule on defendants' other objections to the suit.

Royal Dutch/Shell petitioned the United States Supreme Court to review the Second Circuit's decision, but on March 26, 2001, the Court declined to do so, and let the Second Circuit's decision stand. Royal Dutch/Shell had argued to the Supreme Court not only that the Second Circuit erred in finding that a New York court has jurisdiction over it and

9/11/12

To: Charles S. Simms
PROSKAUER ROSE, LLP
1585 Ave. of the Americas
New York, New York 10019
Ph. 212-969-3000
Fax. 212-554-1444

Andy Schapiro
QUINN, EMANUEL
51 Madison Ave.
22nd Floor
New York, New York 10010
Ph. 212-849-7164
Fax. 212-849-7100

Re: My Copyrighted Trade Secret Business Plan contained herein.

BY LAW, INTERNATIONAL TREATIES, EVERY COPYRIGHTED, COMMON LAW COPYRIGHTED SONG CONTAINS:

1. A TRADE SECRET BUSINESS PLAN
2. A TRADE SECRET MARKETING PLAN
3. A TRADE SECRET OWNED BY THE SONG, MUSIC CREATOR TO MAKE MONEY
4. THE CREATORS ENGLISH COMMON LAW INVENTION, IDEA, WORK PRODUCT HARMED, ROBBED BY DEFENDANT'S

GOOGLE, MEGA UPLOAD MONEY, PROFIT'S HAVE BEEN MADE BY INTENTIONAL CAUSING OF HARM TO VIACOM, INC., OTHERS. SMITH V. DRAVO CORP. 203 F.2d 369, Restatement, Torts, Sec 757. ROBBERY IS HARM.

THE DIGITAL MILLIUMN COPYRIGHT ACT IS INVALID AS TO TRADE SECRETS THUS:

GOOGLE, MEGA UPLOAD PROFITS MADE BY THEIR INTENTIONAL CAUSING OF HARM TO VIACOM, INC., OTHERS OF IN EXCESS OF $42 BILLION DOLLARS MUST BE PAID TO VIACOM, INC.,

VIACOM, INC., KNEW OF GEORGE MAY CONTRACT, CONTRACT EXPECTANCY PROSPECTIVE BUSINESS RELATIONSHIP, ECONOMIC ADVANTAGE, AND USED UNLAWFUL, IMPROPER MEANS, METHODS TO INTERFERE WITH GEORGE MAY CONTRACT EXPECTANCY CAUSING GEORGE MAY DAMAGES OF $21 BILLION DOLLARS.

THOSE WHO GAIN THEIR INFORMATION IMPROPERLY ARE BOUGHT TO BOOK IN RECOGNITION OF THE GENERAL PRINCIPLE THAT INTENTIONALLY INFLICTED HARM IS ACTIONABLE. "ROBBERY BY DEFENDANT'S IS HARM"

GOOGLE, MEGA UPLOAD, VIACOM, INC., INTENTIONALLY ROBBED, HARMED. WITH KNOWLEDGE OF AFORETHOUGHT, MALICE, EVIL PURPOSE GEORGE MAY, OTHERS HAD KNOWLEDGE, THAT THEY WERE NOT THE ORIGINAL CREATOR, DID NOT PAY THE PRICE IN LABOR, MONEY, OR MACHINES EXPENDED BY THE ORIGINAL CREATOR, THUS ACTED WITH:

1. Knowledge, INTENT, MALICE OF AFORETHOUGHT, EVIL PURPOSE, WITHOUT REGARD FOR THE LAW, RIGHTS OF THE CREATOR, INTERFERING WITH THE CREATORS, BUSINESS.

2. TORTIOUSLY INTERFERING WITH GEORGE MAY CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE, BUSINESS EXPECTANCY.

P.O. Box 32247
Palm Bch. Gardens
Fl. 33420
PH/Fax 561-290-4384

George May