**PUBLIC VERSION – REDACTED**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIACOM INTERNATIONAL INC., COMEDY PARTNERS, COUNTRY MUSIC TELEVISION, INC., PARAMOUNT PICTURES CORPORATION, and BLACK ENTERTAINMENT TELEVISION LLC, <br><br>                                   Plaintiffs,<br><br>           v.<br><br>YOUTUBE, INC., YOUTUBE, LLC, and GOOGLE INC.,<br><br>                                   Defendants. | ECF Case<br><br>Case No. 1:07-cv-02103 (LLS)<br>(related case no. 1:07-cv-03582 (LLS)) |

**PLAINTIFFS' COUNTERSTATEMENT IN RESPONSE TO DEFENDANTS' SUPPLEMENTAL STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

Paul M. Smith (No. PS-2362)
Scott B. Wilkens (*pro hac vice*)
Luke C. Platzer (No. LP-0734)
JENNER & BLOCK LLP
1099 New York Ave, NW
Washington, DC 20001
(202) 639-6000

Susan J. Kohlmann (No. SK-1855)
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
(212) 891-1600

Stuart J. Baskin (No. SB-9936)
Kirsten Nelson Cunha (No. KN-0283)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
(212) 848-4000

Matthew D. McGill (No. MM-4545)
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Ave, NW
Washington, DC 20036
(202) 955-8500

Pursuant to Local Rule 56.1, Plaintiffs ("Viacom") submit the following counter-statement in response to Defendants' Supplemental Local Rule 56.1 Statement in support of Defendants' renewed motion for summary judgment. Viacom's counterstatement contains a two-column table. The left-hand column contains Defendants' factual assertions and citations to evidence, and the right-hand column contains Viacom's response to each factual assertion, including citations to evidence as appropriate.

## GLOSSARY

| Memoranda of Law and Rule 56.1 Statements | |
|---|---|
| Viacom Opening SJ Br. | Plaintiffs' Memorandum of Law in Support of Viacom's Motion for Partial Summary Judgment on Liability and Inapplicability of the DMCA Safe Harbor Defense; filed March 5, 2010 |
| Viacom Opp. Br. | Plaintiffs' Memorandum of Law in Opposition to Defendants' Renewed Motion for Summary Judgment; filed January 18, 2013 |
| Viacom CSUF | Viacom's Counterstatement in Response to Defendants' Local Rule 56.1 Statement in Support of Defendants' Motion for Summary Judgment; filed April 30, 2010 |
| Viacom RSUF | Viacom's Reply to Defendants' Counterstatement to Viacom's Statement of Undisputed Facts in Support of Its Motion for Partial Summary Judgment; filed June 4, 2010 |
| Viacom SCSUF | Viacom's Supplemental Counter-Statement in Response to Facts Asserted in Defendants' Motion for Summary Judgment Memorandum of Law But Omitted From Defendants' Local Rule 56.1 Statement; filed April 30, 2010 |
| **Declarations** | |
| Hohengarten Decl. | Declaration of William M. Hohengarten in Support of Viacom's Motion for Partial Summary Judgment; filed March 5, 2010 |
| Rubin Opening Decl. | Declaration of Michael Rubin in Support of Defendants' Motion for Summary Judgment; filed March 5, 2010 |
| Rubin Reply Decl. | Declaration of Michael Rubin in Further Support of Defendants' Motion for Summary Judgment; filed June 4, 2010 |
| Schapiro Opening Decl. | Declaration of Andrew H. Schapiro in Support of Defendants' Motion for Summary Judgment; filed March 5, 2010 |
| Schapiro Opp. Decl. | Declaration Of Andrew H. Schapiro in Support Of Defendants' Opposition To Plaintiffs' Motions For Partial Summary Judgment; filed April 30, 2010 |
| Schapiro Reply Decl. | Declaration of Andrew H. Schapiro in Further Support of Defendants' Motion for Summary Judgment; filed June 4, 2010 |
| Ostrow Decl. | Declaration of Daniel Ostrow; filed March 5, 2010 |
| Reider Decl. | Declaration of Suzanne Reider in Support of Defendants' Motion for Summary Judgment; filed March 5, 2010 |

1

Exhibits to any declaration are indicated as "[Declarant Name] Ex." followed by the exhibit number. Citations to paragraphs in any declaration or in the Viacom SUF, CSUF, SCSUF, or RSUF incorporate by reference any exhibits cited therein.

| **Defendants' Asserted Undisputed Fact** | **Viacom's Response** |
|---|---|
| 172. Viacom has abandoned its claims concerning videos posted to YouTube after May 2008. Mem. of Law in Support of Viacom's Mot. for Partial Summ. J. at 2 n.1 (Mar. 5, 2010); Schwartz Ex. 1 (7:7-12). | Controverted with respect to the characterization that Viacom "abandoned" its claims concerning such videos.<br><br>There is no genuine dispute that Viacom's clips-in-suit posted to YouTube after May 31, 2008 are infringing. However, in light of Defendants' reversal of their longstanding refusal to use their available fingerprinting tools to protect Viacom's content (along with the content of Defendants' business partners), and given Defendants' actual deployment of fingerprinting to protect Viacom's content beginning in May 2008, Viacom elected not to pursue its infringement claims against Defendants for clips uploaded after May 31, 2008. Viacom RSUF ¶¶ 212-13, 216-18, 222, 292-310; Viacom CSUF ¶¶ 95, 106-09; Viacom Opening SJ Br. at 2 n.1. |
| 173. When he wrote his March 2006 memo, Jawed Karim was no longer a YouTube employee. Schapiro Opp. Ex. 77 (19:10-25); Schapiro Reply Exs. 80 (October 5, 2005 agreement defining Karim's role as "an independent contractor to perform consulting services"), 82 (110:17-19, 115:16-24). | Uncontroverted, but immaterial.<br><br>Whether Karim was labeled an "independent contractor" rather than an "employee" is not determinative of whether the knowledge set forth in the memo submitted to YouTube's board of directors is attributable to YouTube. Viacom Opp. Br. at 19 n.13. There is no genuine dispute that YouTube's board received the memo, and on YouTube's motion for summary judgment, the only reasonable inference is that the board read the memo and knew its contents.<br><br>Even assuming that the board did not read what they were given, Karim's knowledge |

| Defendants' Asserted Undisputed Fact | Viacom's Response |
|---|---|
| | may still be attributed to YouTube because a jury could reasonably conclude that Karim had an agency relationship with the company at the time given that he was a co-founder, remained a high-level consultant with the privilege of attending YouTube board meetings and advising the board, and retained a substantial stake in the company. *Id*. Pursuant to his consulting agreement with YouTube, Karim was responsible for providing "consulting and advisory services," including "written reports" informing the company of Karim's work. Schapiro Reply Ex. 80 ¶ 5 & Ex. A. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ |
| 174. Viacom continued to upload material to YouTube throughout this litigation. Rubin Opening Decl. ¶¶ 2, 3 & Exs. 1, 25-26, 29-31, 42, 58-66; Schapiro Opening Ex. 27 (23:3-24:23); Schapiro Opp. Ex. 55. | Uncontroverted, but immaterial. Viacom's lawful marketing use of YouTube is not relevant to Defendants' DMCA defense, because Defendants were fully aware of Viacom's uploading activities, and Defendants have not pointed to a single example of their actual confusion as to whether a particular YouTube account or a particular clip-in-suit was authorized by Viacom. Furthermore, none of Viacom's marketing activity was conducted so as to hide the identity of the marketing company or the content owner from YouTube. *See* Viacom CSUF ¶¶ 123-26. At most, Defendants' assertions regarding Viacom's marketing practices create a jury question. |
| 175. Viacom and its agents posted to YouTube long excerpts and full episodes of television shows, and scenes from its movies without indicating at the time that those videos were authorized by Viacom to appear on YouTube. Rubin Reply Decl. ¶ 2 & Ex. 1; | Controverted, but immaterial. *See* Response to No. 174 *supra*, which is incorporated herein by reference.

The asserted fact is misleading in suggesting that Viacom or its agents regularly uploaded |

3

| Defendants' Asserted Undisputed Fact | Viacom's Response |
|---|---|
| Ostrow Decl. ¶¶ 3-4; Schapiro Opening Ex. 142; Schapiro Reply Ex. 8. | "long excerpts" or "full length episodes" of television shows to YouTube. The cited evidence indicates only two instances in which full episodes of Viacom content were uploaded to YouTube with Viacom's authorization, and those two instances together account for only five episodes. More importantly, none of the cited evidence indicates that YouTube was <u>unaware</u> that the clips at issue were authorized by Viacom to appear on the site. Notably, Rubin Reply Decl. ¶ 2 & Ex. 1, and Ostrow Decl. ¶¶ 3-4, refer to the same four episodes of the MTV show "Jamie Kennedy Blowin' Up," that were uploaded to YouTube by the marketing firm Total Assault. It is undisputed that Defendants were fully aware of Total Assault's use of YouTube, and that they assisted Total Assault in its efforts to promote its clients' content. Viacom CSUF ¶ 124 (citing extensive communications between YouTube and Total Assault). |
| 176. Even after filing this lawsuit, Viacom continued deliberately allowing clips to remain on YouTube. Rubin Opening Decl. ¶ 2 & Exs. 1, 24, 27-28; Schapiro Opening Ex. 144; Schapiro Reply Exs. 23, 29. | Controverted, but immaterial. Controverted to the extent that the asserted fact suggests that Viacom allowed clips other than copies of official Viacom marketing clips and trailers to remain on YouTube after this suit was filed. All of the cited evidence concerns user postings to YouTube of a handful of Viacom official marketing clips and trailers that had been approved for public release. For example, Rubin Opening Decl. Ex. 24 and Schapiro Opening Ex. 144 concern the same promotional clip from the Paramount film *Transformers*, which was debuted on the Ellen DeGeneres Show. *Id.* Schapiro Reply Ex. 23 also concerns copies of official marketing clips from *Transformers*, which are referred to in the document as "electronic press kit" or "EPK" clips. *See* Viacom SCSUF ¶ 1.62 (discussing marketing of EPK clips); *see also* Rubin Opening Decl. Exs. 27-28 (official trailers for the Paramount films *Iron Man* and *Cloverfield*); Schapiro Reply Ex. 29 (official |

4

| **Defendants' Asserted Undisputed Fact** | **Viacom's Response** |
|---|---|
| | trailer for MTV show *The Hills*); SCSUF ¶ 1.63 (discussing Rubin Ex. 28 and *Cloverfield*).<br><br>Moreover, Viacom's decision to forbear from some copyright enforcement did not deprive YouTube of knowledge of infringement or create an implied license. Viacom Opp. Br. at 32-33 & n. 23.<br><br>*See also* Response to ¶ 174, *supra*, which is incorporated herein by reference. |
| 177. Since January 2007, YouTube has restricted ads on pages where videos are watched ("watch-page ads") to those videos expressly claimed by a content partner and designated for monetization. Reider Decl. ¶ 9. | Uncontroverted, but immaterial. It is undisputed that watch-page ads appeared in conjunction with substantially all clips from approximately April 2006 to January 2007, including on watch-pages for Viacom content. Viacom RSUF ¶¶ 241, 247, 251. Moreover, even after January 2007, Defendants continued to place ads on the home, search, and browse pages of YouTube, and thereby obtained a direct financial benefit from the users drawn to YouTube by infringing content. *See* Viacom RSUF ¶¶ 247-249, 258-259, 262; Viacom CSUF ¶ 168; Reider Decl. ¶ 5. |
| 178. Even before limiting watch-page ads to those videos expressly claimed by a content partner and designated for monetization, YouTube received the same rates for such ads regardless of which videos the ads appeared next to. Reider Decl. ¶ 10. | Uncontroverted, but immaterial to whether YouTube receives a direct financial benefit from infringement under the DMCA, because infringing content, including Viacom's clips in suit, indisputably acted as a draw to YouTube users. *See* Viacom Opp. Br. at 48-49. |
| 179. In YouTube's syndication agreements with Apple, Sony, Panasonic, TiVo, and AT&T, YouTube enabled third party technologies to access videos stored on YouTube's system. Schapiro Opp. Ex. 325 (36:24-37:17, 39:7-13); Schwartz Ex. 9 (57:2-22); Solomon Opp. Decl. ¶ 3; Hohengarten Exs. 160 (agreement with Apple providing that YouTube will "make all YouTube videos that are available on the YouTube site accessible to Apple during the Term via the | Controverted. The asserted fact is misleading to the extent it implies that by entering into syndication agreements, YouTube did nothing more than allow third parties to access videos already stored on its system at the direction of users. In order to effectuate these syndication agreements, YouTube created new copies of the videos already on its system in different formats in order to make the videos accessible to its syndication partners. *See* Viacom RSUF ¶ 330; Schapiro Opp. Ex. 325 (Patterson Dep.) |

5

| Defendants' Asserted Undisputed Fact | Viacom's Response |
|---|---|
| YouTube APIs"), 163 (agreement with Sony regarding application "to stream YouTube User Videos accessed through the YouTube APIs"), 165 (agreement with Panasonic re same), 166 (agreement with Tivo re same), 169 (agreement with AT&T providing that "Google will perform, at its expense, all hosting and related operational activities"). | at 39:14-19 (YouTube engineer stating that making videos available through third party syndication agreements "requires us to make the video available in multiple formats"). |
| 180. Pursuant to the terms of its November 1, 2006 agreement with Verizon Wireless, YouTube manually selected a small number of videos uploaded to its system by YouTube users, took those videos from the YouTube system, and delivered them to Verizon so that Verizon could host those videos from its own system. Schapiro Opp. Ex. 325 (37:6-38:15); Schwartz Ex. 9 (55:8-56:17); Hohengarten Ex. 167 (YouTube "shall at its own expense deliver the Company Content in a mutually agreed upon format to one or more locations reasonably designated by Verizon"). | Controverted, but immaterial. The asserted fact is misleading to the extent it suggests that YouTube employees hand selected clips for delivery to Verizon Wireless. To the contrary, the approximately 2,000 videos YouTube provided to Verizon Wireless consisted of videos that YouTube had previously selected for prominent placement as "featured videos" on the YouTube website. Viacom RSUF ¶ 329.<br><br>In any event, the precise method by which YouTube syndicated videos to Verizon is irrelevant to whether YouTube's other syndication activities fall within the scope of the Section 512(c) safe harbor. *See* Viacom Opp. Br. at 51-53. |
| 181. The November 1, 2006 agreement with Verizon Wireless is the only arrangement pursuant to which YouTube has ever manually selected videos to be hosted on a third party's system. Schapiro Opp. Ex. 325 (38:12-16, 37:6-19); Schwartz Ex. 9 (53:12-53:16, 70:10-72:11). | Controverted, but immaterial. The asserted fact is misleading to the extent it suggests that the November 1, 2006 agreement with Verizon Wireless is the only arrangement pursuant to which YouTube selected a subset of the videos on its site for syndication. In syndicating videos to Apple, Sony, Panasonic, Tivo, and AT&T, YouTube first selected approximately 30,000 of the "top watched" clips for "prioritize[d]" syndication. *See* Viacom RSUF ¶ 330 & Hohengarten Ex. 171.<br><br>*See also* response to No. 180 *supra*, which is incorporated herein by reference. |

DATED: January 18, 2013

*[signature]*

Paul M. Smith (No. PS-2362)
Scott B. Wilkens (*pro hac vice*)
Luke C. Platzer (No. LP-0734)
JENNER & BLOCK LLP
1099 New York Ave, NW
Washington, DC 20001
(202) 639-6000

Susan J. Kohlmann (No. SK-1855)
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
(212) 891-1600

Respectfully submitted,

*[signature]*

Stuart J. Baskin (No. SB-9936)
Kirsten Nelson Cunha (No. KN-0283)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
(212) 848-4000

Matthew D. McGill (No. MM-4545)
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Ave, NW
Washington, DC 20036
(202) 955-8500

7